UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MAGISTRATE JUDGE TORRES

PABLO DIAZ,

      Petitioner,           CASE NO. 14-23385-CIV-COOKE

v.                    Lower Tribunal No. 03-16995

MICHAEL D. CREWS,

SECRETARY FLORIDA D.O.C.,

      Respondent.

_____

## RESPONSE TO ORDER TO SHOW CAUSE

Respondent, STATE OF FLORIDA, by and through undersigned counsel, hereby files its Response to Order to Show Cause, as ordered by this Court on September 16, 2014, and for the reasons which follow, submits that the petitioner is not entitled to federal habeas corpus relief pursuant to the provisions of 28 U.S.C. Sec. 2254.[1]

## I. CUSTODY

The petitioner, Pablo M. Diaz, is currently under the lawful custody of the State of Florida at the Blackwater River

_____

[1] In this response, the parties will be referred to as they appear before this Court. The exhibits contained in the contemporaneously filed appendix are designated by "Ex" followed by a letter. The trial transcript is designated by "T" followed by a page number.

Correctional Facility, for valid convictions by a jury for aggravated battery and kidnapping.

## II.  HISTORY OF THE CASE

The petitioner was charged by information with multiple counts. (Ex.A).  After a jury trial, he was found guilty of count 1, aggravated battery, as a lesser included offense, and the defendant actually possessed a firearm and discharged a firearm; and count 3, kidnapping, and the defendant actually possessed a firearm and discharged a firearm. (Ex.B).  A judgment of acquittal was entered for assault/aggravated, with a firearm. (Ex.C).  He was sentenced as a Prison Releasee Reoffender to a term of fifteen years on count 1 and life on count 3, with a fifteen year minimum/mandatory sentence as to count 1 and a life minimum/mandatory sentence as to count 3, each to run concurrent. (Ex.D).

The petitioner prosecuted a direct appeal in Case No. 3D7-1774 in which he claimed in his amended initial brief (Ex.E):

> I. THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT'S MOTION FOR MISTRIAL BASED ON WILLIAMS'S RULE EVIDENCE.
>
> II.THE TRIAL COURT ERRONEOUSLY OVERRULED DEFENDANT'S OBJECTIONS TO DETECTIVE MORIN'S PSEUDO-PSYCHOLOGICAL EVALUATION OF MS. RUIZ.

The state filed its answer brief (Ex.F).  In Case No. 3D07-1774, the Third District Court of Appeal *per curiam* affirmed the convictions on March 24, 2010 in <u>Diaz v. State</u>, 36 So.3d 676 (Fla. 3d DCA 2010).  The petitioner filed a motion for rehearing. (Ex.G).  The Third District Court of Appeal denied the motion for rehearing on April 21, 2010. (Ex.H).

The petitioner then filed a motion to correct illegal sentence pursuant to Rule 3.800, Florida Rules of Criminal Procedure, on September 27, 2010, according to the mailbox rule. (Ex.I).  In it, he claimed:

> I.  DEFENDANT'S PRISON RLEASEE REOFFENDER SENTENCE IS ILLEGAL DUE TO THE FACT THAT THE SENTENCING PROCEEDING WAS CONDUCTED SOLELY BEFORE AND BY THE SENTENCING JUDGE AND NOT BY THE JURY, IN DIRECT CONTRAVENTION TO THE U.S. SUPREME COURT'S HOLDINGS IN <u>APPRENDI V. NEW JERSEY</u> AND <u>BLAKELY V. WASHINGTON.</u>

The state filed a response. (Ex.J).  The petitioner filed a reply. (Ex.K).  By order filed November 16, 2010, the trial court denied the motion. (Ex.L).  A motion for rehearing was denied by order filed December 10, 2010. (Ex.M).  On appeal in Case No. 3D10-3422, on April 13, 2011, the Third District Court of Appeal *per curiam* affirmed the trial court denial. <u>Diaz v. State</u>, 72 So.3d 759 (Fla. 3d DCA 2011).  A motion for rehearing

was filed on April 28, 2011, denied on June 6, 22, 2011 and mandate issued July 8, 2011. (Ex.N).

A state petition for writ of habeas corpus (Ex.O) was filed on October 4, 2011, according to the mailbox rule, in Case No. 3D11-2607, in which was claimed ineffectiveness of appellate counsel as follows:

> I. APPELLATE COUNSEL COULD HAVE AND SHOULD HAVE RAISED ON DIRECT APPEAL THAT IT WAS FUNDAMENTALLY IMPROPER TO CONVICT PETITIONER OF THE LESSER INCLUDED OFFENSE OF AGGRAVATED BATTERY WHERE THE INFORMATION CHARGING ATTEMPTED FELONY MURDER DID NOT ALLEGE THE ESSENTIAL ELEMENTS TO SUSTAIN A CONVICTION FOR THE AGGRAVATED BATTERY.

The petition was denied on December 2, 2011 in Diaz v. State, 83 So.3d 730 (Fla. 3d DCA 2011). A motion for rehearing was denied on January 10, 2012, and the case was disposed without mandate. (Ex.P).

The petitioner then filed on January 19, 2012 a motion pursuant to Rule 3.850, Florida Rules of Criminal Procedure. (Ex.Q). In the motion, the petitioner claimed:

> I. COUNSEL FAILED TO THOROUGHLY DISCUSS THE STATE'S PLEA OFFER OF EIGHTEEN (18) YEARS INCARCERATION, TO PRESENT DEFENDANT DIAZ WITH A PROPER EVALUATION OF THE EVIDENCE AND TO DISCUSS THE CONSEQUENCES OF TRIAL.

II.   COUNSEL FAILED TO ENSURE THE ATTENDANCE OF TWO MATERIAL WITNESSSES AND, WITHOUT ADEQUATELY CONSULTING WITH THE DEFENDANT, STIPULATED TO THE INTRODUCTION OF POLICE REPORTS IN LIEU OF TESTIMONY.

III. COUNSEL FAILED TO OBJECT TO ALLOWING KATHERINE RUIZ TO TESTIFY WHILE OBVIOUSLY IMPAIRED AND TO RAISE THE ISSUE WITH MRS. RUIZ DURING CROSS EXAMINATION.

IV.  WITHOUT JUSTIFICATION OR CONSULTATION WITH DEFENDANT DIAZ, COUNSEL WITHDREW PREVIOUSLY FILED MOTION IN LIMINE PRECLUDING THE INTRODUCTION OF THREATENING TELEPHONE MESSAGES LEFT BY THE DEFENDANT HOURS AFTER THE COMMISSION OF THE ALLEGED CRIME.

V.   COUNSEL FAILED TO FILE NECESSARY PRETRIAL MOTIONS EXLUDING REFERENCE TO "DOMESTIC VIOLENCE" AND FAILED TO PROPERLY OBJECT DURING TESTIMONY IMPLICITLY ESTABLISHING THE CASE AS ONE INVOLVING ABUSE OR DOMESTIC VIOLENCE.

VI.  COUNSEL FAILED TO OBSERVE AND DISCUSS WITH THE DEFENDANT THE CONTENTS OF AN ENHANCED VIDEO DEPICTING THE ALLEGED CRIME, FAILED TO REVIEW THE REDACTED "48 HOURS" TELEVISION SHOW DEPICTING BALLISTICS ANALYSIS, AND PROCEEDED TO TRIAL WHEN GENERALLY UNPREPARED.

VII. COUNSEL FAILED TO OBJECT TO THE STATE'S INTRODUCTION OF AN UNSWORN DOCUMENT TO ESTABLISH DEFENDANT'S ELIGIBILITY FOR STATUS AS A PRR; AND

VIII. COUNSEL FAILED TO OBJECT TO INSTANCES OF PROSECUTORIAL MISCONDUCT, INCLUDING: KNOWINGLY EVOKING MISLEADING AND/OR INCORRECT TESTIMONY, PRESENTING THE TESTIMONY OF AN OBVIOUSLY IMPAIRED WITNESS, ELICITING TESTIMONY REGARDING UNCHARGED CRIMES AND PRESENTING A CLOSING ARGUMENT INAPPROPRIATELY DESIGNED TO INFLAME THE JURY.

The state responded. (Ex.R.). An amended order granting the motion for rehearing and denying the defendant's original Rule 3.850 motion and amended motion was filed January 10, 2013. (Ex.S).

On appeal in Case No. 3D13-654, an initial brief (Ex.T) was filed claiming:

I. THE POSTCONVICTION COURT ERRED IN DENYING DEFENDANT'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL WITHOUT AN EVIDENTIARY HEARING, WHERE THE COURT RELIED SOLELY ON ROBOTIC ANSWERS PROVIDED BY THE DEFENDANT DURING COLLOQUYS AND SWEEPINGLY HELD COUNSEL'S DECISIONS MERELY 'TACTICAL.'

The state filed an answer brief. (Ex.U). The petitioner filed a reply brief. (Ex.V). On May 28, 2014, the Third District Court of Appeal *per curiam* affirmed in Diaz v. State, 2014 WL 2200132 (Fla. 3d DCA 2014). Mandate issued August 4, 2014. (Ex.W).

The present petition was filed by private counsel on September 13,, 2014, according to the docket sheet. The petition alleges:

6

I. COUNSEL FAILED TO THOROUGHLY DISCUSS THE STATE'S PLEA OFFER OF 18 YEARS INCARCERATION, TO PRESENT DEFENDANT WITH A PROPER EVALUATION OF THE EVIDENCE AND DISCUSS THE CONSEQUENCES OF TRIAL THEREBY RENERING CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL.

II. COUNSEL FAILED TO OBSERVE AND DISCUSS WITH THE DEFENDANT THE CONTENTS OF AN ENHANCED VIDEO DEPICTING THE ALLEGED CRIME THEREBY RENDERING CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL.

III.COUNSEL FAILED TO OBJECT TO THE USE OF AGGRAVATED BATTERY AS A LESSER INCLUDED OFFENSE AS THE INFORMATION FAILED TO ALLEGE THE REQUISITE ELEMENTS FOR A CONVICTION OF AGGRAVATED BATTERY THEREBY RENDERING CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL.

IV.COUNSEL FAILED TO FILE A SUFFICIENT MOTION FOR A NEW TRIAL ON THE VERDICT FOR THE LESSER INCLUDED OFFENSE OF AGGRAVATED BATTERY THEREBY RENDERING CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL.

V. COUNSEL FAILED TO PRESENT A DEFENSE TO THE CHARGE OF KIDNAPPING EFFECTIVELY INTERFERING WITH PETITIONER'S RIGHT TO TESTIFY THEREBY RENDERING CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL.

VI. THE CUMULATIVE EFFECT OF TRIAL COUNSEL'S ERRORS VIOLATED PETITIONER'S RIHT TO A FAIR TRIAL AND VIOLATED HIS RIGHT TO DUE PROCESS.


This response follows.


### III. STATUTE OF LIMITATIONS


The Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. §2244, as amended April 24, 1996, provides that a one year period of limitations applies under §2254.  The one year period runs from the latest of:

(1) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(2)  The date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(3) The date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;

(4) The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(Emphasis supplied).

A conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n. 6 (1986).  Ordinarily, a petition for certiorari must be filed within 90 days of the date of entry of judgment, rather than the issuance of a mandate. Supreme Court Rule 13. *Accord* Coates v. Byrd, 211 F.3d 1225 (11th Cir. 2000).

In this case, the convictions were thus final 90 days after April 21, 2010, which was June 20, 2010.  A Rule 3.800 motion

8

was then filed September 27, 2010, so the limitations period was not tolled for **99 days**.  Then, the mandate issued in the Rule 3.800 appeal on July 8, 2011 and the state habeas petition was filed October 4, 2011, so there was **88 days** untolled time. Then, the state habeas petition was denied without a mandate on January 10, 2012 and the Rule 3.850 motion was filed January 19, 2012, so that there was **9 days** of untolled time.  Then, the Rule 3.850 appeal mandate issued August 4, 2014 and the present federal petition was filed September 13, 2014, which was **40 days** of untolled time.

Therefore, there was a total of **236** untolled days, which is within the one year time limitation.  The petition was thus timely filed.

## IV. EXHAUSTION AND PROCEDURAL DEFAULT

Claims I and II were exhausted by raising them in the Rule 3.850 motion, and appealing the order of denial.  Claim I was the first claim in the motion and claim II was the sixth.

Claim III was raised in the state habeas petition as *ineffectiveness of appellate counsel* for failing to raise in the direct appeal the issue that it was fundamentally improper to convict the petitioner of the lesser included offense of aggravated battery where the information charging attempted

9

felony murder did not allege the essential elements to sustain a conviction for aggravated battery.  But in this federal habeas petition he claims that his *trial counsel was ineffective* for failing to object to the use of aggravated battery as a lesser included offense as the information failed to allege the requisite elements for a conviction of aggravated battery.

A claim of ineffectiveness of trial counsel is not exhausted by raising the claim as ineffective assistance of appellate counsel.  Casteel v. Peoples, 489 U.S. 346 (1989); Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999).

Likewise, neither claims IV, V or VI were exhausted by being raised in direct appeal or in the trial court and appealing their denial.  The exhaustion requirement is grounded in principles of comity and reflects a desire to protect the state court's role in the enforcement of federal law.  The requirement is based upon a pragmatic recognition that federal claims that have been fully exhausted in state courts will be accompanied by a complete record to aid the federal courts in their review. Rose v. Lundy, 455 U.S. 509 (1982).  Exhaustion of Rule 3.850 claims must include an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807 (11th Cir. 1979).

The petitioner acknowledges that these claims were not presented in state court proceedings, but argues that since he

was represented by counsel in the rule 3.850 proceeding, and counsel did not present the claims, counsel was ineffective and Martinez v. Ryan, 132 S.Ct. 1309 (2012) exempts him from the exhaustion requirement.  This is an inaccurate statement of the holding of Martinez v. Ryan, which held that "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial, if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez enables a federal habeas petitioner to circumvent a state collateral-review procedural bar and then present the claim in the federal habeas proceeding.  The lack of exhaustion, is not, in and of itself, a procedural bar; it is merely lack of exhaustion.

Also, Martinez only applies when claims of ineffectiveness of trial counsel must be raised in a post-conviction motion and cannot be raised on direct appeal.  But, Claims IV, V and VI should have been raised on direct appeal because a claim of ineffective assistance of counsel may be raised on direct appeal if it is apparent on the face of the record, Blanco v. Wainwright, 507 So.2d 1377, 1384 (Fla. 1987); Rios v. State, 730

So.2d 831 (Fla. 3d DCA 1999), and Claims IV, V and VI are of such a nature.

The unexhausted claims were not raised in a state proceeding and therefore there was no state court decision from which it can be determined by this Court that the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1),(2). *See* Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

Also, because the unexhausted claims were not raised in a state proceeding, the claims are not accompanied by a record to aid this Court in its review of the petition, as discussed in Rose v. Lundy, 455 U.S. at 519,[2] this petition will only address claims I and II which have been fully exhausted by raising them in the Rule 3.850 motion, the denial of which was appealed to the Third District Court of Appeal.

_____

[2] However, Sec. 28 U.S.C. Sec. 2254 has been amended since Rose to provide that "an application  for a writ of habeas corpus may be denied  on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."   Sec. 2254(b)(2).  Therefore the Court can exercise discretion to consider any of the petitioner's exhausted claims."Dimick v. Secretary, Dept. of Corrections, 2010 WL 5092529 (M.D. Fla., 2010).  If this Court should exercise its discretion and decide to consider any of the unexhausted claims, the respondent would ask for the opportunity to respond to those claims.

## V.   MERITS

The instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (1996).   The provisions of that statute are, therefore, applicable and provide that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court, unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court. 28 U.S.C. §2254(d)(1),(2). *See* Williams v. Taylor, 529 U.S. at 405-06.

### Facts of the case

The victim, Katherine Ruiz, testified at trial that she had known the petitioner for one or two years, and had been romantically involved with him for one month. (T.199).   On June 7, 2003, after going to a Miami Beach bar with the petitioner and another couple, the other female punched her in the face and they started to argue. (T.202-03).   The defendant got her out of the vehicle (T.299).   After exiting the vehicle, the petitioner called a friend for a ride back to the victim's apartment.

13

(T.203).   The victim had left her belongings, her purse, wallet and sunglasses in the vehicle. (T.210).   The petitioner told her that he would help her get it back. (T.307-08).

They went to her apartment and after a while she went into her bedroom and observed the petitioner counting money. (T.310). She became angry and they started to argue. (T.203,205,313).   At some point during the argument, the petitioner went into the other room and returned with a firearm. (T.204).   He walked into the kitchen with a pillow and the firerm. (T.311-12).   The gun was not owned by the victim and she didn't know that it was in the apartment. (T.204-05).   The victim grabbed a knife in response to seeing the firearm and ran out of the apartment. She started knocking on other apartment doors with the petitioner following her. (T.205).   At some point during the argument, they were on the stairs and she dropped the knife. (T.206).   During this time the petitioner was hitting her while still holding the firearm, and she was hitting him back. (T.206).   He hit her in the nose, and caused it to start bleeding again. (T.314).   While fighting in the stairwell, they realized that they were locked out of the apartment. (T.207-08). The petitioner wanted to get back into the apartment to retrieve his money, approximately $3,000. (T.207-08,313).

14

They went down the elevator and ended up on the sixth floor. (T.208). They continued to fight, and ended up inside the bathroom on the sixth floor. (T.208). In the bathroom, he smashed her head into the toilet. (T.316). During this time, he threatened to kill her. (T.208). They ended up in the lobby of the apartment building, at the front desk in order to get the apartment key. (T.209, 318). She was bleeding, her clothes were ripped, and her shirts and pants were bloody. (T.209). Her fingernails were ripped off. (T.209).

At the front desk, the petitioner used the telephone to try to locate her purse. (T.210). While he was on the telephone, she attempted to signal the front desk clerk, Dennis Florez, to call the police. (T.210). At this time, security came into the lobby and informed Mr. Florez that the police had been called. (T.210). The victim jumped over the front desk counter because she was scared the petitioner was going to shoot her. (T.211).

The victim ended up back on the other side of the front desk, and the petitioner dragged her by the hair, to the stairs and to the second floor garage. (T.212). He still held the firearm in his hand while dragging her. (T.212). He forced her into the backseat of his car, and he got into the driver's seat. (T.213). He started driving towards Little Havana and they were still fighting. (T.213). She kept trying to get out of the

vehicle and every time she attempted to open the door, he would hit her.

The petitioner finally stopped at a cafeteria to get a drink of water. (T.214). She attempted to get out the vehicle two times and he hit her both times. (T.214). There were other people around the cafeteria but the petitioner told them not to get involved with the fight, it was a personal issue. (T.215). During this time she was screaming and crying. (T.215). When a man tried to intervene, the petitioner took out his firearm and fired a shot into the back seat. (T.215). The victim was burned by the bullet, in the back, and the bullet went into the back seat. (T.215-16). She did not remember if he fired the gun any additional times. (T.216).

The petitioner drove away from the cafeteria and they continued to fight. (T.217). The victim was finally able to jump out of the vehicle and started running in the opposite direction that the vehicle was traveling. (T.217-18). She jumped into another vehicle and screamed the petitioner was going to kill her. (T.218). The passengers in this car helped her call the police. (T.218). While driving, they observed a police vehicle parked on the road, and they pulled over to the side. (T.219). After speaking to the police, an ambulance was called and she was taken to the hospital. (T.219). After being

at the hospital for several hours, she refused treatment, and a
police officer drove her back to her apartment. (T.220,339-40).
It was between 3:00 a.m. and 5:00 a.m. (T.341).  At home, she
went to sleep and slept until 9:00 a.m. and 10:00 a.m. (T.220-
341).  She checked her voice messages and the petitioner left
her five messages. (T.220-21).  In the messages, the petitioner
threatened her and her daughter. (T.223-24).

Later that day the petitioner's mother called her. (T.223-
24).  The victim agreed to meet with the petitioner's mother
because they had a good relationship. (T.224).  However, once
she arrived at the meeting place, the petitioner was there with
his mother. (T.224).  After speaking to the  mother, she decided
to go home with the petitioner and his mother. (T.225).  She
went with them because she was scared and worried about what the
petitioner might do. (T.225).  She stayed there for a period of
days and during that time, everything was normal and there was
no additional violence. (T.226).  She would call her mother, but
did not tell her where she was located. (T.357-59).  During this
time she was not threatened of forced to stay at the house but
could come and go freely. (T.361-62).

Eventually when she went to her home to gather more
belongings, the police found her and took her to the police
station. (T.228,271,363).  She gave a taped statement, but did

17

not tell the truth during that statement. (t.229).  At a later date, she decided to cooperate with the policed because of her daughter. (T.229).

She testified that her injuries were a bashed in nose, bleeding, was bleeding, and her fingernails were broken down to the cubicle. (T.240).  She also had scratches and bruises on her chest. (T.241).   The state introduced recordings of the messages the petitioner left on her voice mail. (T.242).   The victim identified the voice as the petitioner's voice. (T.242). The messages included threats to the victim's family, as follow:

> I wonder how many skin I could take off Casiana.  If catch her I'm gonna go (inaudible) in Coral Way and (inaudible) to your step daddy (inaudible).

> . . . . .

> Sweetie, wake your ass up, hey I'm gonna give you until tomorrow at night to bury you and I'm gonna go on Monday, tomorrow, directly to Juan's office and raise hell you owe me $3,600 okay. . . .

> . . . . .

> So just keep that in your conscience and that you know, I know where grandma stays, I know where everybody stays, I'm a [sic] see your boy in um, 89 and Coral Way tomorrow, you (inaudible) but um, don't down and I want my $3,600, you know what I'm capable of doing, don't mess with me, I'm preparing your picture to bury you, bury you tonight.

> (T.351-52).

<u>Controlling law</u>

Both of the two alleged claims discussed in this response are controlled by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

I.   The first claim is that counsel was ineffective because he failed to thoroughly discuss the state's plea offer of 18 years' incarceration, to present the petitioner with a proper evaluation of the evidence and discuss the consequences of trial.

A review of the plea colloquy reveals that the claim is without merit.   The plea colloquy is contained in the state's response to the Rule 3.850 motion. (Ex.R:4-7,T.3-7).   It is clear that at the plea colloquy counsel stated there were eight witnesses and a victim who say the firearm was in the defendant's hands, the state indicated there were seven or eight civilian witnesses who will all say the defendant had a firearm on the day in question and there is also a surveillance video that shows the defendant with the firearm, and both counsel and the court clearly expressed to the petitioner the danger of proceeding to trial in terms of a certain life sentence if the jury found him guilty. (Ex.R:4-6).   The state explained in the response that the petitioner's decision to reject the state's plea offer resulted in a drastic, but certain and foreseeable

consequence for which he has no one to blame but himself.(Ex.R:7). The trial court properly denied the claim and the appellate court properly affirmed. For these reasons, this claim has no merit.

II. The second claim is that counsel was ineffective for failing to observe and discuss with the petitioner the contents of an enhanced video depicting the alleged crime.

During the direct testimony of Officer Morin-Fernandez, a question was raised about the viewing of a redacted tape and mentioning of a "TV program." The court sent the jury into the jury room and questioned the parties to make sure each side was satisfied to deflect the fact that there may have been a TV program. The court indicated he will say, yes, just like in the TV program, where scenes are taken and put together, the same thing happened here. They took a surveillance tape and they cut out scenes and put on the scenes that the prosecutor actually wanted on the DVD. Both the state and defense indicated they were satisfied with that. (Ex.R:10-11, T.766-767).

With the jury moments away from resuming deliberations the morning after starting, the petitionr was queried by the court regarding his counsel's "position regarding this matter and the video tape." Counsel asked the court to order the state to provide the jury equipment to view and slow down the video, but

the state had no such equipment. Because the tape was so difficult to view, still pictures from the video were also introduced at trial. The petitoiner was again asked about his satisfaction with counsel's general performance and his specific handling of the video tape issue: The petitioner stated that he was satisfied with the work being done here by his lawyer and with his position regarding this matter and video tape? (Ex.R:12,T.988). Accordingly, having consented to the introduction of an item of evidence of his and his counsel's handling of the matter, and having expressed satisfaction with trial counsel's trial preparation, this claim has no merit.

The decision of the state court on both claims I and II was not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or based on an unreasonable determination of the facts in light of the evidence presented to the state court.

## VI. CONCLUSION

**WHEREFORE,** based upon the foregoing argument and citations of authorities, Respondent STATE OF FLORIDA respectfully requests that the petition for writ of habeas corpus brought by the petitioner be denied.

Respectfully submitted,

**PAMELO JO BONDI**

Attorney General
Tallahassee, Florida

/s/_____
**JILL D. KRAMER**
**Assistant Attorney General**
Florida Bar No. 378992
Office of the Attorney General
444 Brickell Avenue, Suite 650
Miami, FL 33131
(305)377-5441
(305)377-5655 Facsimile
Jill.Kramer@myfloridalegal.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of this Response was furnished by e-mail this 27th day of October, 2014 to Julio Gonzalez at jgpa@msn.com.

S/_____
JILL D. KRAMER
Assistant Attorney General