## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA  SPRING TERM, 2003

THE STATE OF FLORIDA v.

PABLO MANUEL DIAZ

INFORMATION FOR

1. ATTEMPTED FELONY MURDER
   782.051(1) & 775.087 F1
2. FIREARM/WEAPON/POSN BY
   CONVICTED FELON/DELINQUENT
   790.23(1)(A) & 775.087 F2
3. KIDNAPPING/WITH A WEAPON
   787.01(2) & 775.087 FL
4. ASSAULT/AGGRAVATED/WITH A
   FIREARM
   784.021(1)(A) & 775.087 F3
   (CTS. 4-7)

*KNP Ct 4, 5, 7.*
*Pgf.*

**Defendant.**

## IN THE NAME AND BY AUTHORITY OF THE STATE OF FLORIDA:

STEPHEN CAMERON, Assistant State Attorney of the Eleventh Judicial Circuit, on the authority of **KATHERINE FERNANDEZ RUNDLE**, State Attorney, prosecuting for the State of Florida, in the County of Miami-Dade, under oath, information makes that:

ZFT|6/25/03
DIRECT FILE-WARRANT ALREADY FILED
CIN 614570; W/M, DOB: 10/24/75, SS# 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
F03-16995
J/ECHARTE (18)



!!A|03-16995

27

Count 1

PABLO MANUEL DIAZ on or about JUNE 8, 2003 in the County and State aforesaid, did unlawfully and feloniously perpetrate or attempt to perpetrate a felony, to wit: kidnapping and did commit, aid, or abet an intentional act that was not an essential element of the felony and that could have, but did not, cause the death of another, to wit KATHERINE JO RUIZ, by SHOOTING AT MS. RUIZ, and during the commission of the offense, said defendant possessed a firearm or destructive device, in violation of s. 782.051(1) and 775.087 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

28

Count 2

And the aforesaid Assistant State Attorney, under oath, further information make that PABLO MANUEL DIAZ on or about JUNE 8, 2003 in the County and State aforesaid, did unlawfully and feloniously own or have in said defendant's care, custody, possession or control any firearm, when at said time and place, the defendant had previously been convicted of a felony in a court of this State, to wit: a conviction on JULY 17, 2000 for the felony crime of MURDER 2ND DEGREE, and during the course of the commission of the offense, said defendant discharged a firearm or destructive device, in violation of s. 790.23(1)(a) and 775.087 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

29

Count 3

And the aforesaid Assistant State Attorney, under oath, further information make that PABLO MANUEL DIAZ on or about JUNE 8, 2003 in the County and State aforesaid, without lawful authority did then and there forcibly, secretly, or by threat, confine, abduct or imprison another person, to wit: KATHERINE JO RUIZ against that person's will, with the intent to inflict bodily harm upon or to terrorize the victim or any other person, and during the commission of the offense, said defendant possessed a firearm or destructive device and/or during the course of the commission of the offense, said defendant discharged a firearm or destructive device in violation of s. 787.01(2) and s. 775.087 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

HAJ03-16995

Count 4

And the aforesaid Assistant State Attorney, under oath, further information make that PABLO MANUEL DIAZ on or about JUNE 8, 2003 in the County and State aforesaid, did unlawfully, feloniously and intentionally threaten by word or act to do violence to the person of another, to wit: ANTONIO BALDIZON, coupled with an apparent ability to do so and did some act, to wit: POINT FIREARM AT VICTIM AND DISCHARGE IN THE AIR, which created a well-founded fear in such other person that such violence was imminent, and during the commission of the offense, said defendant possessed a firearm or destructive device and/or during the course of the commission of the offense, said defendant discharged a firearm or destructive device, in violation of s. 784.021(1)(a) and 775.087 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

Count 5

And the aforesaid Assistant State Attorney, under oath, further information make that PABLO MANUEL DIAZ on or about JUNE 8, 2003 in the County and State aforesaid, did unlawfully, feloniously and intentionally threaten by word or act to do violence to the person of another, to wit: JOSE BIGGOTTI, coupled with an apparent ability to do so and did some act, to wit:  POINT FIREARM AND THREATEN TO KILL, which created a well-founded fear in such other person that such violence was imminent, and during the commission of the offense, said defendant possessed a firearm or destructive device, in violation of s. 784.021(1)(a) and 775.087 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

!!A|03-16995

32

Count 6

And the aforesaid Assistant State Attorney, under oath, further information make that PABLO MANUEL DIAZ on or about JUNE 8, 2003 in the County and State aforesaid, did unlawfully, feloniously and intentionally threaten by word or act to do violence to the person of another, to wit: DENNIS FLOREZ, coupled with an apparent ability to do so and did some act, to wit: POINT A FIREARM AND THREATENED TO KILL which created a well-founded fear in such other person that such violence was imminent, and during the commission of the offense, said defendant possessed a firearm or destructive device, in violation of s. 784.021(1)(a) and 775.087 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

33

Count 7

And the aforesaid Assistant State Attorney, under oath, further information make that PABLO MANUEL DIAZ on or about JUNE 8, 2003 in the County and State aforesaid, did unlawfully, feloniously and intentionally threaten by word or act to do violence to the person of another, to wit: THOMAS ROBERTS, coupled with an apparent ability to do so and did some act, to wit: POINT FIREARM AND THREATENED TO KILL, which created a well-founded fear in such other person that such violence was imminent, and during the commission of the offense, said defendant possessed a firearm or destructive, in violation of s. 784.021(1)(a) and 775.087 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

34

!!A|03-16995

**STATE OF FLORIDA, COUNTY OF MIAMI-DADE:**

       Personally known to me and appeared before me, the Assistant State Attorney of the Eleventh Judicial Circuit of Florida whose signature appears below, being first duly sworn, says that the allegations set forth in this Information are based upon facts which have been sworn to as true, by a material witness or witnesses, and which if true, would constitute the offenses therein charged, and that this prosecution is instituted in good faith.



_____
Assistant State Attorney
Florida Bar # 467804
1350 NW 12th Avenue, Miami, FL  (305) 547-0100

Sworn to and subscribed before me this _____ day of _____, _____.


By:     _____
       Deputy Clerk for the Clerk of the Courts
       Notary Public

35

!!A|03-16995

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

**153**

| DIVISION | JUDGMENT | |
|---|---|---|
| ☒ CRIMINAL | ☐ Probation Violator | ☐ Retrial |
| ☐ OTHER | ☐ Community Control Violator | ☐ Resentence |

## THE STATE OF FLORIDA    VS. PABLO MANUEL DIAZ

PLAINTIFF                    DEFENDANT

## CASE NUMBER: F03-16995

FILED FOR RECORD
2001 MAY 29 AM 4:31
CLERK, CIRCUIT &
DADE COUNTY, FLA.
COUNTY CRIMINAL 17
CLOCK IN

JUDGMENT

The Defendant, _____ PABLO MANUEL DIAZ _____, being personally

before this Court represented by _____ M. Blacker, P.A. _____, his attorney

of record, and the State represented by _____ R. Gross & C. Corona _____, Assistant

State's Attorney, and having:

☒ been tried and found guilty    ☐ entered a plea of guilty    ☐ entered a plea of nolo contendere

to the following crime(s):

| COUNT | CRIME | OFFENSE STATUTE NO. | DEGREE OF CRIME | OBTS NO. |
|---|---|---|---|---|
| 1 | AGGRAVATED BATTERY, as a lesser included offense, and the defendant actually possessed a firearm, and the defendant discharged a firearm | 784.045 | 2F | |
| 3 | KIDNAPPING, and the defendant actually possessed a firearm, and the defendant discharged a firearm | 787.01(2) & 775.087 | LIFE | |

and no cause being shown why the Defendant should not be adjudicated guilty, IT IS ORDERED THAT the Defendant is hereby ADJUDICATED GUILTY of the above crime(s).

Clerk's web address: www.miami-dadeclerk.com                    Page 1 of 3

CLKCT 401  REV. 4/03
PBP 05212007

252

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☒ CRIMINAL<br>☐ OTHER | CHARGES/COSTS/FEES | CASE NUMBER<br>F05-16938 |
|---|---|---|

| THE STATE OF FLORIDA    VS. PABLO MANUEL DIAZ | |
|---|---|
| PLAINTIFF | DEFENDANT |

The Defendant is hereby ordered to pay the following sum if checked:*

☐    Fifty dollars ($50.00) pursuant to F.S. 938.03 (Crimes Compensation Trust Fund).

☐    Five dollars ($5.00) as a court cost pursuant to F.S. 938.01
(1) $3.00, F.S. 938.15 $2.00 (Criminal Justice Trust & Education Funds).

☐    A fine in the sum of $_____ pursuant to F.S. 775.0835.
(This provision refers to the optional fine for the Crimes Compensation Trust Fund, and is not applicable unless checked and completed. Fines imposed as a part of a sentence to F.S. 775.083 are to be recorded on the Sentence page(s).

☐    Twenty dollars ($20.00) pursuant to F.S. 938.09 (Handicapped and Elderly Security Assistance Trust Fund).

☐    A sum of $_____ pursuant to 938.05 (Local Government Criminal Justice Trust Fund).

☐    Restitution in accordance with attached order.

☐    Three dollars ($3.00) Juvenile Assessment Center pursuant to Dade County Ordinance 96-182, F.S. incorporating F.S. 938.17.

☐    A sum of $_____ pursuant to F.S. 27.52 (Public Defender Application Fee).

☐    A sum of $_____ pursuant to F.S. 939.18 (Court Facilities Cost).

☐    A sum of $_____ pursuant to F.S. 938.06 (Crime Stopper's Programs).

☐    A sum of $_____ pursuant to F.S. 938.19 (Teen Courts).

☐    A sum of $_____ pursuant to F.S. 775.083 (Crime Prevention Programs).

Other____*COURT COSTS ARE DEFERRED UNTIL DATE OF SENTENCING._____

DONE AND ORDERED in Open Court in Dade County, Florida this __11TH__ day of ____MAY____, 20 _07_.

JUDGE JULIO E. JIMENEZ

Clerk's web address: www.miami-dadeclerk.com          Page _2_ of _3_

CLK/CT 413 REV. 9/06

253

☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☑ CRIMINAL<br>☐ OTHER | FINGERPRINTS OF DEFENDANT |
|---|---|

THE STATE OF FLORIDA          VS.

Pablo          Diaz

| PLAINTIFF | DEFENDANT |
|---|---|

CASE NUMBER:  03-16995

I herby certify that the foregoing fingerprints on this judgment are the fingerprints of the defendant named above, and that they were placed thereon by said defendant in my presence, in open court, on this date and that the defendant provided the below Social Security Number or was unable to provide said number as indicated.

Fingerprints taken by _____
                        Name              Title

CLOCK IN

FILED

MAY 1 1 2007

CLERK

I. LUMPUY

## FINGERPRINTS OF DEFENDANT

| 1. R. Thumb | 2. R. Index | 3. R. Middle | 4. R. Ring | 5. R. Little |
|---|---|---|---|---|
| | | | | |

| 1. L. Thumb | 2. L. Index | 3. L. Middle | 4. L. Ring | 5. L. Little |
|---|---|---|---|---|
| | | | | |

Social Security Number of Defendant _____

DONE AND ORDERED in Open Court in Miami-Dade County, Florida this _____ day of _____, 20 _____

MAY 1 1 2007

_____
JUDGE
JULIO E. JIMENEZ

Page 3 of 3

254

CLK/CT 854 . REV. 7/03

Clerk's web address:  www.miami-dadeclerk.com

☐ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION | JUDGMENT |
| --- | --- |
| ☒ CRIMINAL<br>☐ TRAFFIC<br>☐ OTHER | OF<br>ACQUITTAL |

THE STATE OF FLORIDA     VS. PABLO MANUEL DIAZ

PLAINTIFF          DEFENDANT

CASE NUMBER: F03-16995

IT APPEARING UNTO THE COURT that you, _____ PABLO MANUEL DIAZ _____ have been found

**NOT GUILTY** by:     ☒  Verdict of a jury

☐  The Court sitting without a jury

of the offense(s) of ASSAULT/AGGRAVATED/WITH A FIREARM, as set forth in Count 6 of the Information.

IT IS THEREFORE ORDERED AND ADJUDGED that you stand acquitted of the offense(s) as set forth above and

IT IS FURTHER ORDERED AND ADJUDGED that you are hereby discharged ~~in the above-styled cause~~ and your sureties exonerated.

DONE AND ORDERED at Miami, Florida this ___11TH___ day of ____MAY____, 20 07.

JUDGE JULIO E. JIMENEZ

Clerk's web address: www.miami-dadeclerk.com

CLK/CT 52  REV. 4/03
PBP 05222007

255

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL, CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA     258

| DIVISION | SENTENCE |
|----------|----------|
| [X] CRIMINAL | |

AS TO COUNT: 1

| PLAINTIFF(S) | VS. DEFENDANT(S) |
|---|---|
| THE STATE OF FLORIDA | PABLO MANUEL DIAZ |
| CASE NUMBER: F03-016995 | OBTS NUMBER _____ |

The Defendant, being personally before this Court, accompanied by his/her
attorney(s): MICHAEL BLACKER, PA
and having been adjudicated guilty herein, and the Court having given the defendant
an opportunity to
be heard and to offer matters in mitigation of sentence, and to show cause why
he/she should not be sentenced as provided by law, and no cause
having been shown:

And the court having on 05/11/07 deferred imposition of sentence until this date.

IT IS THE SENTENCE OF THE COURT that the defendant is hereby:

    Is hereby committed to the custody of the Florida Department of Corrections.

TO BE IMPRISONED:

    For a term of 15.00 Year(s).


    (THE STATE WAIVES HABITUAL VIOLENT OFFENDER MINIMUM/MANDATORY.)

    (THE COURT DOES NOT IMPOSE MINIMUM/MANDATORY FOR FIREARM.)



IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA    259

| DIVISION | | |
|---|---|---|
| [X] CRIMINAL | | SENTENCE |

AS TO COUNT: 3

| PLAINTIFF(S) | VS. DEFENDANT(S) |
|---|---|
| THE STATE OF FLORIDA | PABLO MANUEL DIAZ |

CASE NUMBER: F03-016995

OBTS NUMBER _____

The Defendant, being personally before this Court, accompanied by his/her
attorney(s):MICHAEL BLACKER,PA
and having been adjudicated guilty herein, and the Court having given the defendant
an opportunity to
be heard and to offer matters in mitigation of sentence, and to show cause why
he/she should not be sentenced as provided by law, and no cause
having been shown:

CLOCK IN

2007 AUG 17  AM 11: 02

CLERK, CIRCUIT & COUNTY COURT,
DADE COUNTY, FLA.
COUNTY CRIMINAL #17

FILED FOR RECORD

H. LUMPKY.

And the court having on 05/11/07 deferred imposition of sentence until this date.

IT IS THE SENTENCE OF THE COURT that the defendant is hereby:
    Is hereby committed to the custody of the Florida Department of Corrections..

TO BE IMPRISONED:
    For a term of Natural Life.

    (THE STATE WAIVES HABITUAL VIOLENT OFFENDER  MINIMUM/MANDATORY.)
    (THE COURT DOES NOT IMPOSE MINIMUM/MANDATORY FOR FIREARM.)

PBP-08/13/07
REV 10/02
Clerk's web address: www.miami-dadeclerk.com

Page 2 of 4

260

IN REF: Defendant
. , .' . PABLO MANUEL DIAZ

## SPECIAL PROVISIONS

CASE NUMBER: F03-016995

AS TO COUNT: 1, 3

By appropriate notation, the following provisions apply to the sentence imposed:

MANDATORY / MINIMUM PROVISIONS:

| CATEGORY | SPECIAL PROVISION DESCRIPTION | SPECIFICATION |
|---|---|---|
| Prison Release Reoffender | The defendant is adjudicated a Prison Release Reoffender and has been sentenced to a maximum term in accordance with the provision of Florida Statute 775.082(8). It is further ordered that the Defendant shall not be released until the expiration of the sentence. | WITH A 15 YEAR MINIMUM/MANDATORY AS TO COUNT 1. WITH A LIFE MINIMUM/MANDATORY AS TO COUNT 3. MINIMUMS/MANDATORIES ARE TO RUN CONCURRENT WITH EACH OTHER. |

IN REF: Defendant

PABLO MANUEL DIAZ

## OTHER PROVISIONS

CASE NUMBER:  F03-016995

| CATEGORY | OTHER PROVISION DESCRIPTION | SPECIFICATION |
|---|---|---|
| Jail Credit | It is further ordered that the Defendant shall be allowed a total of the specified time as credit for time incarcerated prior to imposition of this sentence. | 1,459 DAYS. |
| Consecutive/concurrent as to Other Counts | It is further ordered that the sentence imposed for counts specified shall run as indicated with the sentence set forth in counts specified of this case. | COUNTS 1 & 3 CONCURRENT. |

In the event the above sentence is to the Department of Corrections, the Sheriff of Dade County, Florida, is hereby ordered and directed to deliver the defendant to the Department of Corrections at the facility designated by the Department together with a copy of this Judgment and Sentence and any other documents specified by Florida Statutes.

The defendant in Open Court was advised of his right to appeal from this sentence by filing notice of appeal within thirty days from this date with the Clerk of this Court, and the defendant's right to the assistance of counsel in taking said appeal at the expense of the State upon showing indigence.

In imposing the above sentence, the Court further recommends:

* COURT COST(S) IMPOSED AS FOLLOWS:  $50.00 PURSUANT TO F.S. 775.083(2); $5.00 PURSUANT TO F.S. 938.01(1) & F.S. 938.15; $50.00 PURSUANT TO F.S. 938.03(4); $200.00 PURSUANT TO F.S. 938.05(1); $65.00 PURSUANT TO F.S. 939.185(1)(a) (Additional Court Cost); $3.00 PURSUANT TO F.S. 938.19 (Teen Courts); & $85.00 PURSUANT TO F.S. 939.185(1)(b) (Surcharge).  (The total is $458.00.)  *

DONE AND ORDERED in Open Court in    Miami-Dade County, Florida    this    18th day of   June, 2007.

JUDGE JULIO JIMENEZ



# DISTRICT COURT OF APPEAL
## THIRD DISTRICT OF FLORIDA

---

### CASE NO. 3D07-1774

---

PABLO DIAZ

Appellant,

vs.

STATE OF FLORIDA

Appellee.

**RECEIVED**

**JUN 11 2009**

**ATTORNEY GENERAL MIAMI OFFICE**

---

ON APPEAL FROM THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

---

## APPELLANT'S AMENDED INITIAL BRIEF

---

ROY D. WASSON
WASSON & ASSOCIATES, CHARTERED
Courthouse Plaza—Suite 600
23 West Flagler Street
Miami, FL 33130
(305) 666-5053 Telephone
(305) 666-9511 Facsimile

Court-Appointed
Counsel for Appellant



WASSON & ASSOCIATES, CHARTERED
Courthouse Plaza • Suite 600 • 28 West Flagler Street • Miami, FL 33130 • Telephone (305) 666-5053
roy@wassonandassociates.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : ii

STATEMENT OF THE CASE AND OF THE FACTS  . . . . . . . . . . . . . . . . . . : 1

SUMMARY OF THE ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : 5

ARGUMENT:

      I.     THE TRIAL COURT ERRONEOUSLY DENIED
              DEFENDANT'S MOTION FOR MISTRIAL
              BASED ON *WILLIAMS* RULE EVIDENCE . . . . . . . . . . . . . . . . : 7

     II.    THE TRIAL COURT ERRONEOUSLY OVERRULED
              DEFENDANT'S OBJECTIONS TO DETECTIVE
              MORIN'S PSEUDO-PSYCHOLOGICAL EVALUATION
              OF MS. RUIZ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : 12

    III.   IN BEING PRECLUDED FROM CALLING THE
              VICTIM DEFENDANT WAS DENIED HIS
              FUNDAMENTAL RIGHT TO CALL WITNESSES
              ON HIS BEHALF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :

i

**WASSON & ASSOCIATES, CHARTERED**
Courthouse Plaza • Suite 600 • 28 West Flagler Street • Miami, FL 33130 • Telephone (305) 666-5053
roy@wassonandassociates.com

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                PAGE

*Chambers v. Mississippi*, 410 U.S. 284(1973) ............................... : 18

*Doctors Co. v. Dep't of Insurance,*
    940 So. 2d 466 (Fla. 1st DCA 2006) ................................... : 16

*Doorbal v. State,* 837 So. 2d 940 (Fla. 2003) ........................... : 13

*J.A.D. v. State,* 695 So. 2d 445 (Fla. 1st DCA 1997) ...................... : 16

*Pieze v. State,* 243 So. 2d 442 (Fla. 3d DCA 1971) ...................... : 18

*Rodriguez v. State,* 753 So. 2d 29 (Fla. 2000) ......................... : 13

*Slimey v. State,* 944 So. 2d 270 (Fla. 2006) ........................... : 13

*Smith v. State,* 606 So. 2d 641 (Fla. 1st DCA 1992) ..................... : 18

*Stav v. State,* 860 So. 2d 478 (Fla. 4th DCA 2003) ..................... : 13

*Williams v. State,* 110 So. 2d 654 (Fla. 1959) .......................... : 13


OTHER AUTHORITIES                                                    PAGE

Fla. Evid. Code 90.702. ............................................ : 15

ii

## STATEMENT OF THE CASE AND FACTS

### A. Introduction:

This is an appeal from a judgment of conviction and sentence in a criminal case. R.II-254-56. The Defendant was charged in a seven-count information with one count for the attempted felony murder of Katherine[1] Ruiz; one count of possession of a firearm by a convicted felon; one count for the kidnapping of Katherine Ruiz with a weapon, and four counts[2] of aggravated assault with a firearm. R.I-27-34.

### B. Events Giving Rise to the Charges[3]:

The case arose out of a domestic squabble between the Defendant Diaz and his lover, Katherine Ruiz, that commenced in her apartment in the Fortune House condominium hotel, in the Brickell area of Miami. The victim, Ms. Ruiz, was romantically involved with the Defendant for about one month before the events giving rise to the charges against him. Tr.199.

The incident followed a day at the beach by Mr. Diaz, Ms. Ruiz, and another

---

[1] The trial transcript reflects that the victim's name is spelled "Catherine."

[2] The alleged victims of the aggravated assaults were Antonio Baldizon, Jose Biggotti, Dennis Florez and Thomas Roberts. R.I-31-34.

[3] The evidence is presented in the light most favorable to the prosecution.

1

couple. Tr.200. Although not directly related to the charges against the Defendant, Ms. Ruiz got into a punching match with the other female in the foursome on the way home from the beach. Tr. 202-03. After that other woman struck Ms. Ruiz and injured her nose, Mr. Diaz and Ms. Ruiz got out of the car and called someone else to give them a ride to Ms. Ruiz's apartment. Tr.203.

Less than an hour after returning to the apartment, the trouble began between the Defendant and Ms. Ruiz. Mr. Diaz pulled a gun from a drawer, causing Ms. Ruiz to arm herself with a knife and to run outside of the apartment, with the Defendant following her. Tr.205.

Ms. Ruiz "started knocking on all the doors, ran down the twenty-third floor," and tried to get an elevator. Tr.205-06. She and the Defendant entered the elevator and went downstairs. Tr.206. Before entering the elevator, while the couple was arguing, Ms. Ruiz dropped the knife. Tr.206. During their argument, Ms. Ruiz and Mr. Diaz were hitting each other. Tr.207. Mr. Diaz demanded that Ms. Ruiz fetch her keys so that he could go back inside her apartment to get approximately $3,000 that was there. Tr.207. That was money that the couple had been saving, planning on purchasing a car together. Tr.207.

The couple rode the elevator down to the sixth floor, where they continued to argue and fight in the bathroom. Tr.208. During that argument, the Defendant

2

threatened to kill Ms. Ruiz. Tr.208. Ms. Ruiz then decided to go downstairs to the lobby and look for help from the staff working at the front desk of her apartment building. Tr.209.

According to the victim's testimony, she arrived at the front desk bloody and beaten. Tr.209. The desk clerk, Dennis Flores, testified that "she looked okay" to him, other than having "a minor scrape here, and that she was missing a nail." Tr. 384. Ms. Ruiz asked the desk clerk to summon the police. Tr. 384. He instead called building security, and a security guard came to the lobby and summoned police. Tr.210, 384.

Ms. Ruiz testified that, during the argument in the lobby, Mr. Diaz pulled the gun out of his pants, causing Ms. Ruiz to jump over the counter because she was afraid that the Defendant was going to shoot her. Tr.211. Mr. Diaz instructed her to "get back over the counter," and she complied. Tr. 211-12.

Mr. Flores heard the couple arguing over the money issue. Tr. 385. He did not see a gun in Mr. Diaz's possession until Ms. Ruiz was almost back in front of the counter. "That is when he actually pulled out the gun," according to Mr. Flores. Tr. 386. Mr. Diaz dragged Ms. Ruiz by her hair from behind the counter. Tr. 387. Although Mr. Flores did not see where the couple went, Ms. Ruiz testified that she was dragged by her hair up the stairway to the second floor while Mr. Diaz was

3

holding his pistol. Tr.212.

The Defendant pushed her into the back seat of the car, and got into the driver's seat. Mr. Diaz drove Ms. Ruiz from the Brickell area toward Little Havana to 17th Avenue and Flagler Street. Tr.213. Ms. Ruiz tried to get out of the car along the way, but every time she would try to open the door, Mr. Diaz would hit her. Tr.214.

They arrived at a cafeteria at the intersection of 17th Avenue and Flagler Street, where Mr. Diaz got out of the car to get a drink of water. Tr.214. Ms. Ruiz tried twice to get out of the car at that point, but the Defendant kept closing the door and preventing her from exiting. Tr.214.

While the car was parked near the cafeteria, Mr. Diaz fired a bullet into the back seat, grazing Ms. Ruiz on her lower back. Tr.215-16. Thereafter, the couple left the cafeteria by car, continuing to argue back and forth, until Ms. Ruiz was "finally able to jump out. . . and started running the other way." Tr.217-18. Ms. Ruiz jumped into a car occupied by strangers, who took her to get help from the police. Tr.218.

There was other testimony from various witnesses consistent with the State's position at trial. Because the sufficiency of the evidence is not an issue in this appeal, there is no need for either party to address that other testimony.

Ms. Ruiz went back to live with Mr. Diaz after the incidents in question. Tr. 225. There was no other violence between the couple during that reconciliation. Tr.

4

226. It was the Defendant's theory of defense that the fact that Ms. Ruiz went back with her lover was evidence that the events of the evening in question did not rise to the level of attempted murder and kidnapping, but was a lovers' quarrel.

At the conclusion of her testimony during the prosecution's case-in-chief, counsel for the Defendant "ask[ed] the Court to reserve the right to recall" the victim, Ms. Ruiz, during the defense case. Tr.379. The trial court addressed Ms. Ruiz and advised her as follows: "I am ordering you to return if we call you. I would need you back here. You need to return. OK?" Tr. 380. Ms. Ruiz responded in the affirmative. Tr.380.

However, after the prosecution rested and defense counsel attempted to call Ms. Ruiz as a witness, the trial court sustained the State's objection to her being re-called. When the trial court asked defense counsel the purpose of re-calling Ms. Ruiz, counsel responded that he wanted to ask about "Ms. Ruiz' prior statement to the Defendant." Tr.726. Counsel explained that Ms. Ruiz, in prior conversations with the Defendant, "had told him that on two previous occasions, she had cut two of her previous boyfriends." Tr.728.

It was the Defendant's position that he was placed in fear for his own safety and Ms. Ruiz "came out of the kitchen, saw the money, went back to—in the kitchen . . . [,] produced a knife, a sharp knife, and started to threaten him." Tr. 728.

5

Defendant took the position that Ms. Ruiz' actions, combined with her statements to Mr. Diaz concerning cutting her previous boyfriends, supported his theory of self-defense. Tr.728.

The trial judge precluded the Defendant from re-calling Ms. Ruiz unless and until Mr. Diaz took the stand in his own defense and testified that he felt threatened by her actions:

> If your client gets on the stand or you somehow bring out what you just said happened inside the apartment, that she threatened your client with a knife, and that's why he got a gun, that's why he ran out, if all that comes, *then you may have the right to recall her to bring out what was his state of mind and the prior problems that she had with the other boyfriends about attacking.*

> But at this point, you don't have the right unless you present that defense.

> * * *

> But what you just said here, that part of your defense is that she has told your client that in the past, she has cut a couple of boyfriends, and that that day, she produced a knife and your client—

> And that is why your client grabbed the weapon and ran out.

> If that comes out, then you know, *if your client were to say all that* and now becomes an issue of defense, *you might be able to bring her back*, but at this point, you can't.

Tr.729-30 (emphasis added).

Defense counsel asked whether the trial court's ruling would remain the same

6

"if he [sic] admitted that she told him that on two occasions." However, the trial court maintained its ruling that the defense could not re-call Ms. Ruiz to establish that fact, stating: "well, it has no relevance at this point unless you—unless what you said the defense was—was actually the defense. Then it may become relevant. But at this point, it's irrelevant. . . . What she did to other boyfriends is irrelevant at this point." Tr.730.

### C. Course of Proceedings:

The Defendant filed a sworn motion to dismiss Counts IV through VII of the information asserting that "[d]epositions of the victims in each of the four aggravated assault counts. . . as well as the other documentary and video evidence reveals that there are no disputed facts and the undisputed facts do not establish a *prima facia* case of guilt of aggravated assault with a firearm on each of the counts." R.I-149.

The clerk's minutes reflect that the motion to dismiss was denied. R.I-15. However, the State Attorney in her traverse to the motion *nolle prossed* Counts IV, V and VII, which alleged aggravated assaults upon the victims Baldizon, Biggotti and Roberts. The original Count II for possession of a firearm by a felon was bifurcated, and the case went to trial only on three counts of the information: Count I was the attempted felony murder charge; Count II was for kidnapping Ms. Ruiz with a

7

firearm; and Count III was for aggravated assault upon Dennis Flores[4].  Tr.55-56.

Prior to trial the prosecution filed a Notice of State's Intention to Seek Enhance Penalty of the Defendant as a habitual felony offender and as a habitual violent felony offender. R.I-36.

On Count I the Defendant was found guilty of the lesser included offense of aggravated battery with a firearm during which he "discharged a firearm." R.II-240. The jury found Mr. Diaz guilty of kidnapping with a firearm under Count II, during which he discharged the firearm.  R.II-240.   Mr. Diaz was found not guilty of aggravated assault under Count III.  R.II-241.

Defense counsel filed a motion for judgment of acquittal notwithstanding the verdict, for a new trial, and for arrest of judgment. R.II-242. That motion was denied without argument at the time of sentencing . R.II-278.

At sentencing the prosecution sought to enhance the Defendant's sentence as a prison releasee re-offender. R.II-279.  The Court sentenced Mr. Diaz to a fifteen-year minimum mandatory sentence on Count I for aggravated battery. R.II-257, 288.

---

[4] Mr. Flores' name was spelled Florez in the information.  During trial this aggravated assault count was amended (over objection) to reflect the State's theory that Mr. Flores was the victim of assault by way of the Defendant pointing the gun at Ms. Ruiz in the presence of Mr. Flores, causing him to fear being hit with a stray round. The propriety of that amendment was mooted by the not guilty verdict on that count.

WASSON & ASSOCIATES, CHARTERED

Courthouse Plaza • Suite 600 • 28 West Flagler Street • Miami, FL 33130 • Telephone (305) 666-5053
roy@wassonandassociates.com

On Count II for kidnapping, Mr. Diaz was sentenced to life with a life minimum mandatory as a prison releasee re-offender. R.II-257[5], 288.

## SUMMARY OF THE ARGUMENT

The first issue in this appeal is the trial court's erroneous denial of a motion for mistrial. The Defendant timely reserved motions for mistrial during the testimony of the lead detective, who unexpectedly volunteered testimony to the effect that the Defendant had been threatening family members of the victim and posed a danger to them. That testimony conveyed inadmissible hearsay and prejudiced the jury by informing it of uncharged misconduct by the Defendant.

Another error made by the trial court in connection with the lead detective's testimony was in overruling objections to her pseudo-psychological evaluation of the victim, Katherine Ruiz. Detective Morin testified over objections as to psychological characteristics of victims of domestic abuse to return to their abusers. That testimony undercut Defendant's theory of defense in this case: that the reason Ms. Ruiz went back to live with the Defendant after the incident in question was because he had not attempted to murder her and kidnap her.

Further, by expressing purported expertise that evaluated Ms. Ruiz as a victim

---

[5] In the judgment and sentence, the kidnapping count is mistakenly referred to as Count III. See R.II-252, 257, 261.

9

of abuse, Detective Morin again conveyed to the jury that Mr. Diaz was guilty of crimes with which he had not been charged, to wit: chronic abuse of his lover. These errors deprived the Defendant of a fair trial and require reversal.

The trial court erroneously precluded the Defendant from calling as a witness the victim, Katherine Ruiz. Defense counsel established that it was expected that Ms. Ruiz would testify that she had informed the Defendant, prior to the crimes in question, that she had cut two of her previous boyfriends with knives. That evidence was relevant to the Defendant's defense of self-defense. The denial of Defendant's fundamental right to call witnesses on his own behalf during the case-in-chief was reversable error.

## ARGUMENT

### I.

### THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT'S MOTION FOR MISTRIAL BASED ON *WILLIAMS* RULE EVIDENCE

The prosecution called as a witness Detective Marie Morin Fernandez, who was the lead investigator on the case. Tr.738. Detective Morin had been called by Ms. Ruiz's mother, who had not heard from Ms. Ruiz for some time after going back to live with the Defendant. Detective Morin then attempted to locate Ms. Ruiz. On direct examination by the State, Detective Morin was asked "what efforts did you

10

make to find or locate her?" Tr.751. She responded as follows: "The only thing I could do is to let the people who she was having contact with know that I need to talk to her; that it was imperative; *that her life was in danger,* and also make contact—" Tr.751.

Defense counsel immediately objected and reserved a motion when Detective Morin referred to Ms. Ruiz's life being endangered. The objection was sustained and the jury was instructed to disregard her last answer. Tr.751.

Detective Morin was asked about whether she wanted to reunite Ms. Ruiz's young child with Ms. Ruiz, as follows: "The fact that, in your opinion, you wanted—her to be with her mom, you—that she was taking good care of the child?" Detective Morin answered "No," but then volunteered additional information that had not been called for in the question, as follows:

> What I wanted is for Katherine to cooperate, so I could have this individual—you know, so we could make this case, have this individual arrested, because of the danger.

> He committed a crime, not only against her, but against other people, and then *he is threatening not only her child, but her brothers, sisters, and her family, so this is a person who is dangerous.*

> We need to get this person off the streets.

Tr.780 (emphasis added). Defense counsel again reserved a motion. Tr.780.

At the conclusion of Detective Morin's testimony, defense counsel argued the

11

motion for mistrial that he had reserved, as follows:

>    Mr. Blacker: I did reserve a motion, so I want to make it a part of the record.

>    Officer Morin, she came in here, and that's why I had a side bar.

>    She was going to say that Katherine Ruiz was afraid of the Defendant.

>    And then I was going to lead into that she was there for twelve days at his home, or thirteen days.

>    It turns out that Officer Morin volunteering, without me knowing this, said that she was afraid of him, because *he had threatened her mother, or father, and her child*, and she said on a few occasions.

>    And I couldn't object, because I didn't know it was coming.

>    But I did preserve, and I think the Court on one occasion you limited it, and on two, you didn't —

>    She made three statements to that effect.

>    Conclusory remarks that had to be hearsay.

>    She didn't have any of this information, itself. In fact, she didn't continue on the case until June 11.

>    I seek a mistrial at this time.

Tr.804-05 (emphasis added). The motion for mistrial was denied. Tr.805.

The trial court erroneously denied Defendant's motion for mistrial because there was no way to cure the taint of the unexpected testimony from Detective Morin

12

that the Defendant had been threatening and frightening Ms. Ruiz's family members. That testimony was based on inadmissible hearsay. Further, it harmfully prejudiced the Defendant by advising the jury of uncharged misconduct on his part.

The evidence that the Defendant had threatened Ms. Ruiz's brothers, sisters, and her family was inadmissible evidence of collateral crimes pursuant to *Williams v. State*, 110 So. 2d 654 (Fla. 1959). Such evidence is admissible only "when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." *Slimey v. State*, 944 So. 2d 270, 287 (Fla. 2006).

The standard of review applicable to the denial of a mistrial based upon the improper evidence as to which the trial court sustained Defendant's objection is whether a mistrial "is necessary to insure that the Defendant receives a fair trial." *Rodriguez v. State*, 753 So. 2d 29, 39 (Fla. 2000). The standard of review applicable to the denial of a mistrial following the erroneous overruling of an objection is whether the error was harmless beyond a reasonable doubt. *Id. Accord, e.g., Doorbal v. State*, 837 So. 2d 940, 956-57 (Fla. 2003). "On the *Williams* Rule issue, the standard of review applicable to the consideration of whether evidence was properly admitted is abuse of discretion." *Stav v. State*, 860 So. 2d 478, 480 (Fla. 4th DCA

13

2003).

Mr. Diaz was denied a fair trial by the trial court's ruling because Detective Morin's unsolicited testimony transformed the Defendant, in the eyes of the jury, from someone who had been involved in a single day's altercation with his love interest into someone terrorizing others without provocation. The jury would be much more likely to return a guilty verdict against someone they heard was threatening and frightening virtual strangers. The mistrial should have been granted and this Court should reverse the trial court's ruling on a mistrial.

## II.

### THE TRIAL COURT ERRONEOUSLY OVERRULED DEFENDANT'S OBJECTIONS TO DETECTIVE MORIN'S PSEUDO-PSYCHOLOGICAL EVALUATION OF MS. RUIZ

Detective Morin, who was not shown to have any qualification as a psychologist, psychiatrist, or any other sort of mental health expert, was permitted by the trial court to provide testimony calling for such expertise and impairing Mr. Diaz's theory of defense. That theory was that the reason Ms. Ruiz had gone back to reside with Mr. Diaz following the altercation in question was because the events of the night of the altercation did not rise to the level of attempted murder and kidnapping, but were much less serious.

Detective Morin placed herself in the role of a mental health expert explaining

14

to the jury an alternative basis for Ms. Ruiz's actions in returning to live with Mr.

Diaz.  The questions and answers pertaining to this issue were as follows:

> Just let me ask you this: her behavior, the behavior of going back to live with the offender, who allegedly committed this offense, is that, in your experience, the behavior of a person that's been abused?

> Mr. Blacker: Objection.

> The Court: Overruled

> The Witness: Absolutely.

> That is not uncommon at all.

> It is very frequently that victims even refuse to press charges. Very frequently victims become aggressive, and even abusive to people who try to help.

> By Ms. Corona:

> Q.     And because a victim—

> Mr. Blacker: Objection as to that comment.

> The Court: Overruled.

Tr.797.

Detective Morin was not qualified to render an opinion concerning the

behavior of victims in returning to live with the alleged perpetrator.  Such opinions

would be admissible only from "a witness qualified as an expert by knowledge, skill,

experience, training, or education." See Fla. Evid. Code 90.702.

15

It is reversible error to allow a witness to render opinions concerning the behavior of crime victims without qualifications as an expert. *E.g., J.A.D. v. State*, 695 So. 2d 445 (Fla. 1st DCA 1997). Not only did Detective Morin through her pseudo-psychological evaluation of Ms. Ruiz undercut the Defendant's theory of defense, the Detective also characterized Mr. Diaz as a chronic abuser.

The standard of review of a trial court's ruling allowing purported expert testimony is an abuse of discretion standard. *See Doctors Co. v. Dep't of Insurance*, 940 So. 2d 466, 468 (Fla. 1st DCA 2006). It must be an abuse of discretion to allow expert opinion testimony from someone who has not even been asked a single question about her qualifications. There is nothing inherent in the job of a police investigator that would qualify Detective Morin to explain Ms. Ruiz's behavior to the jury. The trial court abused its discretion in overruling the Defendant's objections to this prejudicial testimony. Therefore, reversal is required.

### III.

### IN BEING PRECLUDED FROM CALLING THE VICTIM DEFENDANT WAS DENIED HIS FUNDAMENTAL RIGHT TO CALL WITNESSES ON HIS BEHALF

The trial court deprived the Defendant of his constitutional right to call witnesses on his own behalf by precluding him from calling the victim, Ms. Ruiz, to present testimony that would have supported Defendant's self-defense theory. During

16

the prosecution's case-in-chief, defense counsel cross-examined Ms. Ruiz about the prosecution's version of the events of the crime. At the conclusion of her testimony on behalf of the State, defense counsel stated his intention to call Ms. Ruiz as a defense witness during the Defendant's case-in-chief. The trial court recognized Defendant's right to re-call Ms. Ruiz, and informed her that she was to make herself available when requested.

After the prosecution rested, the defense attempted to call Ms. Ruiz as a witness. She was present in the courthouse and ready to testify, but the trial court sustained the State's objection to her testimony, based on the argument that the defense had cross-examined the witness at length. Tr.726.

Defense counsel disclosed that the testimony he expected from Ms. Ruiz was that she had previously told the Defendant that she had cut two of her prior boyfriends with knives. That testimony would have been relevant to the Defendant's frightened mental state during the altercation between himself and the victim. The jury could have concluded that the Defendant was acting in self-defense because the victim, who had armed herself with a knife, had previously injured other boyfriends.

The trial court also accepted the State's argument that the Defendant must lay a foundation for the victim's testimony on the self-defense issue by raising self-defense as a defense. The trial court indicated that Ms. Ruiz's testimony would be

17

material only in the event that the Defendant should himself take the witness stand and testify that he was acting in self defense at the time of the episode in question. Tr.729-32.

Neither the fact that the Defendant had cross-examined Ms. Ruiz during the prosecution's case, nor the fact that the Defendant had not testified on his own behalf, justified the trial court's refusal to allow the Defendant to call her as a witness. "The rights to confront and cross-examine witnesses and *to call witnesses on one's own behalf have long been recognized as essential to due process*." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). "The Sixth Amendment right to offer the testimony of witnesses and to compel their attendance is applicable to state prosecutions." *Pieze v. State*, 243 So. 2d 442, 443 (Fla. 3d DCA 1971).

There is no requirement that the Defendant first take the stand to testify that he was afraid of the victim in order for the defense to present testimony of specific prior acts of the victim that instilled fear in the Defendant. "[W]hen self-defense is raised, evidence of the victim's reputation is admissible to disclose his or her propensity for violence and the likelihood that the victim was the aggressor, while *evidence of prior specific acts of violence by the victim is admissible to reveal the reasonableness of the Defendants' apprehension at the time of the incident.*" *Smith v. State*, 606 So. 2d 641, 642-43 (Fla. 1st DCA 1992)(emphasis added).

18

WASSON & ASSOCIATES, CHARTERED

Courthouse Plaza • Suite 600 • 28 West Flagler Street • Miami, FL 33130 • Telephone (305) 666-5053
roy@wassonandassociates.com

The Defendant's testimony was unnecessary to establish the foundation for Ms. Ruiz's testimony because her testimony would have established the Defendant's knowledge of her prior violent actions.  The trial court committed harmful error in denying leave to call Ms. Ruiz as a witness and the judgment on conviction based thereon should be reversed.

## CONCLUSION

WHEREFORE, the trial court having erroneously denied Defendant's motion for mistrial, having erroneously overruled objections to Detective Morin's pseudo-psychological evaluation of the victim and having erroneously denied Defendant his right to call the victim as a witness, Mr. Diaz was denied a fair trial and the judgment of conviction and sentence should be reversed.

Respectfully submitted,

ROY D. WASSON
WASSON & ASSOCIATES, CHARTERED
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, Florida 33130
(305) 666-5053 Telephone
(305) 666-9511 Facsimile
roy@wassonandassociates.com

By: _____
ROY D. WASSON
Florida Bar No. 332070

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by U.S. Mail upon Ansley B. Peacock, Office of the Attorney General, 444 Brickell Avenue, Suite 650, Miami, FL 33131; on this the 10th day of June, 2009.

By: _____
ROY D. WASSON
Florida Bar No. 332070

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that the foregoing brief has been computer generated in 14 point Times New Roman and complies with the requirements of Rule 9.210.

By: _____
ROY D. WASSON
Florida Bar No. 332070

20

h07-1-20451-
S

IN THE DISTRICT COURT OF APPEAL OF FLORIDA
THIRD DISTRICT

CASE NO. 3D07-1774

**PABLO DIAZ,**

Appellant,

-vs-

**THE STATE OF FLORIDA,**

Appellee.

---

APPEAL FROM THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR MIAMI-DADE COUNTY

---

**ANSWER BRIEF OF APPELLEE**

---

BILL McCOLLUM
Attorney General
Tallahassee, Florida

ANSLEY B. PEACOCK
Assistant Attorney General
Florida Bar Number 0669253
Office of the Attorney General
Department of Legal Affairs
444 Brickell Avenue, Suite 650
Miami, Florida 33131
(305) 377-5441

RECEIVED
DEC 1 4 2009
ATTORNEY GENERAL
MIAMI OFFICE



DOCKETED
DEC 1 4 2009
ATTORNEY GENERAL

## TABLE OF CONTENTS

INTRODUCTION ................................................................................1

TABLE OF AUTHORITIES .............................................................1

STATEMENT OF THE FACTS AND CASE ...................................1

SUMMARY OF THE ARGUMENT ...............................................18

ARGUMENT ...................................................................................19

    I.    THE TRIAL COURT CORRECTLY DENIED DEFENDANT'S MOTION FOR MISTRIAL AS THE OBJECTED TO TESTIMONY WAS NOT WILLIAMS RULE EVIDENCE. ....................................................19

        A.    *Defendant's argument that Detective Morin's testimony constituted Williams rule evidence was not preserved for appellate review.* ...........................19

        B.    *If the objection was properly preserved, Detective Morin's testimony did not constitute Williams rule evidence, but was testimony concerning events that were inextricably intertwined with the charged crime.* ..........................................................21

    II.    THE TRIAL COURT CORRECTLY DENIED DEFENDANT'S OBJECTION DURING DECTIVE MORIN'S TESTIMONY. .............................................23

    III.    DEFENDANT WAS NOT DENIED THE RIGHT TO CALL A WITNESS ON HIS BEHALF. ................................29

CONCLUSION ................................................................................35

CERTIFICATE OF SERVICE .......................................................36

CERTIFICATE OF COMPLIANCE ..............................................36

i

# TABLE OF AUTHORITIES

## Cases

*Borders v. State,*
433 So. 2d 1325 (Fla. 3d DCA 1983)...................................................30

*Britton v. State,*
928 So. 2d 386 (Fla. 5th DCA 2006)..................................................31

*Brown v. State,*
124 So. 2d 484 (Fla. 1960) ...............................................................20

*Dennis v. State,*
817 So. 2d 741 (Fla. 2002) ...............................................................25

*Dorsett v. State,*
944 So. 2d 1207 (Fla. 3d DCA 2006).................................................22

*F.B. v. State,*
852 So. 2d 226 (Fla. 2003) ........................................................20, 23

*Farina v. State,*
937 So. 2d 612 (Fla. 2006) ...............................................................24

*Goodwin v. State,*
751 So. 2d 537 (Fla. 1999) ........................................................20, 29

*Gore v. State,*
964 So.2d 1257 (Fla. 2007), *cert. denied,* 128 S. Ct. 1250 (2008)....................20, 23

*Gould v. State,*
745 So. 2d 354 (Fla. 4th DCA 1999)..................................................28

*Harrell v. State,*
894 So. 2d 935, 941 (Fla. 2005) .......................................................24

*Hawthorne v. State,*
408 So. 2d 801 (Fla. 1st DCA 1982)..................................................28

*Insko v. State,*
969 So. 2d 992 (Fla. 2007) ................................................................20, 23

*J.A.D. v. State,*
695 So. 2d 445 (Fla. 1st DCA 1997) ....................................................24

*J.B. v. State,*
705 So. 2d 1376 (Fla. 1998) ..................................................................20

*Jackson v. State,*
983 So. 2d 562 (Fla. 2008) ..............................................................20, 23

*Pressley v. State,*
395 So. 2d 1175 (Fla. 3d DCA 1981) ....................................................32

*Robertson v. State,*
829 So. 2d 901 (Fla. 2002). ..................................................................21

*Rodriguez v. State,*
753 So. 2d 29 (Fla. 2000) ......................................................................25

*Sliney v. State,*
944 So. 2d 270 (Fla. 2006) ....................................................................22

*State v. DiGuilio,*
491 So. 2d 1129 (Fla. 1986) ......................................................28, 29, 33

*State v. Hickson,*
630 So. 2d 172 (Fla. 1994) ....................................................................28

*Warren v. State,*
577 So. 2d 682 (Fla. 1st DCA 1991) ....................................................30

*Williams v. State,*
110 So. 2d 654 (Fla. 1959) ..............................................................19, 21

## Statutes

§ 776.012, Fla. Stat. (1997) ...................................................................................30

## INTRODUCTION

The Appellant, Pablo Diaz, was the defendant below, and the Appellee, the State of Florida, was the prosecution below. In this brief, the parties will be referred to as they stood in the proceedings below. The symbols "R." and "T." will refer to the record on appeal and the trial transcript respectively.

## STATEMENT OF THE FACTS AND CASE

Defendant was charged by information with the following seven counts: count one, attempted felony murder of victim Katherine Ruiz; count two, possession of a firearm by a convicted felon; count three, armed kidnapping of victim Katherine Ruiz; count four, aggravated assault with a firearm of victim Antonio Baldizon; count five, aggravated assault with a firearm of victim Jose Biggotti; count six, aggravated assault with a firearm of victim Dennis Florez; and count seven, aggravated assault with a firearm of victim Thomas Roberts. (R. 27-35). All of the charges stem from an incident that occurred on June 8, 2003. (R. 27-35).

On December 13, 2005, Defendant filed a sworn motion to dismiss counts four, five, six, and seven. (R. 149). Defendant argued that based on the depositions of each victim, while they observed Defendant brandishing the firearm, they did

1

not feel threatened by Defendant. (R. 149-61). In the traverse, the State announced that they would drop the charges alleged in counts four, five, and seven. (R. 166, 329). The charge in count six, aggravated assault with a firearm of Dennis Florez, was amended to reflect that the firearm was pointed at Katherine Ruiz. (R. 166-68). The trial court denied the motion as to count six. (R. 335). Prior to trial, the court severed count two, possession of a firearm by a convicted felon from the remaining counts. (R. 302-03, T. 22-3). The counts were renumbered for the purpose of trial, and count three became count two, and count six became count three. (R. 302-03).

On May 7, 2007, the trial commenced with jury selection.

Katherine Ruiz testified that in June 2003, she had known Defendant for one to two years, and had been romantically involved with him for one month. (T. 199). On June 7, 2003, she spent the day and night with Defendant and another couple at her apartment. (T. 200, 269). The other couple were Defendant's friends. (T. 268). That night they went to Miami Beach to one of the bars. (T. 269). After the bar, she went for a swim at the beach. (T. 272-74). She had one or two drinks during that time. (T. 269-70). On the way home, while sitting in the backseat, the other female, Attalia Bello, punched her in the face and they started to argue. (T. 202-03). Ms. Ruiz did not remember the reason for the argument. (T. 290). During this argument, Defendant did not hit her, but got her out of the vehicle. (T.

2

299).  After they exited the vehicle, Defendant called a friend for a ride back to her apartment.  (T. 203).  She left her belongings, her purse, wallet, and sunglasses inside the vehicle.  (T. 210).  Defendant told her that he would help her get it back. (T. 307-08).

They went to her apartment, which was on the 23rd floor of the Fortune House Condominium.  (T. 203, 205).  After awhile, she went into the bedroom and observed Defendant counting money.  (T. 310).  She became angry, but not about the money, and they started to argue.  (T. 203, 205, 313).  At some point during the argument, Defendant went into the other room and returned with a firearm.  (T. 204).  He walked into the kitchen with a pillow and the firearm.  (T. 311-12).  The gun was not owned by Ms. Ruiz and she did not know that it was in the apartment. (T. 204-05).  Ms. Ruiz grabbed a knife in response to seeing the firearm and then ran out of the apartment.  (T. 204-05, 312).  She started knocking on the other apartment doors, with Defendant following her.  (T. 205).  At some point during the argument, they were on the stairs, and at that time she dropped the knife.  (T. 206). During this time, Defendant was hitting her while still holding the firearm, and she was hitting him back.  (T. 206).  He hit her in the nose, and caused it to start bleeding again.  (T. 314).  While fighting in the stairwell, they realized that they were locked out of the apartment.  (T. 207-08).  Defendant wanted to get back into

3

the apartment to retrieve his money from the apartment, approximately $3,000.00. (T. 207-08, 313).

They went down in the elevators and ended up on the 6th floor. (T. 208). They proceeded to continue the fight, and ended up inside the bathroom located on the sixth floor. (T. 208). In the bathroom, he smashed her head into the toilet. (T. 316). During this time, Defendant threatened to kill her. (T. 208). They ended up in the lobby of the apartment building, at the front desk in order to get a key to her apartment. (T. 209, 318). At this point, she was bleeding, her clothes were ripped, and her shirt and pants were bloody. (T. 209). Her fingernails were also ripped off. (T. 209). At the front desk, Defendant used the telephone to try to locate Ms. Ruiz's purse. (T. 210). While Defendant was on the telephone, she attempted to signal the front desk clerk, Dennis Florez, to call the police. (T. 210). At this time, security came into the front lobby, and informed Mr. Florez that the police had been called. (T. 210). Ms. Ruiz jumped over the front desk counter because she was scared Defendant was going to shoot her. (T. 211).

Ms. Ruiz ended up back on the other side of the front desk, and Defendant dragged her by the hair, to stairs and to the second floor garage. (T. 212). He still held the firearm in his hand while dragging her. (T. 212). He forced her into the backseat of his car, and he got into the driver's seat. (T. 213). He started driving towards Little Havana, and during this time they were still fighting. (T. 213). She

4

kept trying to exit the vehicle, and every time she attempted to open the door, he would hit her. He finally stopped the vehicle at a cafeteria to go get a drink of water. (T. 214). She attempted to get out of the vehicle two more times, and he hit her both times. (T. 214). There were other individuals around the cafeteria, but Defendant told them not to get involved in the fight, that it was a personal issue. (T. 215). During this time she was screaming and crying. (T. 215). When a man tried to intervene, Defendant took out the firearm and fired a shot into the back seat. (T. 215). Ms. Ruiz was burned by the bullet, in the back, and the bullet went into the back seat. (T. 215-16). She did not remember if he fired the gun any additional times. (T. 216).

Defendant drove away from the cafeteria, and they continued to fight. (T. 217). Ms. Ruiz was finally able to jump out of the vehicle and started to run in the opposite direction that the vehicle was traveling. (T. 217-18). She jumped into another vehicle, and screamed that he was going to kill her. (T. 218). The passengers in the other vehicle helped her and called the police. (T. 218). While they were driving they observed a police vehicle parked on the road, and they pulled over to side. (T. 219).

After speaking with the police, an ambulance was called and she was taken to the hospital. (T. 219). After being at the hospital for several hours, she refused treatment, and a police officer drove her back to her apartment. (T. 220, 339-40).

5

It was between 3:00 a.m. and 5:00 a.m. (T. 341). Once at home, she went to sleep, and got up around 9:00 a.m. or 10:00 a.m. (T. 341). She checked her voice messages, and Defendant had left her five messages. (T. 220-21). In the messages, he threatened her and her daughter. (T. 221). Later that day, she received a phone call from Defendant's mother. (T. 223-24). Ms. Ruiz agreed to meet with Defendant's mother because they had a good relationship. (T. 224). However once she arrived at the meeting place, Defendant was there with his mother. (T. 224). After speaking with his mother, she decided to go home with Defendant and his mother. (T. 225). She went with them because she was scared and worried about what Defendant might do. (T. 225). She stayed there for a period of days, and during that time, everything was normal and there was no additional violence. (T. 226). She would call her mother, but not tell her where she was located. (T. 357-59). During this time, she was not threatened or forced to stay at the house, but could come and go freely. (T. 361-62).

During this time, she knew that the police wanted to speak with her, but she did not want to have the police involved. (T. 227-28). Eventually, on June 19, 2003, when she went home to gather more belongings, the police found her and took her to the police station. (T. 228, 271, 363). She gave a taped statement, but did not tell the truth during that statement. (T. 229). At a later date, she decided to cooperate with the police because of her daughter. (T. 229).

During Ms. Ruiz's testimony, the state introduced photographs of her apartment and the building, and photographs from the video surveillance cameras that were able to capture some of the incident. (T. 231-39). The state introduced photographs taken at the hospital, showing Ms. Ruiz's injuries. (T. 239). She described her injuries, stating that she had a "bashed in nose," was bleeding, and her fingernails were broken down to the cuticle. (T. 240). She also had scratches and bruises on her chest. (T. 241). The state also introduced recordings of the messages that Defendant left on her voice mail. (T. 242). Ms. Ruiz identified the voice as Defendant's voice. (T. 242). The recordings were played for the jury, and a transcript was provided to each juror. (T. 245-55). The messages included threats to Ms. Ruiz and her family,

> I wonder how many skin I could take off Casiana. If catch her I'm gonna go (inaudible) in Coral Way and (inaudible) to your step daddy (inaudible).

> . . . . .

> Sweetie, wake your ass up, hey I'm gonna give you until tomorrow at night to bury you and I'm also gonna go on Monday, tomorrow directly to Juan's office and raise hell because you owe me $3,600 dollars okay, . . . .

> . . . .

> So just keep that in your conscience and that you know, I know where grandma stays, I know where everybody stays, I'mma [sic] see your boy in um, 89 and Coral Way tomorrow, you (inaudible) but um, don't down and I want my $3,600 dollars, you know what I'm capable

of doing, don't mess with me, I'm preparing your picture to bury you, bury you tonight, . . .

(R. 351-52).

On cross-examination, Ms. Ruiz acknowledged that during two prior sworn statements, she admitted to smoking marijuana that night. (T. 271-73). She also admitted that in a sworn statement taken in September 2004, she stated that Defendant had held her down while the other female struck her, however, he had in fact, helped her. (T. 303-05). Ms. Ruiz acknowledged that in prior sworn statements she testified that she immediately jumped over the front desk when they were in the lobby of the apartment. (T. 330-31). Defendant repeatedly asked her questions as to whether she smoked crack cocaine, and Ms. Ruiz repeatedly denied using the drug. (T. 342-44, 347-48, 371). At the conclusion of Ms. Ruiz's testimony, Defendant reserved the right to recall her as a witness. (T. 379).

Mr. Dennis Florez was the receptionist at the Fortune House Condominium where Ms. Ruiz resided. (T. 381). On June 8, 2003, his shift was from 11:00 p.m. to 6:00 a.m. (T. 381). While working at the building, he would occasionally see Ms. Ruiz. (T. 381-82). He did not know Defendant. (T. 382). On June 8, 2003, he first observed Defendant and Ms. Ruiz when they exited the service elevator and asked to use the phone. (T. 383). Ms. Ruiz appeared normal and was not hysterical or screaming at that time. (T. 401-02). She appeared to be slightly intoxicated, and had some minor scrapes and was missing a fingernail, but he did not see any major

8

bleeding. (T. 384, 398, 411). However, when they approached the desk, Ms. Ruiz asked him to call the police. (T. 383). This was within approximately five minutes of when they first arrived in the lobby. (T. 383-84). On cross-examination, he acknowledged that in his deposition taken in 2004, he stated twenty minutes elapsed before Ms. Ruiz asked him to call the police. (T. 403).

When Ms. Ruiz and Defendant went into the front office to use the telephone, Mr. Florez called security and asked them to call the police. (T. 384). He then heard Ms. Ruiz asking for help, and he observed her behind the front desk counter. (T. 385). During this time, Defendant kept demanding for his money. (T. 385). The security guard arrived and requested them to calm down. (T. 386). Defendant started struggling with the victim and started swinging the firearm around. (T. 386). Mr. Florez was approximately four feet away when he observed the firearm. (T. 386). The gun was not pointed at Mr. Florez, but Defendant did swing it in his direction while struggling with Ms. Ruiz. (T. 397). He did not feel threatened at any point, just afraid when the firearm was pointed in his direction. (T. 408).

Defendant then dragged Ms. Ruiz over the front counter by her hair while she tried to hold on to the counter. (T. 387). She finally released the counter, and he dragged her across the floor towards the parking garage. (T. 387-88). After they entered the garage, Mr. Florez called 9-1-1, and the tape was published to the jury.

(T. 388, 416).  During Mr. Florez's testimony, the state introduced video recording taken from the video surveillance cameras that were located in the building. (T. 390-94).   They also introduced still photographs from the video surveillance cameras. (T. 394-96).

The state called other witnesses that observed various portions of the incident. Jose Bigotti was the valet parking attendant on June 8, 2003. (T. 432-33). He was unable to identify Defendant in court. (T. 434).   While in the lobby speaking with Mr. Florez, Ms. Ruiz and a male came into the lobby and at first were calm, but began to argue. (T. 436-37, 450).  He only understood part of the argument, where the man was demanding $4,000.00. (T. 437).  He left the lobby for a brief period of time and then returned. (T. 451).  When he returned, they were still arguing and Ms. Ruiz jumped over the front desk, and the man pulled out a silver plated firearm. (T. 437-38, 440, 454).   While holding the firearm, he continually struck Ms. Ruiz. (T. 440-43).  Mr. Bigotti was scared because the man told him that if he called the police, he would be killed. (T. 441).  Mr. Bigotti ran away and called 9-1-1 from his cell phone. (T. 438).  He could hear the man taking her upstairs while continuing to strike her. (T. 444).

A few days after the incident, Mr. Bigotti was asked to identify the man from a photographic line-up. (T. 447).  He was immediately able to identify the

man, and did not have any doubt as to his identification. (T. 448). The photographic line-up was introduced into evidence. (T. 448).

Thomas Roberts was the security guard at the Fortune House Condominium on June 8, 2003. (T. 473). While on rounds that evening, at about 1:00 a.m., he received a radio call from the other security guard. (T. 478). Because of the call, he went to the lobby of the condominium. (T. 478-79). When he arrived in the lobby, there were a man and women arguing about money. (T. 480-81). The woman appeared nervous and the man was shouting. (T. 481-82). The female was located behind the front desk, and the man dragged her by her feet to the other side. (T. 482). At this point, the man brought out a silver firearm. (T. 483-85). The man dragged the victim towards the garage. (T. 485-87). A few days after the incident, he was asked to identify the male in a photographic line-up, and was able to pick out the person without hesitation. (T. 493-95).

Rodimiro Baldizin owned a cafeteria on West Flagler Street on June 8, 2003. (T. 513). In the early morning hours, he observed, through the window, a car pull up with a couple arguing inside. (T. 514). The woman was located in the back seat. (T. 515). He could hear the male calling the female a prostitute and the female was crying. (T. 515). The male pulled her out of the vehicle, but when the female attempted to leave, he ordered her back into the vehicle, produced a firearm

11

and fired a shot into the air. (T. 516-17).  The male caught up to her, grabbed her by the hair, and pushed her back into the vehicle. (T. 517).

The male then pointed the firearm at Mr. Baldizin and told him that the matter did not concern him. (T. 518).  The female was struggling to exit the vehicle, but the male kept her inside the vehicle and repeatedly hit her with his fist. (T. 519).  He did not see the man fire the firearm into the vehicle. (T. 535).  They drove away in the vehicle. (T. 526).  Mr. Baldizin called 9-1-1, and a copy of the recording was played for the jury and a translation of the recording was introduced into evidence. (T. 521-24).  He also identified the male in a photographic line-up shown to him a few days after the incident. (T. 529-30).

Johanna Rodriguez was driving her friend, Lesbia Morales, home via Flagler Street on June 8, 2003. (T. 541-42).  While driving, she observed a vehicle parked on the right hand side, and observed a man standing at the back seat door, hitting someone in the back seat. (T. 543-45).    She then went around the block to try to get the license plate number of the vehicle, and parked her vehicle for Ms. Morales to get out and write down the number. (T. 546, 564).  She followed the vehicle when it drove away. (T. 546).

After obtaining the license plate number and calling the police, Ms. Rodriguez's vehicle was stopped at a traffic light two cars behind the other vehicle. (T. 552).  While stopped, her backseat door opened and the female got in,

screaming for help. (T. 552). The female screamed that the man had a weapon and was going to kill her. (T. 553). The female appeared to be intoxicated and injured. (T. 576-78). The other vehicle began to follow her car. (T. 554). While driving, she observed three patrol units and stopped her vehicle. (T. 554-55). Two weeks after the incident, she was asked to identify the male and female through photographic line-ups. (T. 556). She was able to identify both individuals. (T. 556-58).

Lesbia Morales was the passenger in Ms. Rodriguez's vehicle. (T. 582). At first she did not see anything, but they circled the block. (T. 584). After circling the block, she observed a male attacking a female. (T. 584). She had Ms. Rodriguez stop the vehicle, and she got out to intervene. (T. 585). However, the male came towards her, told her to not get involved, and showed her a firearm. (T. 587). She went back to her vehicle and spoke to 9-1-1 operator. (T. 588-90). The 9-1-1 operator instructed them to return to the scene and write down the tag number. (T. 589). However, the vehicle had already departed, so they started to follow the vehicle. (T. 589). While stopped at a red light, the female exited her vehicle, and jumped into Ms. Rodriguez's vehicle. (T. 589). The female was screaming for help. (T. 589-90). She was bruised, bloody and could barely walk. (T. 594-95). A translation of the 9-1-1 recording was introduced into evidence and the recording was played for the jury. (T. 591). After the incident she identified

both individuals in photographic line-ups, which were published to the jury. (T. 595-96).

Detective Morin was the lead investigator for the incident. (T. 738-39). She was assigned to the case on June 11, 2003, after Ms. Ruiz's mother called the police station. (T. 740). Her mother did not know Ms. Ruiz's location and was concerned for her safety. (T. 742). She located Ms. Ruiz on June 19, 2003, at her residence. (T. 751-52). Through Detective Morin, Defendant brought out the different and conflicting statements that Ms. Ruiz made to the police. (T. 769-790).

The state also called the crime scene technicians that processed the scenes, taking photographs, collecting evidence, and dusting for latent fingerprints. (T. 626-70). Ms. Ruiz's apartment appeared ransacked. (T. 637-38). Officer Hector Infante, the crime scene investigator who processed Defendant's vehicle, a 1994 Chevrolet Cavalier, testified that he discovered a small, semi-circular hole on the backseat. (T. 683-84, 715). He discovered, by dismantling the back seat, the hole extended all the way through the vehicle. (T. 686). The projectile that made the hole would have ended up on the pavement under the vehicle. (T. 686). The hole originated in the interior of the vehicle. (T. 688-89). He was unable to testify as to when the hole was made in the vehicle. (T. 702).

Prior to the presentation of his case-in-chief, Defendant requested for the state to produce Ms. Ruiz and her mother for a brief direct examination. (T. 724).

14

The state objected, inquiring into the purpose of bringing her back since Defendant had cross-examined her for three hours. (T. 724-25). Defendant stated it was to explore a prior statement made to Defendant. (T. 726). The state objected again, stating that he could have asked the questions during cross-examination. (T. 726).

> MS. CORONA: Judge, he had three hours yesterday on cross-examination. More than that.
>
> She was here the entire day, from 9:30 in the morning until 5:30 in the afternoon to cross-examine her.
>
> Now, he wants to bring her back in because he missed a few questions, Judge.
>
> This is unfair to the victim at this point.
>
> There is no rebuttal.
>
> There is no reason for - -
>
> There is nothing that has come out in any testimony that would need to cause him to call her again to bring her to - - through this again.
>
> I would ask defense counsel what he needs to rebut, because the only reason he would be allowed to call her is for rebuttal or something of a State's witness, something a State witness said.
>
> And there is no witness that has said anything contrary to what Ms. Ruiz has said to date.

(T. 726-27). Defendant responded that the testimony was necessary for his theory of self defense. (T. 727-28). The testimony would establish she was the aggressor. (T. 728). The state responded that the testimony was irrelevant because the charges were based on what occurred in the lobby of the condominium and at the cafeteria. (T. 728). The trial court ruled

> THE COURT: You can argue whatever you want, as long as it's supported by the evidence somehow, by the wildest stretch of the imagination.

15

> But what you just said here, that part of your defense is that she has told your client that in the past, she has cut a couple of boyfriends, and that that day, she produced a knife and your client - -
>
> And that is why your client grabbed the weapon and ran out.
>
> If that comes out, then, you know, if your client were to say all that and now becomes an issue of defense, you might be able to bring her back, but at this point, you can't.

(T. 729-30).

Later in the trial, Defendant requested a second time for Ms. Ruiz to be produced as a defense witness to demonstrate Defendant's state of mind. (T. 802). The court denied the request, stating that Defendant's state of mind would only become relevant if he testified. (T. 802). Defendant made a motion for mistrial based on Detective Morin's testimony concerning Defendant's threats against Ms. Ruiz's family. (T. 804-05). The trial court denied the motion. (T. 805). Defendant then moved to disqualify Catherine Ruiz as a witness arguing that she was incapable of telling the truth. (T. 807). The trial court denied the motion. (T. 808).

In Defendant's case-in-chief, he presented a stipulation concerning Atalia Bello, the female involved in the first altercation with Ms. Ruiz. (T. 810). Pursuant to the stipulation she would have testified that she punched Ms. Ruiz in the mouth several times, and then left, taking Ms. Ruiz's personal effects. (T. 811). Also, pursuant to stipulation, Defendant introduced into evidence, an incident report filed by Officer Christian Alvarez-Vega. (T. 813). Defendant called Ilusion Abud, the ex-wife of Mr. Baldizin. (T. 619). She was present at the cafeteria on June 8,

16

2003. (T. 620).   While working, she heard a loud commotion outside. (T. 620). She did not see anything, but heard two gunshots. (T. 621-22).

Defendant called his mother, Olga Diaz, and his employer, Frank Acosta, to testify that in the days after the incident, Ms. Ruiz was with him and was there willingly and not under any threat. (T. 814-820, 825-42).   Defendant elected not to testify. (T. 844).   After resting his case, Defendant made a motion for judgment of acquittal which was denied. (T. 856-57).

Defendant and the state presented closing arguments, and the trial court charged the jury. (T. 939).   After deliberations, the jury returned the following verdict: count one, guilty of aggravated battery with a firearm, as a lesser included offense of attempted felony murder; count three, guilty of kidnapping with a firearm; and count six, not guilty of aggravated assault. (R. 239-41, 255, T. 996). Defendant filed a motion for judgment of acquittal notwithstanding the verdict, new trial and arrest of judgment. (R. 242-51).   The trial court denied the motion. The trial court adjudicated Defendant guilty and imposed a sentence of fifteen years for count one, and life in prison for count two. (R. 259-60).   The trial court also designated Defendant as a prison release reoffender and imposed a fifteen year minimum mandatory sentence for count one, and a life sentence in count three. (R. 261, 284-88).

## SUMMARY OF THE ARGUMENT

The trial court correctly denied Defendant's motion for mistrial as Detective Morin's testimony concerning the threats to Ms. Ruiz's family members did not constitute *Williams* rule evidence because the incident was inextricably intertwined with the charged incident. Further, the evidence had already been introduced when the state introduced recordings of Defendant's voice messages on Ms. Ruiz's voice mail where he repeatedly threatened her and her family.

The trial court correctly denied Defendant's objection during Detective Morin's testimony concerning her opinion as to why Ms. Ruiz returned to Defendant after the incident. First, the objection was a general objection, and thus, did not preserve the issue for appellate review. However, even if preserved, the testimony was admissible because it was clearly opinion testimony and Defendant opened the door to the testimony during his cross-examination of Detective Morin.

Finally, the trial court did not deny Defendant the right to recall Ms. Ruiz. Defendant had already extensively cross-examined Ms. Ruiz and the purported reason for recalling her as a witness, to inquire into her violent character, was not permissible because Defendant had failed to establish a theory of self-defense prior to asking the question. However, even if the trial court erred, this constituted harmless error.

18

## ARGUMENT

I. **THE TRIAL COURT CORRECTLY DENIED DEFENDANT'S MOTION FOR MISTRIAL AS THE OBJECTED TO TESTIMONY WAS NOT WILLIAMS RULE EVIDENCE.**

A. *Defendant's argument that Detective Morin's testimony constituted Williams rule evidence was not preserved for appellate review.*

Defendant alleges statements made by Detective Morin's during her testimony constituted improper *Williams* rule evidence.[1] During Detective Morin's testimony, she stated that she made numerous efforts to locate Ms. Ruiz due to threats Defendant had made against her and her family. (T. 780, 804-05). After the conclusion of this testimony, Defendant moved for a mistrial, arguing that these statements, specifically, the testimony that Defendant "had threatened her mother, or father, and her child," were hearsay. (T. 804-05). Now, for the first time on appeal, Defendant is alleging that this testimony is improper *Williams* rule testimony.

Since Defendant only raised a hearsay objection to Detective Morin's testimony, the issue is not preserved for appellate review. "'To preserve error for appellate review, the general rule is a contemporaneous, specific objection must occur during trial at the time of the alleged error.'" *Jackson v. State,* 983 So. 2d

---

[1] *Williams v. State,* 110 So. 2d 654 (Fla. 1959).

19

562, 568 (Fla. 2008) (*quoting Gore v. State,* 964 So. 2d 1257, 1265 (Fla. 2007), *cert. denied,* 128 S. Ct. 1250 (2008)). "The rule 'not only affords trial judges the opportunity to address and possibly redress a claimed error, it also prevents counsel from allowing errors in the proceedings to go unchallenged and later using the error to a client's tactical advantage.'" *Insko v. State,* 969 So. 2d 992, 1001 (Fla. 2007) (*quoting F.B. v. State,* 852 So. 2d 226, 229 (Fla. 2003)). Therefore, since Defendant raised the objection citing hearsay, the issue is not preserved for review as to whether the evidence constituted improper *Williams* rule evidence.

Thus, since the alleged error was not preserved by a contemporaneous objection, it can only be considered on direct appeal if it constitutes fundamental error. *Goodwin v. State,* 751 So. 2d 537, 544 (Fla. 1999). In order for error to be fundamental and to "'justify a reversal in the absence of timely objection the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *F.B,* 852 So. 2d at 229 (*quoting Brown v. State,* 124 So. 2d 481, 484 (Fla. 1960)). Therefore, an error is fundamental "when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process." *J.B. v. State,* 705 So. 2d 1376, 1378 (Fla. 1998).

In the instant case, Detective Morin's statements do not constitute fundamental error. Detective Morin testified that she was attempting to locate Ms.

Ruiz due to Defendant's threats made on her life and her family's life. However, this testimony was introduced through the messages Defendant left on Ms. Ruiz's cell phone. (T. 245-55). In those messages, Defendant threatened to find Ms. Ruiz and to skin her daughter. (R. 351-52). Therefore, additional testimony that mentioned the threats was not prejudicial and did not reach down into the validity of the trial.

> **B.** *If the objection was properly preserved, Detective Morin's testimony did not constitute Williams rule evidence, but was testimony concerning events that were inextricably intertwined with the charged crime.*

In the alternative, if the objection was preserved, this testimony does not constitute *Williams* rule evidence. In *Williams v. State,* 110 So. 2d 654 (Fla. 1959), the Florida Supreme Court clarified the rule of admissibility for similar fact evidence. "[E]vidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception of rule of exclusion." *Id.* at 663. This includes evidence that implicates a defendant in the commission of another crime. *Id.* Pursuant to section 904.404(2)(b)(1), Florida Statutes, in order to introduce evidence of collateral crimes, the state must file a notice of intent to rely on evidence of a defendant's prior misconduct. *Robertson v. State,* 829 So. 2d 901, 907 (Fla. 2002). In the instant case, no such notice was provided, and the claim

21

that the testimony constituted *Williams* rule evidence was not raised in the trial court.

However, the *Williams* rule is not applicable to evidence that is inextricably intertwined with the charged crimes. "The *Williams* rule, on its face, is limited to '*similar fact evidence.*'" *Sliney v. State*, 944 So. 2d 270, 287 (Fla. 2006) (*quoting* § 904.404(2)(a), Fla. Stat.) (emphasis supplied).

> Thus, evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged is not *Williams* rule evidence. It is admissible under section 90.402 because it is a relevant and inseparable part of the act which is in issue. . . It is necessary to admit the evidence to adequately describe the deed.

*Sliney*, 944 So. 2d at 287 (quotations omitted). *See also Dorsett v. State*, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006). Thus, this evidence is not subject to the notice requirement found in section 904.404, Florida Statutes.

In the instant case, the testimony at issue, Defendant's threats to the victim family members, is not evidence of a collateral crime, but is inextricably intertwined with the present charges. After the incident, when Ms. Ruiz was finally able to escape, Defendant made numerous phone calls to the victim's cell phone and left voice messages threatening to kill the victim and her family members. (R. 351-52, T. 245-55). Specifically, Defendant threatened to skin her daughter and go to her father's place of employment. (R. 351-52). These messages were played to the jury and entered into evidence. Thus, Detective Morin's

22

testimony concerning the threats made to the victim's family were with regards to these voice messages, and therefore, were inextricably intertwined with the kidnappings and aggravated assault of Ms. Ruiz. Therefore, the trial court correctly denied Defendant's objection and motion for mistrial.

## II. THE TRIAL COURT CORRECTLY DENIED DEFENDANT'S OBJECTION DURING DECTIVE MORIN'S TESTIMONY.

Defendant alleges that the trial court improperly allowed Detective Morin to provide an expert opinion on the reason why Ms. Ruiz went back to Defendant after the incident. Defendant argues that Detective Morin was not qualified to render an opinion on abused females. However, as demonstrated by Defendant's brief, the objection raised at trial was a general objection, and did not specifically state that the objection was based on improper expert testimony. (T. 797). As stated above in Issue I, "'[t]o preserve error for appellate review, the general rule is a contemporaneous, specific objection must occur during trial at the time of the alleged error.'" *Jackson,* 983 So. 2d at 568 (*quoting Gore,* 964 So. 2d at 1265). "The rule 'not only affords trial judges the opportunity to address and possibly redress a claimed error, it also prevents counsel from allowing errors in the proceedings to go unchallenged and later using the error to a client's tactical advantage.'" *Insko,* 969 So. 2d at 1001 (*quoting F.B.,* 852 So. 2d at 229).

In the case cited to in Defendant's initial brief, the defendant clearly raised an objection based on improper expert testimony. In *J.A.D. v. State,* 695 So. 2d 445 (Fla. 1st DCA 1997), the state asked for the witness to be qualified as an expert witness, and defense counsel conducted a voir dire. *Id.* at 447. The trial court deferred ruling, and during the testimony, the defendant objected stating that she had not been qualified as an expert. *Id.* Based on this objection, the court found that the issue was preserved for review, and determined that the error could not be deemed harmless. *Id.* at 448. In contrast, in the instant case, the state never attempted to qualify Detective Morin as an expert, and during her testimony, Defendant never raised an objection based on the fact that Detective Morin was giving improper expert testimony. Thus, the issue is only preserved for appellate review if it constitutes fundamental error. *Goodwin,* 751 So. 2d at 544.

"To be fundamental, an error must 'reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" *Farina v. State,* 937 So. 2d 612, 629 (Fla. 2006) (*quoting Harrell v. State,* 894 So. 2d 935, 941 (Fla. 2005)). Fundamental error should be applied sparingly, "only in rare cases where a jurisdictional error appears or where the interests of justice present a compelling demand for its application." *Farina,* 937 So. 2d at 629 (quotation omitted). An examination of the record, demonstrates that this testimony does not constitute fundamental error. The state

24

presented numerous eyewitnesses to the events of the evening, including two witnesses who heard Defendant threaten to kill Ms. Ruiz, two witnesses who observed Defendant drag Ms. Ruiz by her hair, one witness who observed her attempting to run away and Defendant dragging her back and then firing a warning shot in the air, and four witnesses who observed Defendant repeatedly punching and hitting Ms. Ruiz.   Thus, any testimony concerning Ms. Ruiz's decision to return to Defendant immediately following the incident did not have any bearing on the jury's verdict.

Further, Defendant opened the door to the inquiry into the reasons why Ms. Ruiz stayed with him during the cross-examination of Detective Morin.

> As an evidentiary principle, the concept of opening the door allows the admission of otherwise inadmissible testimony to qualify, explain, or limit testimony or evidence previously admitted. The concept of opening the door is based on considerations of fairness and the truth-seeking function of a trial.

*Dennis v. State*, 817 So. 2d 741, 752 (Fla. 2002) (*quoting Rodriguez v. State*, 753 So. 2d 29 (Fla. 2000)).   In *Dennis*, during the cross-examination of the lead detective, the defendant focused on the failure of the police to investigate another potential suspect. *Dennis*, 817 So. 2d at 752.   On re-direct examination, the state inquired into the reasons why the police chose not to pursue the other suspect, and the evidence that supported their decision to arrest the defendant.   The court found that the defendant's cross examination "opened the door to the State's line of

questioning aimed at rebutting the defense's implication that the officers' investigation was less than through." *Id.*

In the instant case, during Defendant's cross-examination of Detective Morin, Defendant inquired into her failure to investigate Ms. Ruiz's decision to return to Defendant after the incident.

> [DEFENSE COUNSEL]: Did you ever ask her what about the allegations that Olga Diaz made about her living there for two weeks?
> [DETECTIVE MORIN]: No.
> [DEFENSE COUNSEL]: Never asked her?
> [DETECTIVE MORIN]: Never asked her.

(T. 792).

> [DEFENSE COUNSEL]: Now, you told the jury today that Catherine Ruiz came to you and said, "Oh, I'm so scared, I don't even want to talk to you."
> Was that part of your impression that you described here today?
> [DETECTIVE MORIN]: Oh, that she was very scared.
> She didn't know which way to turn, didn't know if she should talk to us or not.

(T. 793).

> [DEFENSE COUNSEL]: And you didn't know that she came and went at her pleasure from the Redland property back to Miami during this entire period, July 11[th] through July 20[th], [sic] did you?
> [DETECTIVE MORIN]: I did not have that information.

(T. 794). Thus, Defendant emphasized the fact that while Ms. Ruiz was scared, she went back to Defendant, and lived with him for ten days. Further, that during those ten days, she was allowed to leave at any time, but Detective Morin failed to investigate this to determine whether it demonstrated that the incident did not

26

happen.    Therefore, Defendant opened the door for the state's re-direct

examination as to the reason she did not ask Ms. Ruiz about her whereabouts in the

ten days between the incident and when she spoke to the police.

> [STATE]: So, if you found out that it was, in fact, true that she had been living with him for 11 days, and you'd known that for a fact before today, after Pablo Diaz' arrest, would you have decided not to arrest him for the crime?
> [DETECTIVE MORIN]: Absolutely not.
> [DEFENSE COUNSEL]: Would you have disregarded all of the other facts that you had heard?
> Let me just ask you this:
> Her behavior, the behavior of her going back to live with the offender, who allegedly committed the offense, is that, in your experience, the behavior of a person that's been abused?
> [DEFENSE COUNSEL]: Objection.
> [THE COURT]: Overruled.
> [DETECTIVE MORIN]: Absolutely.
> That is not uncommon at all.
> It is very frequently that victims even refuse to press charges. Very frequently, victims become aggressive, even abusive to people that try to help.

(T. 797).  The state's line of questions were to dispel Defendant's contention that

Detective Morin did not adequately investigate the case and failed to determine

that the victim was still with Defendant after the incident.   Thus, the question

concerning whether Ms. Ruiz exhibited behaviors common to an abused person

was not error.

Additionally, if Defendant's questions did not invite the state's inquiry, the

testimony was proper to explain why Ms. Ruiz returned to Defendant after the

incident.  The Florida Supreme Court has found that testimony concerning battered

27

spouse syndrome is admissible and has gained general acceptance to warrant admissibility as a matter of law. *State v. Hickson,* 630 So. 2d 172, 174-75 (Fla. 1994). In fact, "'[i]t is precisely because a jury would not understand why appellant would remain in the environment that the expert testimony would have aided them in evaluating the case.'" *Id.* at 174 (*quoting Hawthorne v. State,* 408 So. 2d 801, 807 (Fla. 1st DCA 1982)). While Detective Morin was not qualified or presented as an expert in domestic abuse, she testified that she was a sergeant for the City of Miami Police Department, assigned to handle homicides and cases involving serious allegations of assault. (T. 738-39). Thus, she was situated to be able to explain to the jury that it is not unusual for a female to return to her abuser. (T. 796). This testimony did not constitute profile testimony, but was Detective Morin's opinion for the reason Ms. Ruiz returned to Defendant, and why she still pursued the investigation and arrested Defendant. *See Gould v. State,* 745 So. 2d 354, 356 (Fla. 4th DCA 1999).

Finally, if Defendant's general objection did preserve the issue for appeal, and Detective Morin's testimony concerning the victim's reasons for continuing to be with Defendant after the incident constitutes error, this error was harmless error. In *State v. DiGuilio,* 491 So. 2d 1129 (Fla. 1986), the test for harmless error was set forth,

> The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a

> reasonable doubt that the error complained of did not contribute to the verdict, or alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

*Id.* at 1135.

> The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test . . . The focus is on the effect of the error on the trier of fact.

*Goodwin,* 751 So. 2d at 541 (*quoting DiGuilio,* 491 So. 2d at 1139). A review of the evidence, as argued above, demonstrates that beyond a reasonable doubt, Detective Morin's testimony did not contribute to the conviction. The numerous eyewitnesses, who were strangers to both Ms. Ruiz and Defendant, testified to various portions of the incident, and all testified to Defendant possessing a firearm, repeatedly striking the victim, dragging the victim, and restraining and confining the victim's movements against her will. Thus, limited testimony concerning the reasons for Ms. Ruiz to continue seeing Defendant after the incident did not contribute to the verdict of guilty.

## III. DEFENDANT WAS NOT DENIED THE RIGHT TO CALL A WITNESS ON HIS BEHALF.

Defendant argues that the trial court prevented him from recalling the victim, Ms. Ruiz, as a witness during his case-in-chief, thus denying him due process. Defendant argues that the recalling of Ms. Ruiz would have supported his

29

claim of self-defense, as he would have inquired into whether she had previously told Defendant that she had cut two past boyfriends with a knife. Pursuant to section 776.012, Florida Statutes,

> A person is justified in the use of force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against such other's imminent use of unlawful force. However the person is justified in the use of force only if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.

§ 776.012, Fla. Stat. (1997). Thus, "even the slightest evidence of an overt act by the victim which may be reasonably regarded as placing the accused apparently in imminent danger of losing his life or sustaining great bodily harm," will be admissible. *Warren v. State,* 577 So. 2d 682, 674 (Fla. 1st DCA 1991) (citations omitted). Further, defendant is "afforded wide latitude in the introduction of evidence supporting his self defense theory." *Id.* at 683 (*citing Borders v. State,* 433 So. 2d 1325 (Fla. 3d DCA 1983)).

> [E]vidence of the victim's violent or aggressive character is admissible when an accused claims self-defense [ ] to prove that the accused was reasonably apprehensive of the victim and that the defensive measures of the accused were reasonable. In this situation, the evidence is being offered to prove the defendant's state of mind, that is, the reasonableness of the defendant's belief concerning imminent danger, rather than the conduct of the victim. As a foundation for the admission of evidence for this purpose, there must be some evidence of an overt act by the victim about the time of the event which reasonably indicated a need for the defendant to act in

30

self-defense, and there must be evidence that the accused knew of the victim's acts of violence or aggression.

*Britton v. State,* 928 So. 2d 386, 390 (Fla. 5th DCA 2006) (Torphy, J., concurring).

Based on this case law, a defendant must first lay a proper predicate, prior to being permitted to introduce evidence of the victim's violent tendencies. While Defendant proffered that Ms. Ruiz had previously informed him of her violent actions, specifically her past behavior in cutting boyfriends, Defendant failed to present any evidence, in the form of depositions or sworn statements, that he knew of these acts of aggression and that the victim had previously acknowledged the acts under oath. (T. 728-31). Thus, Defendant did not demonstrate a good faith basis to ask this question. Further, these questions could have been asked during Defendant's cross-examination of the Ms. Ruiz.

Since Defendant failed to demonstrate a good faith basis for the inquiry, Defendant, in all probability, could have asked this question without having the ability to properly impeach Ms. Ruiz if she denied making the statement. This would have allowed for Defendant to conduct a fishing expedition on Ms. Ruiz's prior conduct, and allowed for the jury to hear the damaging questions without any good faith basis for asking such questions. The uncontradicted testimony presented at trial was that Defendant first pointed a firearm at Ms. Ruiz before she armed herself with a knife. (T. 204-06).

31

Further, even if there was testimony that the victim was the aggressor, "a person may not use violence upon his assailant, after the assailant is no longer a threat and all danger is clearly past, and thereby claim to be acting in self-defense." *Pressley v. State,* 395 So. 2d 1175, 1177 (Fla. 3d DCA 1981).  In *Pressley,* as a result of a domestic fight, during an exchange of gunfire, the defendant killed another person. *Id.* at 1176.  The defendant argued that he was to present a theory of self-defense, that a person standing near the victim was firing a weapon at him and that he only fired his weapon in self-defense. *Id.* at 1177.  However, the evidence presented at trial was that while a member of the group did fire his gun, the defendant was driving away from the group of people at the time he fired his weapon. *Id.*  Thus, the defendant "was the aggressor and may not be said to have acted defensively." *Id.*

In the instant case, the evidence clearly demonstrated that even if Ms. Ruiz grabbed the knife prior to Defendant arming himself with a firearm, the testimony was that Ms. Ruiz ran out of the apartment first, therefore, any threat of danger had dissipated by the time Defendant pursued her to the hallway. (T. 205).  Further, Ms. Ruiz dropped the knife while on the 23rd floor of her condominium. (T. 206).  After she dropped the knife, Defendant continued pursue her, from the 23rd floor, to the 6th floor, to finally the front lobby of the building where he threatened her and displayed the firearm.  He then chose to drag her by the hair to his vehicle,

32

confine her in the vehicle and drive her away from her residence. He continually kept her inside the vehicle, punching her, and discharging the firearm when she attempted to flee from him. Thus, Defendant was the aggressor after the knife was abandoned and cannot claim that he acted defensively.

Finally, the charges against Defendant were for the incident starting in the front lobby, where there were witnesses and surveillance footage that demonstrated Defendant was repeatedly beating Ms. Ruiz and threatening her with his firearm. (T. 381-96, 432-48, 473-95). This was the theory presented by the state and argued during closing argument. (T. 927-39). There was no testimony of Ms. Ruiz possessing any time of weapon or even fighting back against Defendant's attack while in the front lobby or at the convenience store. (T. 513-30, 541-58, 582-96). Thus, whether Ms. Ruiz possessed a knife while in the apartment, or while on the 23rd floor, this was irrelevant to the charged offenses because she did not possess a knife at the time of the incident. In view of the testimony regarding Defendant's assault occurring after the victim abandoned the knife, and at a distinctly different location, Defendant failed to establish the foundation for a victim's violent character evidence, as there was no evidence of an operative, existing overt act by Ms. Ruiz at the time of Defendant's assault on her in the front lobby or in the vehicle.

However, if the trial court committed error in failing to allow Defendant to recall Ms. Ruiz for the purpose of asking her about prior incidents with boyfriends, this constituted harmless error. *DiGuilio,* 491 So. 2d at 1129. The state presented evidence from numerous witnesses that testified to Defendant's violence towards the victim, his threats, his confinement of the victim against her will, and to the fact that Ms. Ruiz did not fight back or possess any weapons during the incident. Therefore, even if Defendant had been allowed to present the testimony, this would not have changed the outcome of the verdict.   Thus, Defendant was not deprived of his fundamental right to call a witness, as he had an opportunity to extensively cross-examine the witness, and the proffered reason for calling her back would not have been admissible testimony.

## **CONCLUSION**

Based upon the arguments and authorities cited herein, Appellee respectfully requests that this Court affirm the conviction and sentence.

Respectfully Submitted,

BILL McCOLLUM
Attorney General

ANSLEY B. PEACOCK
Assistant Attorney General
Florida Bar Number 0669253
Office of the Attorney General
Department of Legal Affairs
444 Brickell Avenue, Suite 650
Miami, Florida 33131
(305) 377-5441

35

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing BRIEF OF APPELLEE was mailed this 14th day of December, 2009, to Roy Wasson, Esquire, Wasson & Associates, Courthouse Plaza, 28 West Flagler Street, Suite 600, Miami, Florida 33130.

ANSLEY B. PEACOCK
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief is typed in Times New Rome 14-point font.

ANSLEY B. PEACOCK
Assistant Attorney General

107-1-C0451

DOCKETED
APR - 7 2010
ATTORNEY GENERAL

RECEIVED
APR - 7 2010
ATTORNEY GENERAL
MIAMI OFFICE

DISTRICT COURT OF APPEAL
THIRD DISTRICT OF FLORIDA

CASE NO. 3D07-1774

PABLO DIAZ,

    Appellant,

v.

STATE OF FLORIDA,

    Appellee.

_____/

## APPELLANT'S MOTION FOR REHEARING

The Appellant moves the Court for rehearing of its per curiam affirmance entered on March 24, 2010 on the ground that the decision was rendered without oral argument, notwithstanding the undersigned's timely filed request for oral argument, and only one day after Appellant's timely-filed Reply Brief. In support of this motion, the Appellant states as follows:

1.    By virtue of the clerk's notice filed on January 12, 2010, the Reply Brief was due to be served (not filed) on February 28, 2010.

2.    February 28 was a Sunday, so the Reply Brief was due to be served on March 1, 2010.

3.    On March 1, 2010, the Appellant served his unopposed motion for enlargement

of time to serve (not to file) his Reply Brief by March 21, 2010.

4.    By order dated March 19, 2010—but not filed until March 24— the Appellant was granted an "extension of time to *file* a reply brief . . . to and including March 21, 2010." (Emphasis added).

5.    March 21 was a Sunday.

6.    The undersigned counsel had not received this Court's March 19 order when, on March 22, 2010 he timely[1] served Appellant's Reply Brief.

7.    On March 22, 2010, the Appellant served his Motion to Correct Argument Heading.

8.    The service of that motion on the same day that the Reply Brief was due to be filed pursuant to this court's March 19 order tolled the time for filing[2] of the Reply Brief pursuant to Fla. R. App. P. 9.300(b).

9.    There having been no ruling on Appellant's motion to correct argument heading by the time the Reply Brief was served on March 22 and filed on

---

[1]  The service of Appellant's Motion for Enlargement of Time on March 1, 2010 tolled all time deadlines pursuant to Fla. R. App. P. 9.300(b).

[2]  It should be noted that under the Florida Rules of Appellate Procedure there is no deadline to "file" a brief. The deadline for briefs under the rules are deadlines to "serve" the brief. *See, e.g.,* Fla. R. App. P. 9.140(g) & 9.210(f). Therefore, if this Court had granted the agreed-upon relief sought by the Appellant in his March 1 motion to enlarge the time for service of his Brief, the Reply Brief would have been due for mailing upon the Attorney General on Monday March 22 at any time prior to midnight. *See* Fla. R. App. P. 9.420(c). Filing on the next day, March 23, as was accomplished, would then have been timely pursuant to Fla. R. App. P. 9.420(b).

2

March 23, the Reply Brief was timely and should have been considered by this Court.

10.    Further, the Appellant timely served his Request for Oral Argument along with the Reply Brief. *See* Fla. R. App. P. 9.320.

11.    Therefore, this Court should have considered the Reply Brief and afforded the Appellant the opportunity to present oral argument before deciding this appeal.

WHEREFORE, this Court's decision being rendered prematurely, this motion should be granted.

Respectfully submitted,

WASSON & ASSOCIATES, CHARTERED
Court-Appointed Counsel for Appellant
Courthouse Plaza—Suite 600
28 West Flagler Street
Miami, FL 33130
(305) 666-5053 Telephone
(305) 666-9511 Facsimile
*roy@wassonandassociates.com*

By:    _____
ROY D. WASSON
Florida Bar No. 332070

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served

by U.S. Mail upon Ansley Peacock, Office of the Attorney General, 444 Brickell

Avenue, Suite 650, Miami, FL 33131; on this the 5th day of April, 2010.

By: _____
ROY D. WASSON
Florida Bar No. 332070

4

WASSON & ASSOCIATES, CHARTERED
Courthouse Plaza • Suite 600 • 28 West Flagler Street • Miami, FL 33130 • Telephone (305) 372-5220
roy@wassonandassociates.com

Florida State Courts | Courts | Opinions | New Query | Help

*Florida Third District Court of Appeal Docket*

# Case Docket

## Case Number:  3D07-1774

### Final Criminal Judgment and Sentence Notice from Dade County

### PABLO DIAZ,  vs.  THE STATE OF FLORIDA,

#### Lower Tribunal Case(s): 03-16995

List of Abbreviations    Printer Friendly View

| Date Docketed | Description | Date Due | Filed By | Notes |
|---|---|---|---|---|
| 07/11/2007 | Notice of Appeal Filed | | Maria E. Lauredo(Do Not Use) 0059412 | |
| 08/22/2007 | Motion To Withdraw as Counsel | | Hon. Julio E. Jimenez | |
| 08/28/2007 | Motion to Withdraw Granted (OG44) | | | |
| 09/20/2007 | Motion for Extension of Time | | John H. Lipinski 151805 | |
| 09/24/2007 | Extension granted to file record (OG11) | 11/19/2007 | | |
| 11/02/2007 | Motion Extension of Time For Court Repte-Transc | | | |
| 11/09/2007 | Court Reporter Extension Granted (OG16) | 11/30/2007 | | Upon request of the court reporting firm, it is ordered that the time for filing the transcribed notes is extended to and including November 30, 2007. The court reporting firm shall promptly notify the court reporter(s) of this order. cc: |
| 12/07/2007 | Motion Extension of Time For Court Repte-Transc | | | |
| 12/13/2007 | Court Reporter Extension Granted (OG16) | 01/10/2008 | | |
| 04/04/2008 | 10-Day to File Record (OR35A) | 04/14/2008 | | |
| 04/09/2008 | Motion To Withdraw as Counsel | | John H. Lipinski 151805 | |
| 04/16/2008 | Notice of Appearance | | Mark Graham Hanson 342882 | |
| 04/16/2008 | Status Report | | | AT Mark Graham Hanson 342882 and notification of diligent prosecution |
| 04/28/2008 | Motion to Withdraw Granted (OG44) | 05/15/2008 | | The motion for leave to withdraw as counsel is granted, and John H. Lipinski, Esq. is withdrawn as counsel for appellant, and relieved from any further responsibility in this cause. Upon consideration of appellant's status report filed on April 16, 2008, appellant's request for an extension of time to file the record on appeal is granted to and including May 15, 2008. |
| 05/19/2008 | Acknowledgement Letter | | | |
| 05/19/2008 | Motion for Extension of Time | | Mark Graham Hanson 342882 | for filing of the record |



| | | | | |
|---|---|---|---|---|
| 05/21/2008 | Extension granted to file record (OG11) | 06/14/2008 | | |
| 06/03/2008 | Motion To Withdraw as Counsel | | Mark Graham Hanson 342882 | and case remanded to the trial court for appointment of new counsel. |
| 06/10/2008 | Motion to Withdraw Granted (OG44) | | | Upon consideration, appointed counsel's motion for leave to withdraw as counsel for appellant is granted, and The Office of Criminal Conflict and Civil Regional Counsel and Mark Graham Hanson, Esq. are withdrawn as counsel for the appellant, and relieved from any further responsibility in this cause. This cause is remanded to the trial court for the appointment of new counsel for the appellant. |
| 07/14/2008 | Notice | | Harvey Ruvin | Notification of Conflict Attorney Selection - Roy Wasson |
| 07/25/2008 | Motion Extension of Time For Court Repte-Transe | | | |
| 08/04/2008 | Court Reporter Ext. Granted/Ordered (OG16C) | 09/24/2008 | | |
| 08/08/2008 | Notice of Appearance | | Roy D. Wasson(Do Not Use) 332070 | |
| 10/24/2008 | Received Records | | | 1 VOLUME. |
| 11/17/2008 | Mot. for Extension of time to file Initial Brief | | Roy D. Wasson(Do Not Use) 332070 | |
| 11/18/2008 | Clerk's notice granting eot (CLKEX) | 01/22/2009 | | |
| 12/24/2008 | Notice of Change of Address | | Roy D. Wasson(Do Not Use) 332070 | |
| 01/23/2009 | Mot. for Extension of time to file Initial Brief | | Roy D. Wasson(Do Not Use) 332070 | |
| 01/27/2009 | Clerk's notice granting eot (CLKEX) | 03/21/2009 | | |
| 03/24/2009 | Mot. for Extension of time to file Initial Brief | | Roy D. Wasson(Do Not Use) 332070 | |
| 03/30/2009 | Ext-gr initial brief no further extensions (OG03B) | 04/22/2009 | | |
| 04/23/2009 | Initial Brief on Merits | | Roy D. Wasson(Do Not Use) 332070 | |
| 05/18/2009 | Mot. for Extension of time to file Answer Brief | | Bill Mc Collum | |
| 05/21/2009 | Clerk's notice granting eot (CLKEX) | 07/17/2009 | | |
| 06/11/2009 | Miscellaneous Motion | | Roy D. Wasson(Do Not Use) 332070 | motion for leave to file amended initial brief |
| 06/11/2009 | Amended Appellant's Initial Brief | | Roy D. Wasson(Do Not Use) 332070 | |
| 06/16/2009 | Miscellaneous Motion Granted (OG999) | | | |
| 07/20/2009 | Mot. for Extension of time to file Answer Brief | | Bill Mc Collum | |
| 07/22/2009 | Clerk's notice granting eot (CLKEX) | 09/15/2009 | | |
| 09/17/2009 | Mot. for Extension of time to file Answer Brief | | Bill Mc Collum | |
| 09/18/2009 | Clerk's notice granting eot (CLKEX) | 11/14/2009 | | |
| 11/25/2009 | Mot. for Extension of time to file Answer Brief | | Bill Mc Collum | |
| 12/01/2009 | Extension granted to file answer brief NFE (OG04A) | 12/14/2009 | | |
| 12/14/2009 | Appellee's Answer Brief | | Bill Mc Collum | |
| 01/08/2010 | Mot. for Extension of Time | | Roy D. Wasson(Do Not Use) | |

| | | | | |
|---|---|---|---|---|
| | to File Reply Brief | | 332070 | |
| 01/12/2010 | Clerk's notice granting eot (CLKEX) | 02/28/2010 | | |
| 03/01/2010 | Mot. for Extension of Time to File Reply Brief | | Roy D. Wasson(Do Not Use) 332070 | |
| 03/19/2010 | Extension granted for reply brief 3.850 (OG05C) | | | Appellant's motion for extension of time to file a reply brief is granted to and including March 21, 2010. cc: |
| 03/23/2010 | Miscellaneous Motion | | Roy D. Wasson(Do Not Use) 332070 | motion to correct argument heading |
| 03/23/2010 | Request for Oral Argument | | | AT Roy D. Wasson 332070 AT Mark Graham Hanson 342882 AE Ansley B. Peacock AE Lane Hodes AE Bill Mc Collum AA Gwendolyn Powell Braswell 0565881 AA John H. Lipinski 151805 AA Abe A. Bailey 0480398 AA Maria E. Lauredo 0059412 |
| 03/23/2010 | Appellant's Reply Brief | | Roy D. Wasson(Do Not Use) 332070 | |
| 03/24/2010 | Affirmed - Per Curiam Affirmed | | | |
| 04/06/2010 | Motion For Rehearing | | Roy D. Wasson(Do Not Use) 332070 | |
| 04/21/2010 | West Publishing | | | |
| 04/21/2010 | Rehearing denied (OD57) | | | Upon consideration, appellant's motion to correct argument heading is hereby granted. Upon consideration, appellant's request for oral argument and motion for rehearing are hereby denied. SHEPHERD and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge, concur. |
| 05/07/2010 | Mandate | | | |
| 07/03/2013 | Returned Records | | | 1 VOLUME. |



[ List of Abbreviations ]    [ Printer Friendly View ]

Box # 32-435

DATE 9-27-10
INMATE INITIALS P.D

DN# 71
Jimenez

# IN THE CIRCUIT COURT OF THE ELEVENTH
# JUDICIAL CIRCUIT IN AND FOR DADE COUNTY, FLORIDA

**STATE OF FLORIDA,**
    Plaintiff,

v.                                    Case No.: 03-16995

**PABLO DIAZ,**
    Defendant.

P. Lopez/CB
OCT - 6 2010
ARSET 11/16
copy to ASA

## MOTION TO CORRECT ILLEGAL SENTENCE

    **COMES NOW,** defendant, Pablo Diaz, by and through his proper self and pursuant to Rule 3.800 (a), Fla. R. Crim. P., to move this Court to correct his illegal sentence.  In support thereof defendant would aver the following:

    Defendant was found guilty by a jury of:  Count I, Aggravated Battery with a Firearm, and Count II, Kidnapping with a Firearm.

I. Jimenez
JUL 1 6 2010
C. Kay JC
DN# ??
A. Porter

    Defendant was sentenced as a prior release reoffender to: 15 years as to Count I and Life for Count II.

    The sentencing error being presented herein is clear on the face of the record. Specifically, the Court record of defendant's sentencing proceeding.

Denied
w/o Hrg.

## ARGUMENT

    **DEFENDANT'S PRISON RELEASE REOFFENDER SENTENCE IS ILLEGAL DUE TO THE FACT THAT THE SENTENCING PROCEEDING WAS CONDUCTED SOLELY BEFORE AND BY THE SENTENCING JUDGE AND NOT BY THE JURY, IN DIRECT CONTRAVENTION TO THE U.S. SUPREME COURT'S HOLDINGS IN APPRENDI V. NEW JERSEY, AND BLAKELY V. WASHINGTON.**

    At the sentencing hearing the prosecutor sought to enhance the defendant's sentence based on the assertion that the defendant qualified for a prison release reoffender [hereinafter



"PRR"] sentence.  At the conclusion of the proceedings before the judge, the court did in fact sentence the defendant as a PRR.

The defendant would submit that said PRR sentence is illegal because the hearing was conducted by the judge who made the factual finding that the defendant qualified as a PRR, as opposed to said factual question being presented to the jury as required by *Apprendi v. New Jersey,* 120 S. Ct. 2348 (2000) and *Blakely v. Washington,* 124 S. Ct. 2531 (2004).

It is a matter of clearly established law that in order to establish the essential criteria for sentencing a defendant as a PRR an evidentiary hearing must be held where the State must establish by a preponderance of the evidence that the qualifying offense was committed within 3 years of the defendant's release from a State Corrections facility operated by the Department of Corrections.  *Smith v. State*, 990 So. 2d 1162, 1164 (Fla. 3rd DCA 2008).  At said hearing, the evidentiary standard set forth in *Yisreal v. State,* 986 So. 2d 491 (Fla. 2008) must be met.  The defendant would submit that it was the responsibility and duty of the jury not the judge to hear the evidence and determine whether the State had met its burden of proof.  Such a finding could easily have been made by the jury in a sentencing hearing that immediately followed the announcement of guilt.  Such a hearing would be analogous to the sentencing hearing conducted pursuant to section 921.141, Florida Statutes in the aftermath of a finding of guilty of the charge of first degree murder.

The defendant would aver that the court's failure to conduct such a jury proceeding as set forth above caused the defendant's PRR sentence to be illegal by being in direct contravention to *Apprendi* and *Blakely*.

**WHEREFORE**, defendant prays that this Honorable Court will grant relief and correct all errors it deems to have been improper, and to which the defendant is lawfully entitled.

Under penalty of perjury, Fla. Stat. 92.525 I hereby state that the foregoing is true and correct.

Respectfully submitted,

**PABLO DIAZ**
Sumter C.I.
9544 CR 476 B
Bushnell, Florida 33513-8612

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing has been delivered into the hands of a Sumter C.I. mailroom official for the purpose of mailing to:  State Attorney, Eleventh Judicial Circuit, E.R. Graham Bldg. 1350 N.W. 12th Avenue, Miami, Florida 33136-2111, this 27 day of SEPTEMBER , 2010.

**Pablo Diaz**

3

# 32-435

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

STATE OF FLORIDA,
  *Plaintiff,*
vs.

Case No. 03-16995
Section No. 71
Judge Julio Jimenez

Pablo Diaz,
  *Defendant*

### STATE'S RESPONSE TO PRO SE MOTION TO CORRECT ILLEGAL SENTENCE

COMES NOW KATHERINE FERNANDEZ RUNDLE, State Attorney of the Eleventh Judicial Circuit of Florida, by and through the undersigned Assistant State Attorney, and asks that the Court deny the defendant's Pro Se Motion to Correct Illegal Sentence based on the following:

The defendant's claim that his Prison Releasee Reoffender sentence is illegal because Florida Statute 775.082 is in direct contravention to the U.S. Supreme Court cases of *Apprendi v. New Jersey* and *Blakely v. Washington* has no merit.  See *Robinson v. State*, 793 So.2d 891 (Fla. 2001) and *Calloway v. State*, 914 So.2d 12 (Fla. 2d DCA 2005).



WHEREFORE, the State of Florida prays that this Honorable Court deny the defendant's motion as insufficient to state a claim for relief.

Respectfully submitted,

KATHERINE FERNANDEZ RUNDLE
STATE ATTORNEY

By:_____
  Colleen Kay
  Assistant State Attorney
  Florida Bar # 893160
  1350 Northwest 12th Avenue
  Miami, Florida 33136-2111
  (305) 547-0100

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and exact copy of the above was furnished to Pablo Diaz, Sumter C.I., 9544 CR 476 B, Bushnell, Florida  33513 on this 19th day of October, 2010.

Colleen Kay
Assistant State Attorney

Westlaw.

793 So.2d 891, 26 Fla. L. Weekly S516
**(Cite as: 793 So.2d 891)**

▷

Supreme Court of Florida.
Warnell ROBINSON, Petitioner,
v.
STATE of Florida, Respondent.
**No. SC00-638.**

July 12, 2001.
Rehearing Denied Aug. 29, 2001.

Defendant was convicted in the Circuit Court, Leon County, J. Lewis Hall, J., of battery on a law enforcement officer and resisting arrest with violence, and was sentenced as a prison releasee reoffender (PRR). Defendant appealed. The District Court of Appeal, 751 So.2d 737, affirmed, certifying question. The Supreme Court, Lewis, J., held that state was not required to prove beyond reasonable doubt that petitioner had been released from state correctional facility within three years of his current offense.

Decision of the District Court approved.

Quince, J., dissented.

West Headnotes

**[1] Criminal Law 110 ⟶1042.7(2)**

110 Criminal Law
   110XXIV Review
       110XXIV(E) Presentation and Reservation in Lower Court of Grounds of Review
           110XXIV(E)1 In General
               110k1042.7 Proceedings After Judgment
                   110k1042.7(2) k. Post-Conviction Relief. Most Cited Cases
                   (Formerly 110k1042)
Post-conviction petitioner failed to preserve for appellate review his contention that state was required to prove beyond reasonable doubt that he had been released from state correctional facility within three

years of his reoffending.

**[2] Sentencing and Punishment 350H ⟶1380(4)**

350H Sentencing and Punishment
   350HVI Habitual and Career Offenders
       350HVI(K) Proceedings
           350Hk1375 Evidence
               350Hk1380 Degree of Proof
                   350Hk1380(4) k. Other Particular Matters. Most Cited Cases
State was not required to prove beyond reasonable doubt that defendant with respect to whom it sought prison releasee reoffender (PRR) sentencing had been released from state correctional facility within three years of his current offense, where fact of defendant's prior release did not alter maximum penalty or create separate offense calling for separate penalty. West's F.S.A. § 775.082(9)(a)1.

**[3] Jury 230 ⟶34(6)**

230 Jury
   230II Right to Trial by Jury
       230k30 Denial or Infringement of Right
           230k34 Restriction or Invasion of Functions of Jury
               230k34(5) Sentencing Matters
                   230k34(6) k. In General. Most Cited Cases
                   (Formerly 230k24)
Prison Releasee Reoffender (PRR) Act does not increase the maximum statutory penalty for an offense, but rather limits the sentencing court's discretion in selecting a penalty within the statutory range; accordingly, proof to the jury of a defendant's release which subjects a defendant to a sentence under the PRR Act is not required. West's F.S.A. § 775.082(9)(a)1.

**[4] Jury 230 ⟶34(6)**

230 Jury
   230II Right to Trial by Jury

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

793 So.2d 891, 26 Fla. L. Weekly S516
(Cite as: 793 So.2d 891)

Page 2

230k30 Denial or Infringement of Right
230k34 Restriction or Invasion of Functions of Jury
230k34(5) Sentencing Matters
230k34(6) k. In General. Most Cited Cases
(Formerly 230k24)

**Sentencing and Punishment 350H ⟨⟩1380(4)**

350H Sentencing and Punishment
350HVI Habitual and Career Offenders
350HVI(K) Proceedings
350Hk1375 Evidence
350Hk1380 Degree of Proof
350Hk1380(4) k. Other Particular Matters. Most Cited Cases
Decision of the United States Supreme Court in *Apprendi v. New Jersey*, requiring facts increasing the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt, does not require that the release of a defendant with respect to whom prison releasee reoffender (PRR) sentencing is sought be proved to a jury beyond a reasonable doubt.
***892** Nancy A. Daniels, Public Defender, and Kathleen Stover, Assistant Public Defender, Second Judicial Circuit, Tallahassee, FL, for Petitioner.

Robert A. Butterworth, Attorney General, and Charmaine Millsaps, Assistant Attorney General, Tallahassee, FL, for Respondent.

LEWIS, J.

We have for review *Robinson v. State*, 751 So.2d 737 (Fla. 1st DCA 2000). We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

The petitioner challenges his sentence under the Prison Releasee Reoffender Act (the "Act") on several grounds, many of which have been previously addressed by opinions of this Court. *See Grant v. State*, 770 So.2d 655 (Fla.2000) (rejecting an ex post facto challenge to the Act and holding that the Act violates neither the single subject rule for legis-

lation nor principles of equal protection); *McKnight v. State*, 769 So.2d 1039 (Fla.2000) (holding that a defendant has the right both to present evidence to prove that the defendant does not qualify for sentencing under the Act and to challenge the State's evidence regarding the defendant's eligibility for sentencing as a prison releasee reoffender); *State v. Cotton*, 769 So.2d 345 (Fla.2000) (holding that the Act does not permit a "victim veto" which would violate a defendant's due process rights by precluding application of the Act in some instances but not others, as well as holding that the Act is not void for vagueness and does not constitute a form of cruel or unusual punishment); *Ellis v. State*, 762 So.2d 912 (Fla.2000) (recognizing that publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the consequences of their actions).

[1] Petitioner also asserts entitlement to relief pursuant to the United States Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). First, the petitioner did not properly preserve the issue for appellate review. Even if he had, we would hold that an argument for relief under *Apprendi* lacks merit here. In *Apprendi*, the Supreme Court stated: "Other ***893** than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The petitioner now asserts that because sentencing under the Act requires that a defendant "commit[ ], or attempt[ ] to commit" any of an enumerated list of crimes "within 3 years of being released from a state correctional facility operated by the Department of Corrections or a private vendor," section 775.082(9)(a)(1),[FN1] Fla. Stat. Supp. (1998), the reasoning in *Apprendi* requires that a defendant's release be proved to a jury beyond a reasonable doubt. We disagree.

FN1. Prior to the Act's amendment in 1998, similar language appeared in subsection (8)(a)(1).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

793 So.2d 891, 26 Fla. L. Weekly S516
**(Cite as: 793 So.2d 891)**

[2] In our view, *Apprendi* did not overrule the Supreme Court's previous decision in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In *McMillan*, the Supreme Court considered a statute which imposed a mandatory minimum sentence in connection with an offense committed while a defendant possessed a visible firearm and held that proof of the possession of the firearm was not required because the possession did not alter the maximum penalty or create a separate offense calling for a separate penalty. The *Apprendi* Court made clear that it was not overruling *McMillan* when it stated:

> The principal dissent accuses us of today "overruling *McMillan.*" We do not overrule *McMillan.* We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict-a limitation identified in the *McMillan* opinion itself.

*Apprendi,* 530 U.S. at 487 n. 13, 120 S.Ct. 2348. The *Apprendi* Court reasoned that the statute addressed in *McMillan* neither altered the maximum penalty for the crime committed nor created a separate offense calling for a separate penalty. The statute was viewed solely as a limitation upon the sentencing court's discretion to select the penalty within the range already available.

[3] It is our opinion that the Act does not increase the maximum statutory penalty. Here the sentencing court's discretion in selecting a penalty within the statutory range is simply limited. Accordingly, proof to the jury of a defendant's release which subjects a defendant to a sentence under the Act is not required.

[4] We agree with the reasoning of the Fourth District in *Kijewski v. State,* 773 So.2d 124 (Fla. 4th DCA 2000), *review denied,* No. SC01-181, 790 So.2d 1105 (Fla. Apr.30, 2001). We hold that *Apprendi* does not require that the petitioner's release be proved to a jury beyond a reasonable doubt. We also determine that the petitioner's related argu-

ments based on *Apprendi* are similarly unavailing. [FN2] Moreover, it is important to note that we have previously reached a similar conclusion in connection with sentencing under another recidivist statute. *See Eutsey v. State,* 383 So.2d 219, 224 (Fla.1980) (rejecting a petitioner's due process argument that particular facts required for his sentencing under a habitual offender statute were subject to standard of being proved beyond a reasonable doubt to a jury). Accordingly, we approve the decision of the district court to the extent it is consistent with *Grant, McKnight, Cotton,* and *Ellis.*

> FN2. We further reject the assertion that relief is warranted under the fundamental error doctrine.

It is so ordered.

**\*894** WELLS, C.J., and SHAW, HARDING, ANSTEAD, and PARIENTE, JJ., concur.
QUINCE, J., dissents.
Fla.,2001.
Robinson v. State
793 So.2d 891, 26 Fla. L. Weekly S516

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

914 So.2d 12, 30 Fla. L. Weekly D2204
(Cite as: 914 So.2d 12)

Page 1

H

District Court of Appeal of Florida,
Second District.
Dennis CALLOWAY, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-5673.

Sept. 16, 2005.
Rehearing Denied Nov. 23, 2005.

**Background:** Defendant was convicted in the Circuit Court, Pinellas County, Brandt C. Downey, III, J., of robbery with a firearm, and sentenced as prison releasee reoffender (PRR). Defendant appealed.

**Holding:** The District Court of Appeal, Canady, J., held that enhanced PRR sentencing did not require any additional jury findings.
Affirmed.

West Headnotes

Jury 230 ☞34(7)

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(7) k. Particular Cases in General. Most Cited Cases
                    (Formerly 230k34(1))
Enhanced prison releasee reoffender (PRR) sentencing did not require Sixth Amendment jury determination that offense had been committed within three years of defendant's release from prison; "prior conviction" exception to need for jury findings applied, in that date of release from prior prison sentence was directly derivative of prior conviction and closely related to the prior judicial record. U.S.C.A. Const.Amend. 6; West's F.S.A. § 775.082 (9)(a).

*13 James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Bartow, for Appellant.

Charles J. Crist, Jr., Attorney General, Tallahassee, and Ronald Napolitano, Assistant Attorney General, Tampa, for Appellee.

CANADY, Judge.

Dennis Calloway appeals his prison releasee reoffender (PRR) sentence of life imprisonment for robbery with a firearm. Calloway raises two issues, both of which we conclude lack merit.

Calloway first argues that the jury should have been informed of the mandatory PRR sentence that would be imposed upon conviction. Calloway claims that the failure to inform the jury of such a fact constituted a secret tax on the citizens of Florida. We find this claim to be absurd and decline to address it further.

Calloway also argues that the imposition of his PRR sentence without a jury determination that he had committed the robbery within three years of his release from prison violates the spirit of both *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). He claims that the fact of his date of release from prison does not fall within the prior conviction exception of *Apprendi* and therefore was required to be found beyond a reasonable doubt by the jury. For the reasons set forth below, we reject this argument.

In *Apprendi,* the Court held that the Sixth Amendment right to trial by jury requires the application of the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

914 So.2d 12, 30 Fla. L. Weekly D2204
**(Cite as: 914 So.2d 12)**

In *Blakely,* the Court further held:

> Our precedents make clear ... that the "statutory
> maximum" for *Apprendi* purposes is the maxim-
> um sentence a judge may impose *solely on the
> basis of the facts reflected in the jury verdict or
> admitted by the defendant.* In other words, the
> relevant "statutory maximum" is not the maxim-
> um sentence a judge may impose after finding ad-
> ditional facts, but the maximum he may impose
> *without* any additional findings. When a judge in-
> flicts punishment that the jury's verdict alone
> does not allow, the jury has not found all the
> facts "which the law makes essential to the pun-
> ishment," and the judge exceeds his proper au-
> thority.

124 S.Ct. at 2537 (citations omitted).

The State charged Calloway with committing rob-
bery with a firearm, a first-degree felony punish-
able by life in prison, on August 4, 1998. *See* §
812.13(2)(a), Fla. Stat. (1997). The jury found Cal-
loway guilty as charged. On his scoresheet, Callo-
way scored a minimum sentence of 107.5125
months (8.96 years) in prison and a maximum sen-
tence of 179.1875 months (14.93 years) in prison.
According to *Blakely,* the maximum sentence the
trial judge could impose, based on the jury's find-
ings alone and without an admission by Calloway,
was 14.93 years in prison *unless* the court enhanced
Calloway's sentence based on the "prior convic-
tion" exception articulated in *Apprendi.* [FN1]

> FN1. Many cases decided before *Blakely*
> have held that the PRR statute does not vi-
> olate *Apprendi* because it does not increase
> the statutory maximum penalty but merely
> limits the judge's discretion in sentencing.
> *See, e.g., Robinson v. State,* 793 So. 2d
> 891 ( Fla. 2001); *McGregor v. State,* 789
> So.2d 976 (Fla.2001); *Parker v. State,* 790
> So.2d 1033 (Fla.2001). These cases do not,
> however, address *Blakely's* specific defini-
> tion of the statutory maximum for *Ap-
> prendi* purposes.

*14 It is clear that sentence enhancements under the
various provisions of the habitual offender statute
meet the requirements of *Apprendi* and *Blakely* be-
cause the enhancements are based solely on prior
convictions. *See, e.g., Tillman v. State,* 900 So.2d
633 (Fla. 2d DCA 2005); *Grant v. State,* 815 So.2d
667, 668 n. 3 (Fla. 2d DCA 2002); *Matthews v.
State,* 891 So.2d 596 (Fla. 3d DCA 2004); *Frumenti
v. State,* 885 So.2d 924 (Fla. 5th DCA 2004);
*McBride v. State,* 884 So.2d 476 (Fla. 4th DCA
2004); *Fyler v. State,* 852 So.2d 442 (Fla. 5th DCA
2003); *Jones v. State,* 791 So.2d 580 (Fla. 1st DCA
2001); *Saldo v. State,* 789 So.2d 1150 (Fla. 3d DCA
2001); *Dennis v. State,* 784 So.2d 551 (Fla. 4th
DCA 2001); *Gordon v. State,* 787 So.2d 892 (Fla.
4th DCA 2001).

A defendant qualifies for sentencing under the four
classifications of the habitual offender statute, sec-
tion 775.084, if the trial court finds that the defend-
ant has at least two prior felony convictions and he
or she committed the instant offense (1) *while
serving a prison sentence or a term of supervision
for a prior felony conviction* or (2) *within five years*
of the date of the last felony conviction *or the date
of release from prison or supervision from the last
prior felony conviction. See* § 775.084(1)(a)(2)(a),
(b), (1)(b)(2)(a), (b), (1)(c)(2)(a), (b), (1)(d)(3)(a),
(b), Fla. Stat. (2004). In addition, in order to qualify
as a violent career criminal, the trial court must find
that the "defendant has been incarcerated in a state
prison or a federal prison." § 775.084(1)(d)(2).

The provisions in section 775.084 allowing for en-
hanced sentencing if the new offense was commit-
ted within a certain period of time from the defend-
ant's release from prison are similar to the PRR pro-
vision in section 775.082(9)(a), Florida Statutes
(Supp.1998), which provides for PRR sentencing if
the new offense is committed within three years of
release from a Department of Corrections facility.
Under the PRR statute and, in some cases, the ha-
bitual offender statute, the trial court must find that
the instant offense was committed within a certain
period of time from the date of the defendant's last

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

914 So.2d 12, 30 Fla. L. Weekly D2204
**(Cite as: 914 So.2d 12)**

release from prison.

In *Tillman,* 900 So.2d at 633, the defendant, who had been sentenced under the habitual offender statute, argued that *Blakely* and *Apprendi* require the jury to determine, among other things, that the charged offense either occurred within five years of his prior felony conviction or *his release from his imprisonment* for that conviction. This court held that *Blakely* does not require the jury to make such a factual determination. *Id.* at 634. Applying the rationale of *Tillman,* we conclude that Calloway's date of release from prison is a part of his prior record and thus does not need to be presented to a jury and proved beyond a reasonable doubt. *See Gurley v. State,* 906 So.2d 1264, 1265 (Fla. 4th DCA 2005) ("For the purpose of applying *Apprendi* and *Blakely,* the date of a defendant's release from prison under the prison releasee reoffender statute is analogous to the fact of a prior conviction under the habitual felony offender statute.").

While we recognize that the fact of Calloway's date of release from his prior prison sentence is not the same as a bare fact of a prior conviction, we conclude that it is directly derivative of a prior conviction and therefore does not implicate Sixth Amendment protections. *See* **\*15***United States v. Pineda-Rodriquez,* 133 Fed. Appx. 455, 458 (10th Cir.2005) (holding that the fact of the date of defendant's release from custody and the fact that defendant was on supervision during commission of the instant offense fall under the prior conviction exception because they are "subsidiary findings" that are "merely aspects of the defendant's recidivist potential, ... easily verified, and ... require[ ] nothing more than official records, a calendar, and the most self-evident mathematical computation"); *see also United States v. Garcia-Rodriquez,* 127 Fed. Appx. 440, 451 (10th Cir.2005) (holding that the prior conviction exception in *Apprendi* permits a court to find facts "intimately related" to the underlying prior conviction, such as whether the defendant is the same person who committed the prior crimes); *Ryle v. State,* 819 N.E.2d 119

(Ind.App.2004) (holding that the fact that the defendant was on probation at the time he committed the instant offense is derivative of his criminal history and does not implicate *Blakely* ). *But see State v. Perez,* 196 Or.App. 364, 102 P.3d 705, 709 (2004) (holding that the fact that defendant was on parole or probation at the time of the offense was not a fact of a prior conviction for purposes of *Apprendi* because the same "procedural safeguards" attached to a fact of a prior conviction had not attached to that fact). The fact of a date of release from prison is based on a prior conviction and is therefore closely related to the prior judicial record and not the type of fact that is subject to the safeguards of *Apprendi. Cf. Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 1262, 161 L.Ed.2d 205 (2005) (holding that fact shown in police reports and complaint applications that burglary was a violent felony was a fact not apparent in the "conclusive records made or used in adjudicating guilt" and was "too far removed from the conclusive significance of a prior judicial record" and "too much like the findings subject to ... *Apprendi* " to allow its determination without a jury finding).

Accordingly, we affirm Calloway's PRR sentence.

Affirmed.

DAVIS, J., and SCHEB, JOHN M., Senior Judge, concur.
Fla.App. 2 Dist.,2005.
Calloway v. State
914 So.2d 12, 30 Fla. L. Weekly D2204

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Box# 32-1285

Div# 71

11/30

# M E M O R A N D U M

To:       JUDGE _Jimenez_ _____

From:     Clerk's Office
          Criminal Division                 Date: _10-4-10_

Subject:  Inmate                            _Pablo Diaz_
          (Pro Se Motion or Correspondence)  Defendant's Name

                                            _F03-16995_
                                            Case Number

The attached ( X ) Pro Se Motion
              (  ) Miscellaneous Correspondence
              (  ) DNA Petition (forwarded to judge with court files)
was filed with our office. We are forwarding this document to you for
directions.

Please indicate your instructions below and forward to your clerk for
processing. Thank you.

( X )  To be place on calendar

(  )  File in Court File

(  )  Motion:  Denied    ( RETURN TO APPEAL'S UNIT AFTER RULING)
                         Cases 1982 and below
(  )  Motion:  Granted   ( RETURN TO APPEAL'S UNIT AFTER RULING)
                         Cases 1982 and below
(  )  Motion:  No Ruling ( RETURN TO APPEAL'S UNIT AFTER RULING)
                         Cases 1982 and below


(  )  Other _____


                              _____
                              JUDGE'S SIGNATURE

DATE 11-2-10
INMATE INITIALS P-D

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
# IN AND FOR DADE COUNTY FLORIDA

**STATE OF FLORIDA,**
     **Plaintiff,**

**v.**
                          **Case No.: 03 - 16995**
                          **Section No.: 71**
                          **Judge Julio Jimenez**

**PABLO DIAZ,**
     **Defndant.**
_____/

## REPLY TO PLAINTIFF'S RESPONSE
## TO ORDER TO SHOW CAUSE

**COMES NOW** Defendant, Pablo Diaz, by and through his proper self to submit to this court this reply to Plaintiff's response to order to show cause.

In support thereof, Defendant submits the following:

In Blakely v. Washington, 124 S.Ct. 2531 (2004) the U. S. Supreme Court held, "The statutory Maximum" for Apprendi purposes is the Maximum Sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the Defendant."

Defendant submits that Apprendi allows courts to distinguish between different types of "Statutory Maximum" sentences when the "basis of facts reflected in the jury verdict" authorizes such a distinction. In the instant case the "statutory Maximum" sentence for defendant's second-degree offense is fifteen (15) years. Under normal application of the sentencing laws, the Defendant would be allowed to earn gain-time. Thus, affording him the opportunity to serve less than the "statutory Maximum."



However, Florida Statute 775.082(9) (a) 1 mandates Defendant's "statutory Maximum" fifteen year sentence be served in its entirety. In other words, sans any gain-time. Defendant submits that the liberty interest inherent in gain-time creates such a distinction in the concept of "statutory Maximum" that it requires that the jury make a factual finding that the facts of defendant's case as relates to the statutory requirements set forth in section 775.082(9)(a)1 are proved beyond a reasonable doubt. Proof is already required to be submitted to the court before a Defendant can be sentenced under the PRR act. Defendant submits that Apprendi, under the factual scenario presented herein requires that the evidence presented to the judge should instead be submitted to the jury for the same reason it is required to be submitted to a judge, to be proved beyond a reasonable doubt that the Defendant qualified to receive the "statutory Maximum" sentence as set forth in the PRR act.

**WHEREFORE**, based on the foregoing, Defendant prays that this Honorable Court grant Defendant's motion.

Respectfully Submitted,

Pablo Diaz # M16659

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to: Collen Kay, ASA, 1350 N.W. 12th Ave., Miami, FL 33136 – 2111, this 2 day of November 2010.

Pablo Diaz # M16659

2

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

STATE OF FLORIDA,
    *Plaintiff,*

vs.

Pablo Diaz,
    *Defendant*

Case No. 03-16995
Section No. 71
Judge Julio Jimenez

**FILED**

NOV 1 6 2010

**CLERK**

M. SABETA

### ORDER DENYING DEFENDANT'S PRO SE MOTION TO CORRECT ILLEGAL SENTENCE

THIS CAUSE having come before this Court on the defendant, Pablo Diaz', Pro Se Motion to Correct Illegal Sentence, and this Court having reviewed the motion, the State's response thereto, the court files and records in this case, and being otherwise fully advised in the premises therein, hereby denies the defendant's Motion on the following grounds:

The defendant's claim that his Prison Releasee Reoffender sentence is illegal because Florida Statute 775.082 is in direct contravention to the U.S. Supreme Court cases of *Apprendi v. New Jersey* and *Blakely v. Washington* has no merit. See *Robinson v. State*, 793 So.2d 891 (Fla. 2001) and *Calloway v. State*, 914 So.2d 12 (Fla. 2d DCA 2005).

ORDERED AND ADJUDGED that the Defendant's Motion is hereby DENIED.

The defendant, Pablo Diaz, is hereby notified that he has the right to appeal this order to the District Court of Appeal of Florida, Third District within thirty (30) days of the signing and filing of this order.

The Clerk of this Court is hereby ordered to send a copy of this Order to the defendant, Pablo Diaz, Sumter C.I., 9544 CR 476 B, Bushnell, Florida. In the event that the defendant takes an appeal of this order, the Clerk of this Court is hereby ordered to transport, as part of this order, to the appellate court the following:

Defendant's Motion with Exhibits, the State's Response and this Order.

DONE AND ORDERED at Miami, Miami-Dade County, Florida, this the _16th_ day of _November, 2010_.

Julio Jimenez
CIRCUIT JUDGE

I CERTIFY that a copy of this order has been furnished to the Defendant, by mail, this 22nd day of November, 2010.

HARVEY RUVIN, Clerk By _____ 0012
Deputy Clerk



//0-1-33755

# IN THE DISTRICT COURT OF APPEAL
## THIRD DISTRICT
## STATE OF FLORIDA



P.D

APR 2 5 2011

PABLO DIAZ,
    Appellant,

v.

STATE OF FLORIDA
    Appellee.

_____/

Case No.: 3D10-3422

RECEIVED

APR 2 8 2011

ATTORNEY GENERAL
MIAMI OFFICE

## MOTION FOR REHEARING
## AND
## REHEATING EN BANC

COMES NOW, the Appellant, Pablo Diaz, in the above-styled cause hereby moves this Honorable Court for Rehearing and Rehearing En Banc pursuant to Fla.R.App.P. 9.330 and 9.331, and files said motion under the mailbox rule. See *Thompson v. State*, 761 So.2d 324 (Fla. 2000), where this Court has overlooked facts and misapplied controlling points of law.

## STATEMENT OF FACTS

Appellant in this cause filed his Motion to Correct Illegal Sentence in the Eleventh Judicial Circuit Court, In and For Dade County, Florida, where he alleged that his sentence as a Prison Releasee Reoffender is illegal due to the fact that the sentencing proceeding was conducted solely before and by the sentencing



judge and not by the jury, in direct contravention to the U.S. Supreme Court's holding in *Apprendi v. New Jersey*; and *Blakely v. Washington*.

The Trial Court issued its order to show cause as to why relief should not be granted.

On October 19, 2010, the State responded without attaching relevant portions of the record to refute Appellant's claim, and requested the Trial Court to deny said claim as insufficient attaching printouts of case authorities.

On November 16, 2010, the Trial Court denied Appellant's Rule 3.800(A) adopting the State's Response. A timely Notice of Appeal was filed where this Court on April 13, 2011 Per Curiam Affirmed Appellant's appeal.

Appellant's Motion for Rehearing and Rehearing En Banc is timely filed under the mailbox rule where this Court has overlooked facts and controlling points of law that has now caused a manifest injustice and conflict between District Courts and the Florida Supreme Court.

## ARGUMENT ON REHEARING AND REHEARING EN BANC

Appellant, in this cause filed his Rule 3.800(A) alleging that his sentence as a Prison Releasee Reoffender is illegal due to the fact that the sentencing proceeding  was conducted solely before and by the sentencing judge and not by the jury, in direct contravention to the U.S. Supreme Court's holding in *Apprendi v. New Jersey*; and *Blakely v. Washington*.

2

The Trial Court denied Appellant's Rule 3.800(A) based on the State's Response as insufficient and the rulings in *Robinson v. State*, 793 So.2d 891(Fla. 2001); and *Calloway v. State*, 914 So.2d 12(Fla. 2nd DCA 2005).

On Appeal, this Court Per Curiam Affirmed Appellant's appeal, where Appellant now presents this Motion for Rehearing and Rehearing En Banc, where this Court has overlooked facts and controlling points of law, which has now created a manifest injustice and caused conflict with other District Courts and the Florida Supreme Court.

In the instant case, this Court's Per Curiam Affirmance is in error and must be reconsidered where the State has failed to attach relevant portions of the record to refute Appellant's allegations as required by Fla.R.App.P. 9.141. See, *Evans v. State*, 35 Fla.L.Wkly. D848(Fla. 3rd DCA 2010).

Here, this Court has overlooked the fact that the State has merely attached and cited case authority to refute Appellant's claim.

Appellant avers that the State's Response requested the Trial Court to deny Appellant's claim as insufficient. Under the Florida Supreme Court's holding in *Spera v. State*, 971 So.2d 754(Fla. 2007)(Where a pleading or motion is deemed legally insufficient, Appellant must be allowed at least one opportunity to correct any deficiencies if he can.)

3

Here the Trial Court merely adopted the State's Response and its attached case authorities, and has now created a manifest injustice and violated Appellant's right to due process as guaranteed by the United States Constitution.

Appellant contends that this Court has overlooked the fact that all District Courts are to maintain uniformity. Here, this Court's Per Curiam Affirmance has drawn conflict. *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435(2000) the United States Supreme Court held: "All facts that would enhance the defendant's sentence above the statutory maximum must be found by a jury."); *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403(2004) held: "For the purpose of Apprendi, the statutory maximum is the maximum sentence that may be imposed based solely on the jury's findings.

Finally, Appellant requests this Court to take Judicial Notice of his Record on Appeal in Case No.: 3D07-1774, where this Court will clearly see that the State has failed to prove by the preponderance of the evidence Appellant's release date from prison. See, *Cueto v. State*, 979 So.2d 1113, 1114(Fla. 3rd DCA 2008).

A review of Appellant's Record on Appeal will reveal that the State failed to satisfy the standards set forth in *Yisreal v. State*, 956 So.2d 458(Fla. 2007), where in this case no letter from the Florida Department of Corrections (1) was made at or near the time of defendant's release date; (2) made by or from information transmitted by a person with knowledge; (3) kept in ordinary course of a regularly

4

conducted business activity; or (4) created as a regularly practice, pursuant to Fla. Stat. 90.803(6) and 90.902(11). Appellant's Record on Appeal will show no letter attached with a crime and time report was entered as evidence to prove Appellant's release date from prison, critical dates for PRR enhancement. Therefore, this cause must be reconsidered and remanded back to the Trial Court.

### RELIEF SOUGHT

Wherefore, Appellant requests this Honorable Court would grant his Rehearing and Rehearing En Banc, withdraw its PCA and issue a written opinion remanding to the Trial Court for resentencing.

Respectfully submitted,

Pablo Diaz, # M16659

### OATH

(F.S. 92.525)

I declare under the penalty of perjury that the foregoing document and statements in it are true.

Executed this 25 day of APRiL, 2011.

Pablo Diaz, # M16659

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has

been mailed to the Attorney General's Office, Rivergate Plaza, 444 Brickell Ave,

Ste. 950, Miami, Fla. 33131 on this __25__ day of __APRiL_____, 2011

Pablo Diaz, # M16659
Blackwater River C.F.
5914 Jeff Ates Rd.
Milton, Fla. 32583

## Florida State Courts

| Courts | Opinions | New Query | Help |

*Florida Third District Court of Appeal Docket*

# Case Docket

### Case Number: 3D10-3422

### Final Criminal 3.800 Notice from Dade County

### PABLO DIAZ, vs. THE STATE OF FLORIDA,

#### Lower Tribunal Case(s): 03-16995

[ List of Abbreviations ]  [ Printer Friendly View ]

| Date Docketed | Description | Date Due | Filed By | Notes |
|---|---|---|---|---|
| 12/27/2010 | Initial Brief on Merits | | Pablo M. Diaz M16659 | |
| 12/29/2010 | Notice of Appeal Filed | | Pablo M. Diaz M16659 | |
| 04/13/2011 | Affirmed - Per Curiam Affirmed | | | |
| 04/28/2011 | Motion For Rehearing | | Pablo M. Diaz M16659 | |
| 04/28/2011 | Motion For Rehearing EN BANC | | Pablo M. Diaz M16659 | |
| 06/22/2011 | West Publishing | | | |
| 06/22/2011 | Rehearing & Rehearing en banc denied (OD57A) | | | |
| 07/08/2011 | Mandate | | | |

[ List of Abbreviations ]  [ Printer Friendly View ]



*Lcc Movant*

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.**

| DIVISION<br>☒ CRIMINAL<br>☐ OTHER | ORDER ☐ GRANTING / ☒ DENYING DEFENDANT'S,<br>PRO SE MOTION FOR:  Reply To Plaintiff's Re-<br>sponse To Order To Show Cause, treated as a<br>motion for rehearing, per the Court<br>(motion filed 11/09/2010) | CASE NUMBER<br>F03-16995 |
|---|---|---|
| **THE STATE OF FLORIDA**        **VS.**           PABLO MANUEL DIAZ | | **CLOCK IN** |
| **PLAINTIFF**                   **DEFENDANT** | | |

**THIS CAUSE HAVING COME BEFORE** the Court upon the Defendant's Pro Se Motion and the Court having examined the said Motion and the Motion being ☐ sufficient/ ☒ insufficient to support the relief prayed, **IT IS THEREUPON,**

**CONSIDERED, ORDERED AND ADJUDGED** that the above Pro Se Motion filed by the above prisoner be, and the same is hereby

☐ **GRANTED.** _____

The movant is advised that any change in the original Judgment or Sentence will be forwarded to the Department of Corrections under separate order.

☒ **DENIED.** _____

The movant is advised that he/she has the right to appeal within thirty (30) days of the rendition of this order.

**DONE AND ORDERED IN** ☐ **Chambers** ☒ **Open Court** at Miami, Dade County, Florida, this __30TH__ day of
__NOVEMBER__ , A.D., 20 __10__ .

JUDGE JULIO E. JIMENEZ

I CERTIFY that a copy hereof has been furnished to the movant, _____Pablo Manuel Diaz_____ , by mail this
__13TH__ day of __December__ , 20 __10__ .

**HARVEY RUVIN**, Clerk

BY: _____
Deputy Clerk

Clerk's web address:  www.miami-dadeclerk.com

CLK/CT 775  REV. 4/03  PBP 12072010



L11-1-21344

## IN THE DISTRICT COURT OF APPEAL
## THIRD DISTRICT STATE OF FLORIDA

PABLO M. DIAZ,
    Petitioner,

V.

STATE OF FLORIDA,
    Respondent.

_____/

RE: Case No.: 3D07-1774

L.T. Case No.: F03-16995

DOCKETED
MIAMI
OCT 11 2011
ATTORNEY GENERAL

RECEIVED
OCT 1 8 2011
ATTORNEY GENERAL
MIAMI OFFICE

Legal Mail   A.D
Provided to
Blackwater River Correctional Facility
on 10/4/11 for mailing.
Initial

## PETITION FOR WRIT OF HABEAS CORPUS ALLEGING INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

COMES NOW, the Petitioner, in proper person, pursuant to Rules 9.100 and 9.141(c), Florida Rules of Appellate Procedure, to here and now timely move this Honorable Court to find Appellate Counsel Constitutionally inept and unprofessional representation during the course of the appellate proceedings in this Court that compromised a reliable result of Petitioner's Direct Appeal to which warrants Habeas Corpus relief based on the following facts and matters of law:

## I. BASIS FOR INVOKING JURISDICTION

This Court has original jurisdiction to issue a writ of habeas corpus under Article V, Section 4(b)(3) of the Florida Constitution, and Rule 9.030(b)(3) of the Florida Rules of Appellate Procedures. Habeas Corpus is the proper remedy to inquire whether appellate counsel's actions or inactions on Direct Appeal compromised a reliable result of that appeal. See Rutherford v. Moore, 774 So.2d

637, 643 (Fla. 2000) (Habeas Petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel); Freeman v. State, 761 So.2d 1055, 1069 (Fla. 2000) (Explaining that, as a general rule, claims of ineffective assistance of appellate counsel are properly raised in a Habeas Corpus Petition). See also Rule 9.141(c)(2), Florida Rules of Appellate Procedure (2006) ("Petitions...alleging ineffective assistance of appellate counsel shall be filed in the Appellate Court to which the appeal was taken or should have been taken.")

## II. STATEMENT OF THE CASE AND FACTS

On March 24, 2010, this Court affirmed without opinion (PCA) Petitioner's Direct Appeal taken to this Court subsequent to a jury trial held in the Circuit of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, whereat guilty verdicts were obtained (Ct. #1) Aggravated Battery, a lesser included offense, and for (Ct. #2) Kidnapping, resulting in the imposition of a natural life state prison term under the provisions of the Prison Release Reoffender Act (PRRA). See Diaz v. State, Case No.: 3D07-1774.

The record indicates that this case originated below after Petitioner and his then short term girlfriend, Katherine Ruiz, became involved in a domestic dispute over Petitioner's efforts to regain possession of his $3,600.00 that had inadvertently locked within the closed residence of Ms. Ruiz' apartment. After the two had a confrontation regarding events occurring earlier in the day in which Ms.

Ruiz and a third party individual, Attalia Bello, and Ms. ~~Rice~~ Ruiz had a fight. Apparently, the confrontation between Petitioner and Ms. Ruiz escalated and eventually resulted in Petitioner directing Ms. Ruiz to her apartment building's front desk in order to obtain a second key to unlock the locked apartment door, and when that proved futile, Petitioner allegedly directed Ms. Ruiz to his vehicle and traveled within the city. Ms. Ruiz eventually exited Petitioner's vehicle and reported the preceding events to law enforcement and, based on the foregoing, the State filed a seven count information charging Petitioner with (Ct. #1) Attempted Felony Murder, (Ct. #2) Possession of a Firearm by a Convicted Felon, (Ct. #3) Armed Kidnapping, (Ct. #4) Aggravated assault on Antonio Baldizon, Ct. #5) Aggravated Assault on Jose Biggotti, (Ct. #6) Aggravated Assault on Dennis Florez, and (Ct. #7) Aggravated Assault on Thomas Roberts. (R27-35) After trial counsel filed a motion to dismiss several of the charged offenses (R149), the State announced that it would agree to dismiss Counts 4, 5 and 7. (R166) Trial began in this case on May 7, 2007.

The State first called the complaining witness, Katherine Ruiz, to the stand and she recounted that, on the day in question, she, Petitioner and another couple had spent the night of June 7 and early morning hours of June 8, 2003 together at a Miami Beach Bar where she had a couple of drinks and eventually went for a swim at the beach. (T200-270) She testified that on the way back home from the beach

3

and bar, she and Attalia Bello had a fist fight in the car and that she suffered a bloody nose at the hands of Ms. Bellos and subsequently got out of the car, leaving all of her personal belongings in the car. (T202-299) According to Ms. Ruiz, she and Petitioner eventually arranged a ride back to her Fortune House Apartment whereat Petitioner retrieved his personal monies of $3,600.00 and was in the process of counting it when Ms. Ruiz became angry and the two began to argue. (T203-313) Ms. Ruiz claimed that after she observed Petitioner with a firearm, she armed herself with a kitchen knife and ran out of the hall while Petitioner allegedly continued to pursue her down the hall and into the stairwell where she claims to have dropped the knife she initially possessed. (T204-208) Ms. Ruiz testified that once they realized that they had inadvertently locked the apartment door on their way out, Petitioner insisted they go to the lobby area in order to obtain a spare key to reopen the apartment so that he could retrieve his money. (T208-313) On their way to the lobby, they continued their physical struggles and, once in the lobby and at the Receptionist's counter, Ms. Ruiz jumped over and behind the counter. (T208-211) After Petitioner eventually got Ms. Ruiz back across the counter, the two departed the lobby, exited the building, and got in to Petitioner's vehicle and drove to a local cafeteria where Petitioner obtained himself something to drink. (T217-219) After speaking to the police, and having been taken to the hospital, Ms. Ruiz eventually refused to cooperate with law enforcement and she was taken

4

home. (T220, 339-40) Over the next several days she stayed with the Petitioner and his parents and avoided both the police and her mother until the police eventually caught up to her at her apartment retrieving personal belongings and the police transported her to the police station in order to get a fact statement from her regarding this incident. (T223-229) Ms. Ruiz agreed to cooperate with law enforcement only after Petitioner appeared to have made threatening comments directed toward her daughter, Cassiana. (T242-255) During cross-examination, Ms. Ruiz admitted that she had lied to the police in her initial report of this incident to the police and she continued to deny having a crack cocaine habit, as claimed by Petitioner. (T271-371)

Dennis Florez was the Receptionist at the <u>Fortune House Apartments</u> counter on this date and he testified for the State that he witnesses Petitioner and Ms. Ruiz exit the service elevator, approach the counter, and ask to use the phone. Mr. Florez testified that he observed that Ms. Ruiz appeared to be slightly battered, as well as slightly intoxicated. (T401-411) According to Mr. Florez, Ms. Ruiz asked him to call the police and instead he called internal security and the security guard arrived to request that Petitioner and Ms. Ruiz calm down. (384-386) Mr. Florez indicated that, after Ms. Ruiz finally released her grip on the counter, Petitioner dragged her toward the parking garage and he immediately called 911. (T387-388) The State next called the <u>Fortune House Apartments</u> garage attendant,

5

Mr. Jose Biggotti, who testified to having witnessed Petitioner and Ms. Ruiz arguing in the lobby and he understood the argument to pertain to Petitioner's attempt to get his $4,000.00 back from Ms. Ruiz. (T432-437) According to Mr. Biggotti, after Petitioner threatened him not to call the police, he ran outside and called 911 to report the incident. (T441-444).

Mr. Thomas Roberts was the on-duty Fortune House Security Guard at that time and he testified to having witnessed Petitioner and Ms. Ruiz in the lobby arguing over money and he indicated that he observed Petitioner, with a silver colored firearm, drag Ms. Ruiz toward the garage. (T473-487)

Rodmiro Baldizon owned the cafeteria in which Petitioner stopped to get a drink of water and he testified to having observed Petitioner and Ms. Ruiz arguing and fighting inside their car and that, when he tried to intervene, Petitioner pointed the firearm at Mr. Baldizon and told him that the matter did not concern him. (T513-518) Mr. Baldizon indicated that he called 911. (T521-24)

Johanna Rodriguez and Lesbia Morales were on their way home via Flagler Street when they encountered Petitioner and Ms. Ruiz in their parked car fighting and, after having circled the block in order to try to obtain the tag number of Petitioner's vehicle to report the incident to law enforcement. Ms. Rodriguez testified that she eventually followed Petitioner's car and that Ms. Ruiz jumped out of and fled Petitioner's car once he had stopped at a red light just a few cars ahead

of Ms. Rodriguez's car. (T541-552) Ms. Ruiz jumped into the backseat of Ms. Rodriguez's parked car screaming that Petitioner had a weapon and, according to Ms. Rodriguez, Ms. Ruiz appeared to be intoxicated. (T553-578) Just further down the road, Ms. Rodriguez noticed three parked patrol units and stopped her vehicle for Ms. Ruiz to obtain aid. (T554-55) Ms. Lesbia Morales likewise testified and reiterated the same facts testified to by Ms. Rodriguez. (T584-596)

The State next called Detective Morin to testify and she indicated that she was assigned to the Ruiz case only after Ms. Ruiz' mother actually called the Police Department to inquire why no action had been taken in her daughter's case. (T738-40) Detective Morin offered testimony impeaching Ms. Ruiz with her several prior inconsistent statements. (T769-790) as its last witness, the State called crime scene technician Hector Infante who testified to having processed Petitioner's vehicle and he offered testimony of having taken pictures of this particular car and of locating and taking pictures of what appeared to be a bullet hole in the backseat of a car. (T637-689) Technician Infante was unable to determine how old the bullet hole was. (T702)

Subsequently to a lengthy debate in regards to Petitioner's attempts to recall Ms. Ruiz as a witness in order to inquire of her previous threats to prior boyfriends with knives and violence, offered to establish Petitioner's in-trial defense of self-defense, to which the trial court denied. (T724-808) Petitioner called as his first

defense witness, Ms. Ilvsion Abud, the ex-wife of Mr. Baldizon, who testified to having overheard a loud commotion outside of the cafeteria on the day in question and that she had heard two gunshots. (T619-620)

Petitioner then called his mother, Ms. Olga Diaz, and his employer, Mr. Frank Acosta, in order to offer testimony that in the several days following this June 8, 2003 incident, Ms. Ruiz willingly and voluntarily resided with Petitioner and his family at the Diaz family home. (T814-844)

The record indicates that Petitioner did not testify in his own defense. (T814-844)

Trial counsel's motion for judgment of acquittal was denied. (T856-857)

Subsequent to closing arguments by both the defense and the State (T939), and after receiving deliberation instructions, the jury returned verdicts finding Petitioner guilty or; (Ct. #1) Aggravated Battery, a lesser included offense; (Ct. #2) Kidnapping, as charged; and (Ct. #3) Not guilty of Aggravated Assault. (R239-255; T996) After the guilty verdicts entered, but prior to sentencing, trial counsel filed a "Motion for Judgment of Acquittal Notwithstanding the Verdict, New Trial and Arrest of Judgment," and therein argued that the trial court reversibly erred by adjudicating Petitioner guilty off both kidnapping and aggravated battery for offenses occurring during the same criminal episode. (R242, 249). This motion was summarily rejected.

8

The sentencing court subsequently imposed a fifteen year (PRR) minimum mandatory state prison term for the (Ct. #1) Aggravated Battery conviction and a life minimum mandatory (PRR) state prison term for the (Ct. #2) Kidnapping conviction, respectively. (R259-60, 248-88) Notice of Appeal was eventually timely filed.

## III. PROCEEDINGS IN THIS COURT

On appeal within this Court, designated under case number 3D07-1774, Petitioner raised the following claims:

**1. THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT'S MOTION FOR MISTRIAL BASED ON WILLIAMS RULE EVIDENCE.**

**2. THE TRIAL COURT ERRONEOUSLY OVERRULED DEFENDANT'S OBJECTIONS TO DETECTIVE MORIN'S PSEUDO-PSYCHOLOGICAL EVALUATION OF MS. RUIZ.**

**3. IN BEING PRECLUDED FROM DEFENDANT WAS DENIED HIS FUNDAMENTAL RIGHT TO CALL WITNESSES ON HIS BEHALF.**

On March 24, 2010, this Honorable Court rejected each of the foregoing three issues without opinion and affirmed the lower tribunal (PCA). This Petition now timely results.

## IV. RELIEF SOUGHT

Respectfully, Petitioner now prays that this <u>Honorable Court</u> will find that appellate counsel rendered constitutionally inept and unprofessional representation to such a degree as to be found having compromised a reliable result of the appeal in this case, thus warranting an order granting a new trial, or, alternatively, an order granting conflict free appellate counsel brief the issue contained herein.

## V. STANDARD OF REVIEW

This is a <u>petition for writ of habeas corpus</u>, filed pursuant to Rule 9.141(c), <u>Florida Rule of Appellate Procedure</u>, alleging appellate counsel compromised a reliable result of Petitioner's <u>Direct Appeal</u> taken to this Court and Florida Law is well settled that "when analyzing the merits of the claim the criteria for proving ineffective assistance of appellate counsel parallel the <u>Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)</u> standard for ineffective assistance of trial counsel." <u>Rutherford v. Moore, 7747 So.2d 637, 643 (Fla. 2000)</u>. In Rutherford, our <u>Supreme Court</u> reiterated that premise in <u>Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla. 1985)</u>, to hold that a petitioner must show "First, that appellate counsel's performance was deficient because 'the alleged omissions are of such magnitude as constitute a serious error or substantial deficiency falling outside of the range of professionally accepted performance' and second, that the petitioner was prejudiced because appellate counsel's deficiency 'compromised the

appellate process to such a degree as to undermine confidence in the correctness of the result.'" See <u>Mack v. State, 955 So.2d 51, 55 (Fla. 2007)</u> (<u>Quoting Rutherford, 774 So.2d at 643</u>)

In this case, Petitioner sets out the claim that he contends to demonstrate appellate counsel rendered inept and unprofessional representation to such an extent so as to compromise a reliable result of the Direct Appeal taken in this case that can and should now warrant the aforementioned relief sought.

## VI. ARGUMENT

### THE ISSUE

**APPELLATE COUNSEL COULD HAVE AND SHOULD HAVE RAISED ON DIRECT APPEAL THE ISSUE THAT IT WAS FUNDAMENTALLY IMPROPER TO CONVICT PETITIONER OF THE LESSER INCLUDED OFFENSE OF AGGRAVATED BATTERY WHERE THE INFORMATION CHARGING ATTEMPTED FELONY MURDER DID NOT ALLEGE THE ESSENTIAL ELEMENTS TO SUSTAIN A CONVICTION FOR THE AGGRAVATED BATTERY**

The appellate record demonstrates that the State charged Petitioner with (Ct. #1) Attempted Felony Murder stemming from the domestic dispute between he and Ms. Ruiz. The substance of the charging document respective to this count allowed that,

"<u>PABLO MANUEL DIAZ</u> on or about <u>June 8, 2003</u> in the county and state aforesaid, did unlawfully and feloniously perpetrated a felon, to wit: Kidnapping and did commit, aid, or abet an intentional act that was not an essential element of

11

the felony and that could have, but did not, cause the death of another, to wit:

KATHERINE JO RUIZ, by shooting at Ms. Ruiz, and during the commission of the offense, said Defendant possessed a firearm or destructive device, in violation of s. 782.051(1) and 775.087 Florida Statutes, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Florida."

(R28) Although the trial court appears to have correctly instructed the jury with regards to the primary (Ct. #1) charge of Attempted Felony Murder (R217), the instructions subsequently given respective to the lesser include offenses to this specific count were (A) Attempted Second Degree Murder, (B) Attempted Voluntary Manslaughter, (C) Aggravated Battery, and (D) Battery. (R220-224) The record indicates that the jury eventually chose to convict Petitioner of the lesser offenses of Aggravated Battery (R240) and that the sentencing court imposed a minimum mandatory (PRR) fifteen year state prison term therefore. (R257-288) Petitioner now contends that it was patently unlawful for him to be convicted of, sentenced for the Aggravated Battery offense where the information charging Attempted Felony Murder did not include the statutorily required essential elements supporting the giving of an instruction for the Aggravated Battery, and consequently, appellate counsel knew or should have known to raise

12

on Direct Appeal the issue that it was fundamental error to convict this Petitioner of an offense to which the charging document would not constitutionally permit.

As a preliminary matter, Petitioner would note that Florida Law is well settled that a jury in a criminal trial can never be instructed on, nor a defendant convicted of a lesser included offense unless the accusatory pleading actually include all of the essential elements of the lesser offense within the primary charge. See Price v. State, 995 So.2d 401 1, 405 (Fla. 2008); Crain v. State, 894 So.2d 59, 69 (Fla. 2004); and Rogers v. State, 963 So.2d 328, 332 (Fla. 2nd DCA 2007). More recently, the Florida Supreme Court I Coicou v. State, 35 Fla. L. Weekly S195 (Fla., April 1, 2010), explained the importance of the charging document alleging an offense include the essential elements of a lesser included offense in which an instruction is intended to be given. "Lesser included offenses fall into two categories: Necessary and Permissive. Necessarily lesser included offenses are those offenses in which the statutory elements of the lesser included offense are always subsumed within those of the charged offense." See State v. Paul, 934 So.2d 1167, 1176 (Fla. 2006). A permissive lesser include offense exists when "the two offenses appear to be separate (on the face of the statutes), but the facts alleged in the accusatory pleadings are such that the lesser (included) offense cannot help but be perpetrated once the greater offense had been." State v. Weller, 590 So.2d 923, 925 n. 2 (Fla. 1991). See Coicou, 35 Fla. L. Weekly at S195 (Quoting Sanders

13

v. State, 944 So.2d 203, 206 (Fla. 2006). In Coicou, the Supreme Court had to consider the propriety of this Court's decision to reduce Coicou's original Attempted First Degree Felony Murder conviction, obtained at trial, to a lesser included Attempted Second Degree Murder conviction pursuant to section 924.34, Florida Statutes (2001). In the original decision, this Court ordered Coicou's judgment and sentence reduced from Attempted First Degree Felony Murder to Attempted Second Degree Murder because the same act of shooting the victim in the chest during the course of the underlying robbery constituted an element inherent in the require proof for attempted felony murder, contrary to the plain provisions of section 782.051(1), Florida Statutes (2001). See, Coicou v. State, 867 So.2d 409, 410 (Fla. 3rd DCA 2003). In response to Coicou's motion for certification, this Court certified to the Supreme Court the following question:

**"WHETHER ATTEMPTED SECOND-DEGREE MURDER IS A LESSER INCLUDED OFFENSE OF ATTEMPTED FELONY MURDER?"**

Id. Coicou, at S194. In answering the foregoing certified question in the negative, the Supreme Court relied on the plain language of Florida Rule of Criminal Procedure 3.510(b), in which explicitly permits the giving of an instruction for a lesser included offense only when the charging document actually included all of the essential elements of that specific lesser included offense, Id.

In this case, Petitioner was convicted of Aggravated Battery as a lesser included offense of Attempted Felony Murder. The plain language of 'aggravated

14

battery,' as codified at <u>section 784.045, Florida Statutes</u>, and defined under the <u>Florida Standard Jury Instructions (Criminal)</u> provides that, 'to prove the crime of aggravated battery, the State must prove the following two elements beyond a reasonable doubt. The first element is a definition of battery.'

1. (Defendant) (intentionally touched or struck (victim) against (his/her) will (intentionally caused bodily harm to (victim)).

2. (Defendant) in committing the battery (a) (intentionally or knowingly caused (great bodily harm to (victim)) (permanent disability to (victim)) (permanent disfigurement to (victim)) (b) (used a deadly weapon) (c) (knew or should have known that (victim) was pregnant).

Here, the information charging (Ct. #1) Attempted Felony Murder did not include an allegation that Petitioner "intentionally touched or struck Ms. Ruiz against her will" and nor did it allege that Petitioner "intentionally caused bodily harm to her." Thus, if our <u>Supreme Court</u> reasons that Coicou cannot be convicted of Second Degree Murder because his charging document failed to allege the "depraved mind" essential element of that specific offense, it logically stands to reason that this Petitioner cannot be lawfully convicted of <u>Aggravated Battery</u> as a lesser to <u>Attempted Felony Murder</u> where his charging document failed to include those foregoing statutorily mandated essential elements. Consequently, Petitioner's conviction now entered for the uncharged crime of <u>Aggravated Battery</u> must be set

aside as having been obtained in violation of fundamental fairness and this claim could have been and should have been raised by appellate counsel on Direct Appeal. See <u>Carswell v. State, 23 So.3d 195, 198 (Fla. 4th DCA 2009)</u> (ordering that an aggravated battery conviction must be quashed where the information did not allege the "intentional and knowing" essential element of the charge) (quoting <u>Crain v. State, 894 So.2d 59, 69 (Fla. 2004)</u>.

## VII. CONCLUSION

Petitioner contends that he was prejudiced by appellate counsel's deficient performance in this case because an issue of fundamental significance was overlooked or neglected and contends that the (Ct. #1) Aggravated Battery conviction can and should be quashed or, alternatively, a new appeal might be warranted.

Respectfully Submitted,

Pablo M. Diaz in proper person
DC# ~~M16654~~ M16659

## CERTIFICATE OF OATH

I, Pablo M. Diaz, do hereby swear under the penalty of perjury to having read the foregoing Petition for Writ of Habeas Corpus and, as having personal knowledge of the facts and matters contained therein, do say that they are true, correct and complete this __4__ day of __October_____, 2011.

_____
Pablo M. Diaz in proper person

## CERTIFICATE OF SERVICE

I, Pablo M. Diaz, do hereby certify having mailed a true and correct copy of the foregoing to the Office of the Attorney General, Rivergate Plaza, Ste. 950 444Brickell Avenue, Miami, Fla. 33131 and a copy to the State Attorney, for the Eleventh Judicial Circuit, E.R. Graham Building, 1350 N.W. 12 Ave., Miami, Fla. 33136 by paid U.S. Mail this __4__ day of __October_____, 2011

_____
Pablo M. Diaz in proper person
DC# M16654 M16659
Blackwater River C.F.
5914 Jeff Ates Rd.
Milton, Fla. 32583