*L o 7·1· 2 0 4 5 1*

981

1
2  ELEVENTH
3
4
5
6
7
8
9  THE STATE OF FLORIDA,          )
10                                )
11         Plaintiff,             )
12                                )
13  vs.                           )
14                                )
15  PABLO DIAZ,                   )
16                                )
17         Defendant.             )
18  _____)
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36  Trial in the above-entitled cause was resumed before the
37  Honorable Julio Jimenez, Circuit Judge, pursuant to
38  Adjournment.
39
40
41  APPEARANCES:
42
43         KATHERINE FERNANDEZ-RUNDLE, State Attorney, by
44         CAROLINA CORONA, Assistant State Attorney and
45         ROBERT GROSS, Assistant State Attorney,
46         on behalf of the State
47
48         MICHAEL BLACKER, Esq.,
49         on behalf of the Defendant
50

IN THE CIRCUIT COURT OF THE

JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CRIMINAL DIVISION
CASE NO. F03-16995

COPY

RECEIVED

APR 1 6 2008

ATTORNEY GENERAL
MIAMI OFFICE

DOCKETED
APR 1 6 2008
ATTORNEY GENERAL

Richard E. Gerstein Justice Building
1351 Northwest 12th Street
Miami, Florida
May 11, 2007
10:30 a.m.

982

1          (Thereupon, the following proceedings were had outside

2     the presence of the jury panel:)

3          MR. BLACKER:  Michael Blacker, on behalf of Mr. Diaz.

4          MR. GROSS:  Robert Gross, on behalf of the State of

5     Florida.

6          THE COURT:  Both sides have had an opportunity to review

7     the evidence in the jury room?

8          MR. BLACKER:  We -- yes, we have.  We looked at the

9     evidence.  The only thing that is not in there that we saw

10    were the video and stuff like that.  But there were no

11    machines in the room.  But there is physical evidence in

12    the room.

13         MR. GROSS:  There is actually the C.D.

14         MR. BLACKER:  But there is no apparatus to play them.

15         THE COURT:  And the tapes are there?

16         MR. GROSS:  Everything except the ability to --

17         THE COURT:  Let's wait for Jimmy to come back.

18         (Brief recess)

19         THE COURT:  We're on the record.  The defendant is

20    present.

21         What is it that you need?

22         You said that you looked at the evidence.  All the

23    evidence is there?

24         MR. BLACKER:  I believe so, sir, yes.

25         MR. GROSS:  All the evidence is there.  A cassette

983

1    player is needed.  Also, there is a C.D. player and it's

2    in chambers.

3        MR. BLACKER:  We would like to make one request.

4        THE COURT:  Bring the cassette player.

5        MR. BLACKER:  In reference to an apparatus, I would like

6    the Court to order the State to bring in the equipment that

7    was requested yesterday in order for the jurors to make a

8    decision whether there was a gun in his hand or not.  The

9    State had the equipment.  She said that she had seen it;

10   that it could be about three times as slow.  That is the

11   only fair thing to do.

12       THE COURT:  You didn't ask for it in the middle of

13   trial.

14       MR. BLACKER:  But now is the time they're going to

15   review it, and you can tell them that we have that kind of

16   machinery for them to review it.

17       They certainly may not want to review it after looking

18   at the clips that we saw, that was so --

19       MR. GROSS:  The testimony from Detective Morin --

20       THE COURT:  Someone wants to talk to you.

21       MR. GROSS:  It is actually -- she never said that she

22   saw -- the State actually produced that for her.

23       She didn't say that she saw it at the State.  I'm just

24   saying --

25       THE COURT:  State, do you have --

984

1    MR. GROSS:  We don't have the ability to do that, as

2    we announced previously.

3    THE COURT:  You know, Michael, my impression was that

4    she had seen it there or something at the hotel with all

5    the different cameras.

6    MR. BLACKER:  I have notes of it.  I will get them.

7    Distantly, she said that she saw it at the State

8    Attorney's Office, that they had it, and it was about three

9    times slower.  She said it was still as three times slow as

10   it was.

11   That is what we need, so the jury can see whether or not

12   he had a gun in his hand.

13   THE COURT:  State, do you know?

14   Can you find out if you have that equipment?

15   MR. GROSS:  I know first hand we do not have the proper

16   multiplex equipment to show it on, and we could actually

17   freeze it.

18   MR. BLACKER:  I don't want to freeze it.  We will slow

19   it down.

20   THE COURT:  You want the jury deliberating, and then you

21   make the --

22   Well, Robert, you want me to bring the jury in and get

23   them to start deliberating this morning while you go check

24   on that?

25   MR. BLACKER:  If you will advise them that you are

985

1    trying to get the machine.

2        THE COURT:  I won't say that.  You know, this is the

3    first time hearing about it.  The jury has already been

4    deliberating.  You didn't raise it before.

5        MR. BLACKER:  You know, I'm sorry I didn't bring it up

6    before that, but that's a piece of evidence that they can't

7    view in the shape and form which it is --

8        It is only fair since those are pictures that the State

9    brought up where you can't see a gun that they get to see

10   it in the same light Detective Morin saw it.

11       THE COURT:  You didn't raise this before.

12       State, I'm going to pass it for five minutes.  Find out

13   if you have that equipment.  You know, I mean, find out.

14   Talk to somebody that knows.

15       MR. GROSS:  Yes, Your Honor.

16       MR. BLACKER:  Thank you.

17       THE COURT:  Maybe Mr. Gross should get somebody else to

18   help him.

19       MR. MEMON:  I will call and find out.

20       THE COURT:  Go with Frank.

21       (Brief recess)

22       THE COURT:  Back on the record on the trial case.

23   Everybody quiet.

24       MR. BLACKER:  Michael Blacker, on behalf of Pablo Diaz,

25   who is present before the Court.

986

1       MR. GROSS:  Robert Gross, by myself.

2       MR. BLACKER:  Judge, we spoke with an advisor at the

3    State Attorney's Office, a young man named Ryan.  They do

4    not have the equipment that would enable them to do

5    anything that would make that tape more visible.

6       In lieu of that, there are six photographs that were

7    introduced by the State which are nothing more than --

8    those are just single frames in that tape.  The frame comes

9    up, but since it jumps quickly, it looks like the video, it

10   is like a photograph.

11      What they did is stopped it there somehow, and it might

12   have been the TV documentary that did it that way, blew it

13   up.  So I will ask you to tell the jury if they can't slow

14   it down, if they want to view it that those pictures are

15   from the same tape, they could look at those.

16      It's the best we can do.  Those photographs of the

17   counter where they introduced.

18      THE COURT:  From that same video tape?

19      MR. BLACKER:  It's stopped and blown up.

20      THE COURT:  There is no harm in telling them that.

21      MR. BLACKER:  I think we should.

22      MR. GROSS:  I think the time to have done this is in the

23   past.

24      THE COURT:  I think it is clear to everybody that that

25   is where it came from.  in fact, the detective testified

987

1    that the stills were made from that, from the big one.

2         MR. GROSS:  They have seen it a hundred times.

3         THE COURT:  That's it.

4         MR. BLACKER:  We are requesting the comment, because I

5    want them to know if they can see it, they --

6         THE COURT:  They saw everything.  Everything that you

7    are referring to, they saw in court.

8         Louie, I need the other inmate removed.  Get him out.

9    And both sides are now -- have reviewed everything and are

10   satisfied that is all of the evidence in the case, and that

11   there are no extraneous materials; is that correct?

12        MR. BLACKER:  Yes, Your Honor.

13        MR. GROSS:  Yes, Your Honor.

14        THE COURT:  Are you satisfied that the State has no

15   equipment to slow down that video tape?

16        MR. BLACKER:  I spoke with the technical advisor, and

17   that is what he told me.  I'm satisfied.

18        THE COURT:  Let's put the defendant under oath.

19        MR. BLACKER:  I should say I'm satisfied.  I have many

20   reasons to believe he was telling me the truth.  It does

21   satisfy me that we are unable to do it.  I would have liked

22   to have done it.

23        THE COURT:  You said, in fact, about getting equipment

24   and all that --

25        MR. BLACKER:  I have never been in a trial where the

988

1      State introduced evidence -- pieces of evidence which

2      isn't viewable.  Usually, they make it viewable in some

3      format, and I have never been in a trial like this, so I

4      assumed that they would have the equipment to make that

5      jumpy cut multiplex thing viewable.

6          THE COURT:  But you knew that in the beginning of the

7      trial, because there were comments on the record regarding

8      that.

9          MR. BLACKER:  That is not true.  We were at the Arthur

10     hearing.  I was -- it was viewed.  Detective Morin was

11     shown this, and stopped and talked about it.

12         The only reason I didn't bring that up yesterday and

13     bring up other evidence that occurred was because I didn't

14     want her saying that there was an Arthur hearing, and that

15     was a tactical decision.  See what I'm saying?

16         THE COURT:  Put the defendant under oath.

17         (Thereupon, the defendant was duly sworn.)

18         THE COURT:  Sir, your name and your age?

19         THE DEFENDANT:  Pablo Diaz.  31.

20         THE COURT:  And again, are you satisfied with the work

21     being done here by your lawyer?

22         THE DEFENDANT:  Yes, I am.

23         THE COURT:  And are you satisfied with his position

24     regarding this matter and video tape?

25         THE DEFENDANT:  Yes.

989

1    THE COURT:  All right.  Bring in the jury.  Let's put

2    the defendant over here with the lawyer.  Everybody clear

3    this area here.

4    MR. BLACKER:  One more thing.  We can handle that later.

5    THE COURT:  All right.  Jimmy, bring them in.

6    (Thereupon, the jury panel entered the courtroom, after

7    which, the following proceedings were had in open court:)

8    THE COURT:  Thank you.  Please have a seat.

9    Let the record reflect that the defendant is present, as

10   he has been throughout the trial.

11   Ladies and gentlemen, we --

12   Where is Jimmy?  Where is Jimmy?  Jimmy, please come

13   over here.

14   We're going to hand you the verdict forms, and pad of

15   paper and the pen.  And you have all the cell phones.  Hand

16   it to one of the jurors.  And we placed the evidence in the

17   jury room for you.

18   As I told you yesterday, you can take as little or as

19   long as you want.  At 12, I need to leave, because I need

20   to go to a luncheon, and I should be back by probably 2:30

21   or 3.

22   So if you have a verdict before that -- if you have a

23   verdict before that, fine.  If not, when I come back.  And

24   at 12, let Jimmy know if you want him to order lunch

25   downstairs.  OK?  And he will order it and bring it up for

990

1    you.  It takes about an hour.

2    And like I said yesterday, if you have a question

3    regarding the facts, my normal answer is to tell you that

4    you must rely upon your own recollection of the evidence.

5    We do not have a transcript of these proceedings.

6    If you have a question regarding the law, you have all

7    the law that pertains to this case in the jury

8    instructions.

9    Are the jury instructions there?  You have them right in

10   front of you.  OK.

11   Where's the jury instructions, Kathy?  Let me see them.

12   Yes.  Hand this to the jury.

13   And remember, by 12, I need to leave, and then you need

14   to send out a note saying if you want Jimmy to order lunch

15   for you, OK?

16   And that's it.  At this time, you may retired to

17   deliberate.

18   (Thereupon, the jury panel exited the courtroom to

19   further consider the verdict, after which, the following

20   proceedings were had outside the presence of the jury

21   panel:)

22   THE COURT:  What is it?

23   MR. BLACKER:  On behalf of Mr. Diaz, yesterday, you

24   informed the jury that you were going to have security when

25   they left the building.

991

1    As they left, rather than having security standing in
2    the back of the room, security was standing out here, armed
3    and looking rather powerful in the vestibule, which I think
4    it was rather a chilling moment for the jury. They could
5    not think anything else but that Mr. Diaz must be some
6    dangerous person, and I'm requesting a mistrial.

7    THE COURT: Your motion for mistrial is denied, and I
8    think you have the gift of exaggeration, Mr. Blacker. I
9    had two Metro officers in the courtroom, and when the jury
10   is deliberating and there's family -- don't interrupt me --
11   and there is family in the courtroom, family or friends, I
12   always like security.

13   The jury needs to feel protected, and I needed those
14   officers here to keep the family and friends in the
15   courtroom up till ten minutes after the jury had left.

16   The protection of the courtroom is my job, and that
17   protection includes defense lawyers, all right?

18   MR. BLACKER: Thank you.

19   (Thereupon, other matters not related to this cause were
20   heard by the Court, after which, the following proceedings
21   related to this cause were had:)

22   THE COURT: We have a verdict. Call Michael Blacker and
23   tell him that the jury has a verdict.

992

1      (Thereupon, other matters not related to this cause

2  were heard by the Court, after which, the following

3  proceedings related to this cause were had:)

4      THE COURT:  The jury sent out another note:

5      Do you need something else from us?  We have the

6  verdict.

7      Mark it.

8      THE CLERK:  Court Exhibit 6.

9      (Thereupon, the exhibit referred to was marked as

10  Court's Exhibit Number 6 and was received in Evidence.)

11      THE COURT:  Talk to him about whether he wants to

12  testify or not.  I'll be right back.

13      (Brief recess)

14      THE COURT:  All right.  Everyone please have a seat.  We

15  are -- I understand the jury has a verdict.  In fact, they

16  sent out another note like:  What are we waiting for?

17      Now, Mr. Diaz, how about Mr. Diaz' family?  They have

18  been here.  Are they here -- not here?

19      MR. BLACKER:  I just called them.  They went down for

20  coffee.  I'm sure they want to be here.

21      Can you give me a moment to run and get them?

22      THE COURT:  Fine.  Why don't we take the verdict.

23      What is your pleasure, Mr. Diaz?

24      THE DEFENDANT:  I would like for them to be here, Your

25  Honor.

993

1    THE COURT:  You want them to be here.  OK.  Have a

2    seat.

3    MR. BLACKER:  Can I run up to 7 and be --

4    THE COURT:  Do they have a cell phone?  Did you call

5    them?

6    If we have to proceed with the possession by a convicted

7    felon, does he want to testify?

8    MR. BLACKER:  We're not intending to testify, Your

9    Honor, depending on what happens with the verdict.

10   THE COURT:  Mr. Diaz, you are still under oath.  On the

11   possession by a convicted felon, if we proceed with that,

12   do you want to testify or not?

13   THE DEFENDANT:  No.

14   THE COURT:  You want to remain silent?

15   THE DEFENDANT:  Yes.

16   THE COURT:  Whose decision is that?

17   THE DEFENDANT:  Both me and my lawyer.

18   THE COURT:  Like I told you earlier --

19   THE DEFENDANT:  Mine.

20   THE COURT:  It has to be your decision.  Your lawyer can

21   advise you, but at the end, it's your decision.

22   Whose decision is it?

23   THE DEFENDANT:  Mine.

24   THE COURT:  You understand if you want to testify, this

25   would be your chance?

994

1      THE DEFENDANT:  Yes.

2      MR. BLACKER:  For the record, Judge, again, I will

3  interpose the same objection to the security.  I see about

4  seven or eight officers this time.  I would interpose the

5  same objection and move for a mistrial.

6      THE COURT:  All right.  Denied.  You know, we're going

7  to receive a verdict.  Security is my concern, and this is

8  normal.  It happens in every case.

9      MR. BLACKER:  Judge, Mr. Diaz dropped his -- Mr. Diaz

10  dropped his wife off.  He's parked his car.  He could be

11  here in about two seconds.  He is on his way up, I'm

12  advised.

13      THE COURT:  All right.  Let's have quiet, please.

14      Mr. Diaz, I understand the jury has a verdict.

15  Obviously, we have no idea whether it's favorable or

16  unfavorable to you.

17      You've been a gentleman throughout, and whether the

18  verdict is favorable or unfavorable, please act

19  appropriately.  Remember, if it's good, you could celebrate

20  later.  If it's not good, we still have a sentencing, plus

21  it's not the end of the game.  It is still an appeal, and

22  you never know.  People get new trials all the time.

23      So it's up to the appellate court and not up to me.  Do

24  you understand that?

995

| | |
|---|---|
| 1 | Don't put your eggs in one basket.  Don't go nuts if |
| 2 | the verdict is against you. |
| 3 | The family understands English, so you understand, you |
| 4 | know, like I told your son, there is still -- even if he is |
| 5 | found not guilty, celebrate later.  If he is found guilty, |
| 6 | there is still an appeal, OK?  Put it in God's hands. |
| 7 | All right.  And Corrections officers, after the verdict, |
| 8 | I would like you to come forward with Ramos and stand in |
| 9 | front of the defense table, OK? |
| 10 | Let's get the jury. |
| 11 | (Thereupon, the jury panel entered the courtroom, after |
| 12 | which, the following proceedings were had in open court:) |
| 13 | THE COURT:  Please have a seat.  And is the evidence in |
| 14 | the jury room? |
| 15 | A JUROR:  Yes. |
| 16 | THE COURT:  You left the evidence.  Any notes that you |
| 17 | sent -- we sent back in the jury room? |
| 18 | A JUROR:  Everything is in there. |
| 19 | THE COURT:  The jury instructions are left in the jury |
| 20 | room, and you have all reached a verdict.  Please hand the |
| 21 | verdict form to my bailiff. |
| 22 | Let the record reflect that the defendant is present, as |
| 23 | he has been throughout the trial. |
| 24 | Madam Clerk, please publish the verdict. |

996

1      THE CLERK:  In the Circuit Court of the 11th Judicial

2   Circuit, in and for Miami-Dade County, Florida.  The State

3   of Florida versus premeditated design.  Case

4   Number F03-16995.

5      We, the jury, find as follows as to Count I of the

6   Information:  The defendant is guilty of aggravated

7   battery, a lesser-included offense and the defendant

8   actually possessed a firearm, and the defendant discharged

9   a firearm.

10      We, the jury, find as follows as to Count II of the

11   Information:  The defendant is guilty of kidnapping, and

12   the defendant actually possessed a firearm, and the

13   defendant discharged a firearm.

14      We, the jury, find as follows as to Count III of the

15   Information:  The defendant is not guilty.

16      So say we all, this 11th day of May, 2007, in Miami-Dade

17   County, Florida.

18      Alejandro Halle (phonetic), Foreperson.

19      THE COURT:  Please poll the jurors to make sure this is

20   their verdict.

21      (Thereupon, the clerked polled the jury panel, and as to

22   the question, "Is this your verdict?" all members of the

23   jury panel answered in the affirmative, thereby acceding in

24   the verdict.)

MATZ, TRAKTMAN, FELDMAN AND WILDNER          996

997

1    THE CLERK:  Your Honor, the jurors accede in the

2    verdict.

3    THE COURT:  All right.  Let me see Mr. Blacker and

4    Ms. Corona for a second.

5    (Thereupon, counsel for the respective parties

6    approached the bench and conferred with the Court outside

7    the hearing of the court reporter and the jury panel, after

8    which, the following proceedings were had in open court:)

9    THE COURT:  Ladies and gentlemen, I want to thank you

10   for your time and attention during this trial.  I know it

11   took a lot of work from your -- a lot of time out of your

12   lives.  I want to thank you for doing your civic duty.

13   And from now on, you are free to discuss this case with

14   anyone that you wish.  People at work, people here.  My

15   suggestion is discuss it at home, discuss it at work, but

16   not with people in the building who may find fault in your

17   decision.

18   We have prepared for you certificates of appreciation,

19   as well as certificates of attendance.

20   Ms. Aronda, if you have any problems with your employer

21   and you wish the Court to do something, contact us, and we

22   can always have a contempt hearing, and we will see what

23   happens in a hearing after I hear from both sides.

24   Now, I hope we made it as pleasant and as tolerable for

25   you as possible.  This is what we do day in and day out,

998

1 and Monday, I'm starting, I think, a bank robbery and on

2 Wednesday, a murder case. That's what we do. And I hope

3 all of you have a very good weekend.

4     To the family or people in the audience, I don't want

5 anyone leaving the courtroom until ten or 15 minutes after

6 the jury has left.

7     If I could have the Corrections officer please stand in

8 front of the defense table.

9     And at this time, you are excused.

10    (Thereupon, the jury panel was excused from further jury

11 service in this cause, after which, the following

12 proceedings were had in open court:)

13    THE COURT: All right. Everyone have a seat.

14    Mr. Diaz, the jury, having found you guilty of

15 aggravated battery, the Count I lesser-included offense, I

16 now adjudicate you guilty of that count.

17    And the jury, having found you guilty of kidnapping, the

18 Court will now adjudicate you guilty of that.

19    And Count III, aggravated assault, the jury found you

20 not guilty. The Court will adjudicate you not guilty.

21    Now, what -- for sentencing purposes, what does the

22 defendant qualify as?

23    MS. CORONA: HVO and prison releasee reoffender.

24    THE COURT: Are you ready to proceed on that now?

25    Do you have the package?

999

1        MS. CORONA:  Actually no, Judge.  The one that I have

2    is -- doesn't contain the affidavit that has the business

3    records exception.

4        THE COURT:  All right.  So he's not -- since it's

5    mandatory sentences, he's not entitled to the PSI; is that

6    correct?

7        MS. CORONA:  That is correct, Judge.

8        THE COURT:  Fine.  So we will get it in about 30 days.

9        MS. CORONA:  Fine, Judge.

10       THE CLERK:  There is Count II left on this case, also,

11   Judge.

12       THE COURT:  OK.  The possession of a firearm by a

13   convicted felon.

14       MS. CORONA:  The State would nolle-pross Count II at

15   this time, possession of a firearm by a convicted felon.

16       THE COURT:  Which in our -- the way we have it would

17   have been our Count IV.

18       MS. CORONA:  Right.

19       THE COURT:  June 18th for sentencing.  Is that good?

20   Michael, is that good for you?

21       MR. BLACKER:  Judge, I'm starting a first-degree murder

22   trial in Gainesville, Florida, in mid-June.  If you give me

23   three minutes, I could call my office.

24       THE COURT:  No.  Let me set it for June 25th.

1000

1    MR. BLACKER:  That is what I mean.  I want to find

2    out.  It's going to be a two-week trial.  I could find out.

3    THE CLERK:  Judge, he has another case pending.  We need

4    a trial date.

5    THE COURT:  What is the other case?

6    MS. CORONA:  Aggravated battery on a detainee.

7    THE COURT:  We will set it with the sentencing.

8    MR. BLACKER:  Starting the trial on June 25th and the

9    pretrial conference on June 5th.

10   THE COURT: 'Let me set this for sentencing -- how about

11   June 14th for sentencing?

12   MS. CORONA:  That's fine, Judge.

13   THE COURT:  June 14th, is that good?  Sentencing

14   June 14th, and you need to get that package from the prison,

15   and we'll proceed then.

16   MR. BLACKER:  Judge, I'm really sorry I didn't bring my

17   calendar with me, but I have two federal trials that are

18   set in the summer.  If there is a problem, can I contact

19   your chambers and work it out with the State, so we can set

20   a date?

21   MS. CORONA:  That's fine, Judge.

22   THE COURT:  Yes.

23   MR. BLACKER:  Thank you.

24   THE COURT:  All right.  And again, to the family of the

25   defendant, please remain in the courtroom for a while.

1001

1    Maybe the officers may give you a couple of moments with

2    your son, and you know, don't despair.  You know, he still

3    has a right to an appeal and an appellate court will

4    decide, OK?  Thank you.  We are in recess.

5          (Thereupon, the proceedings were concluded.)

6                          CERTIFICATE

7
8    STATE OF FLORIDA                )
9    COUNTY OF MIAMI-DADE            )
10
11
12          I, PAMELA Y. KILPATRICK, Notary Public for the State of Florida at Large, do

13   hereby certify that I was authorized to and did stenographically report the foregoing

14   proceedings and that this transcript is a true and complete record of my stenographic notes.

15          DATED this 14th day of February, 2008.
16
17
18
19                          _____
20                          PAMELA Y. KILPATRICK,
21                          Shorthand Reporter and Notary Public,
22                          State of Florida at Large
23
24   My commission expires:
25   August 19, 2009