*L07-1-20451*

1

```
IN THE CIRCUIT COURT OF THE ELEVENTH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CRIMINAL DIVISION
CASE NO. F03-16995


THE STATE OF FLORIDA,    )
                         )
     Plaintiff,          )
                         )
vs.                      )
                         )
PABLO DIAZ,              )
                         )
     Defendant.          )
_____)
```

COPY

DOCKETED APR 16 2008

RECEIVED APR 16 2008 ATTORNEY GENERAL MIAMI OFFICE

Richard E. Gerstein Justice Building
1351 Northwest 12th Street
Miami, Florida
June 18, 2007
10 a.m.

The above-entitled cause came on for hearing before the Honorable Julio Jimenez, Circuit Judge, pursuant to Notice.

APPEARANCES:

    KATHERINE FERNANDEZ-RUNDLE, State Attorney, by
    CAROLINA CORONA, Assistant State Attorney and
    ROBERT GROSS, Assistant State Attorney,
    on behalf of the State

    MICHAEL BLACKER, Esq.,
    on behalf of the Defendant

MATZ, TRAKTMAN, FELDMAN AND WILDNER

Sentencing

1  (Thereupon, the following proceedings were had:)

2  THE COURT: Pablo Diaz. We're here on the sentencing of
3  Pablo Diaz.

4  Carolina, all right.

5  Good morning, Mr. Diaz.

6  THE DEFENDANT: Good morning.

7  MR. BLACKER: Good morning, Your Honor.

8  THE COURT: Now, he's to -- he qualifies as a prison
9  releasee re-offender?

10  MS. CORONA: Yes, Judge.

11  THE COURT: Let me see the Information.

12  THE CLERK: I don't have the file, Judge. I looked for
13  this file. I have looked for it, and I don't know where it
14  is.

15  THE COURT: All right. He was -- I have a copy of the
16  Information. He was found guilty of attempted felony murder.

17  MS. CORONA: No. He was found guilty of aggravated
18  battery.

19  THE COURT: He was found -- he was charged with attempted
20  felony murder.

21  And the charges in Count II, kidnapping with a discharge
22  of a firearm.

23  Count III, aggravated assault, he was found not guilty.

24  The count, possession of a firearm by a convicted felon
25  was nolle-prossed. All right.

3

1  So, State, you have a copy of your notice that he
2  qualifies as a prison releasee re-offender?
3  MS. CORONA: Yes, Judge.
4  MR. BLACKER: Before we enter the sentencing phase, I
5  filed a motion for Judgment of acquittal, notwithstanding the
6  verdict, a new trial, and the rest of the judgment, pursuant
7  to the Florida Rules of Criminal Procedure, 3.580, 3.604 and
8  3.610, and I will rely on --
9  THE COURT: The motion is denied. Let me have the
10 defendant stand over there next to the jury room door, so I
11 could see his face. Thank you.
12 All right. I have before me the notice of the
13 defendant's qualification as a prison releasee re-offender,
14 filed by the State on June 18, 2007.
15 MS. CORONA: Those are my copies. Since the Court
16 doesn't have the file, I just provided my copies today. The
17 June 18th stamp is today.
18 THE COURT: Right. This is stamped by the clerk.
19 THE CLERK: I stamped them in today.
20 THE COURT: As long as it is before sentencing. And even
21 at trial, it was the -- the defendant was told that he was a
22 prison releasee re-offender. I believe they offered him like
23 18 years and if he didn't take it, it was a mandatory life if
24 convicted.
25 So, Michael, you stipulated that you and your client were

4

1   on notice, that the State had given notice that he qualifies
2   as a prison releasee re-offender?
3       MR. BLACKER: They mentioned it at the trial on a few
4   occasions, yes, Your Honor.
5       THE COURT: All right. State, what are you proceeding
6   on?
7       MS. CORONA: Judge, we're going to proceed on the prison
8   releasee re-offender, even though he qualifies as both prison
9   releasee re-offender and habitual felony offender, and
10  habitual violent felony offender.
11      THE COURT: Do you have a prison packet?
12      MS. CORONA: Yes, sir.
13      THE COURT: With the hearsay exception?
14      MS. CORONA: Yes. And for the record, even though the
15  defendant is not entitled to a PSI, based on what he is
16  charged -- what the charges are that he qualifies, they did
17  waive PSI for purposes of the sentencing.
18      The State moves in State's Exhibit 1B for Identification
19  into evidence.
20      MR. BLACKER: May I have a copy of it, please?
21      MS. CORONA: This is my only copy.
22      MR. BLACKER: May I have a moment?
23      THE COURT: Does it have a hearsay exception?
24      MS. CORONA: A certificate from the custodian of records
25  at the Florida Department of Corrections, certifying that

5

1 this is, in fact, the business records.

2 THE COURT: OK.

3 MS. CORONA: Also contained is a photograph of the

4 defendant, and the defendant's fingerprints, including his

5 last release date.

6 THE COURT: According to the case law, that's with the

7 business records exception certificate and it makes it

8 admissible. Any objections?

9 MR. BLACKER: For the record, yes, but I have no

10 particularized object.

11 THE COURT: It will be admitted.

12 THE CLERK: State's Exhibit marked for Identification

13 purposes 1B will now becomes State's Exhibit Number 1.

14 (Thereupon, the exhibit referred to was marked as State's

15 Exhibit Number 1 and was received in Evidence.)

16 MR. BLACKER: May I have one moment, Your Honor?

17 THE COURT: Yes.

18 Do you have a certificate of non-pardon?

19 MS. CORONA: No, Judge.

20 MR. BLACKER: I just need one moment, Your Honor. I'm

21 sorry.

22 THE COURT: Before sentencing, Mr. Diaz, is this your

23 family?

24 THE DEFENDANT: Yes, sir.

25 THE COURT: I would like to tell you and you family that,

1  as you are aware, you know, you have an excellent lawyer.
2  I'm sure he told you that there are mandatory sentencings in
3  the State of Florida that even the Judges can't do anything
4  about. I have no discretion, according to the case law.
5  And like I like to tell all defendants prior to
6  sentencing, this is not the end of the ball game. This is
7  just one inning, OK? You still have appeals ahead of you and
8  post-conviction motions, so you never know what's going to
9  happen down the road.
10  As you know, most people do not spend their lives in
11  prison, and, of course, the last thing any human being loses
12  is hope. So, you know, it will be -- after today, it will be
13  in the hands of the appellate courts, and we will see what
14  happens, OK?
15  THE DEFENDANT: OK.
16  THE COURT: And obviously, what we're doing here isn't
17  personal. It's just business, OK?
18  THE DEFENDANT: Yes.
19  THE COURT: And I'm reviewing State's Exhibit 1, the
20  prison packet with the business records, certified by Malin
21  Degram (phonetic), Corrections Services Assistant Consultant.
22  Where is the last release date?
23  MS. CORONA: Judge, it should be on the first page of the
24  actual documents. It's 10/31/2000.
25  THE COURT: It shows that the last release date,

1  10/31/2000, and the current offense occurred on June 8, 2003?
2      MS. CORONA: Right.
3      THE COURT: And the photograph contained in State's
4  Exhibit 1 is the photograph of this defendant, Pablo Diaz,
5  who is present before me for sentencing today.
6      And the Court has no doubt this is one and the same
7  person.
8      MR. BLACKER: Before you pronounce sentencing --
9      THE COURT: Well, let me ask you, Michael, do you have
10 any proof that that conviction was set aside by post-
11 conviction proceedings or by a pardon from the Governor?
12     MR. BLACKER: I do not.
13     THE COURT: Let's put the defendant under oath.
14     (Thereupon, the defendant was duly sworn.)
15     THE COURT: Mr. Diaz, state your full name and your age.
16     THE DEFENDANT: Pablo Diaz, 31.
17     THE COURT: And do you have any proof that prior
18 convictions in case Number 98-39066 was -- is a manslaughter?
19     THE DEFENDANT: Yes.
20     THE COURT: OK. That that was ever set aside by post-
21 conviction proceedings, or by a pardon from the Governor?
22     THE DEFENDANT: I don't know.
23     THE COURT: No. OK.
24     MR. BLACKER: No.
25     THE COURT: OK. Do you know anything about that

1   conviction, Michael?

2   MR. BLACKER: I have spoken with the defendant about it,
3   yes.

4   THE COURT: He must have been very young then.

5   How old were you when you were convicted in that case?

6   THE DEFENDANT: 24.

7   THE COURT: 24. All right. And -- OK. The Court finds
8   that the defendant was noticed of the State's intention to
9   seek enhanced penalty as a prison releasee re-offender, and
10  notice was filed with the clerk on June 18, 2007. Although
11  the defendant was clearly on notice prior to that, at the
12  time of trial, when he was made a plea offer by the State.
13  He was on notice that he -- the State felt that he qualified
14  as a prison releasee re-offender.

15  The Court finds that the felonies for which the defendant
16  is being sentenced, aggravated battery and kidnapping, are
17  enumerated felonies pursuant to 775.08.

18  The Court finds that the State has proven by a
19  preponderance of the evidence that the defendant committed
20  the offenses which he is now being sentenced within three
21  years of his release from the correctional facility in Case
22  Number 98-39066, where he went to prison for manslaughter.

23  In addition, the Court finds the defendant has offered no
24  evidence that the prior convictions were set aside by post-
25  conviction proceedings or by a pardon from the Governor.

1          Based on the foregoing, the Court finds the defendant

2   qualifies for sentencing as an habitual -- prison releasee

3   re-offender.

4          Anything you want to say prior to sentencing, Michael?

5          MR. BLACKER:  That Statute 775.084(6) provides that the

6   sentencing Court has found that the defendant meets the

7   criteria of prison releasee re-offender, and you must

8   sentence him as such, according to the law, unless the

9   statute provides that you find that such a sentence is not

10  necessary for the protection of the public.

11         And I would just suggest to the Court that we had a four-

12  day trial here, and you heard -- this is not your typical

13  kidnapping case.  This is a really boyfriend/girlfriend

14  argument.  Had it remained in the -- had it remained in the

15  confines of the apartment, I doubt that we would even ever

16  have been here.

17         Nonetheless, I don't think that Mr. Diaz came in contact

18  with numerous members of the public that night.  He did not

19  harm any of them, and as such, I suggest to the Court that

20  you can make a finding that there is no necessity for

21  enhancement provision of this sentence.

22         THE COURT:  Michael, that's not the way I read 775.082,

23  the prison releasee re-offender statute.  I don't think there

24  is any discretion for the Court, unlike the habitual offender

25  and habitual violent offender, where the Court can make a

1  finding.

2  In prison releasee re-offender, I don't think the Court

3  has that discretion. The legislature has taken all that

4  discretion away from the trial Courts.

5  MR. BLACKER: I might stand corrected, but I thought only

6  this one in which the Court cannot deviate without a finding

7  that the public does not need such protection was the statute

8  in which you have a three-time violent felony offender, and

9  it sets forth --

10  THE COURT: I don't think so.

11  MR. BLACKER: Judge, I must be candid with the Court. I

12  was under the impression that the State was going to proceed

13  under the habitual felony and habitual violent felony

14  offender, and I did not set forth in my -- in my argument to

15  the Court a PERP, and I must tell you that I did not see it

16  on the statute, but I did see it as a felony offender and

17  violent felony offender.

18  THE COURT: Pursuant to the sentencing, you could argue

19  that, and you know, should you -- anybody disagree with me

20  that we do have that discretion, you know, your argument will

21  be noted for the record.

22  MR. BLACKER: Thank you.

23  MS. CORONA: Judge, I would ask that you make a finding,

24  then, that had you had discretion, then you would -- what

25  your sentence would be.

11

1  And I point out that the defendant did shoot in the air
2  in a public place numerous times. It's confirmed by more
3  than one witness, and was dragging the witness around where
4  she had to jump out of the car, and jump into somebody else's
5  car, in the middle of the street.
6  This is an episode that lasted for probably about 30
7  minutes to an hour in numerous locations in Miami-Dade
8  County. Didn't only happen --
9  It was not only confined in the confinements of the
10  apartment, but there was also a situation in the lobby, a
11  situation in the cafeteria and a sit on the street with some
12  other good Samaritans that stopped and helped the victim.
13  THE COURT: Let me ask you, State, because on Count I,
14  aggravated battery as a prison releasee re-offender, that
15  could carry a 15-year mandatory sentence?
16  MS. CORONA: Right.
17  THE COURT: On ten/twenty/life, it would carry a 20-year
18  minimum mandatory. Are both imposed? Because I reviewed
19  Section 775.087, and I know that it calls for a minimum
20  mandatory to be imposed, regardless of any other provisions.
21  MS. CORONA: Judge, I don't think it makes a difference,
22  one way or the other, because the higher sentence is going to
23  be under the armed kidnapping charge where it is a mandatory
24  life, so whether you find 15 or 20 on the second count, it's
25  not going to make a difference.

12

1    THE COURT:  So Count II, the kidnapping, it calls as a
2  prison releasee re-offender.  It would be a mandatory life
3  sentence.  But under the ten/twenty/life law, it calls for a
4  20-year minimum mandatory.
5       Are you saying the Court should just not impose the
6  minimum mandatory from the ten/twenty/life, but the minimum
7  mandatory from the PERP?
8    MS. CORONA:  Yes.
9    THE COURT:  Mr. Diaz, anything that you want to say prior
10 to sentencing?
11   THE DEFENDANT:  No.
12   THE COURT:  No.  And that is your decision?
13   THE DEFENDANT:  Yes.
14   THE COURT:  All right.  You understand that if you wanted
15 to say anything, this is the time to do it?
16   THE DEFENDANT:  Yes.
17   THE COURT:  All right.  And anything else that needs to
18 be said, Michael?
19   MR. BLACKER:  No, sir.
20   THE COURT:  All right.
21   MR. BLACKER:  We just request that you make one sentence,
22 as opposed to two for each count, because I think that would
23 be unlawful, actually.
24   THE COURT:  All right. On Count I, aggravated battery as
25 a prison releasee re-offender, the Court will impose a

13

1   15-year minimum mandatory sentence as a PERP.

2   In Count II, kidnapping, the Court will impose a life
3   sentence, minimum mandatory as a PERP, as a prison releasee
4   re-offender.

5   And because these are mandatory sentences and the State
6   is not asking that the Court impose the ten/twenty/life
7   minimum mandatory, which would be 20 as to each count, the
8   Court will not impose those.

9   And, you know, based on the evidence that I saw before me
10  in the trial, even though I'm told I have no discretion, if I
11  did have discretion, I would think this is a case where I
12  would exercise my discretion and sentence him to no less than
13  life, based on the facts that I heard here and what occurred
14  in this case, and just the danger to the victim and to the
15  community.

16  So, now, both of these sentences are to run concurrent.

17  Would you like me to appoint the Public Defender's Office
18  for appeal, or are you going to handle the appeal?

19  MR. BLACKER: I have made arrangements with the family,
20  and I will certainly provide the Court with ample notice
21  prior to the running of the time for the filing of the
22  appeal. We're going to get together this week and resolve
23  it.

24  If the Court is predisposed to appointing the Public
25  Defender and have me come in, in lieu of the Public Defender,

1   I would do that, as well; whatever the Court's pleasure is.

2   THE COURT: All right. So then why don't I appoint the

3   Public Defender's Office for purposes of appeal, and if you

4   do get retained for appeal -- I know that is a lot of work,

5   and if you do get retained, you can file a notice of

6   appearance.

7   MR. BLACKER: Thank you. I want Mr. Diaz to know that's

8   the normal way in which it is done unless they have a

9   retainership prior to the sentencing.

10  THE COURT: That's the normal way. And, you know, again,

11  Mr. Diaz, good luck on your appeal.

12  THE DEFENDANT: Thank you, Your Honor.

13  THE COURT: All right.

14  MS. CORONA: Thank you, Judge.

15  We just set this other one for trial, his other case.

16  THE COURT: I want you guys to -- the decision to --

17  these cases always suck, really. I haven't seen one worth

18  anything. And this gentleman was just sentenced to life.

19  Why don't you make an announcement?

20  MS. CORONA: I'm not prepared to make an announcement at

21  this point.

22  THE COURT: Set it for tomorrow, OK? 6/19. And you are

23  required to -- you are excused from being here, Michael.

24  MR. BLACKER: Thank you, sir.

25  (Thereupon, the proceedings were concluded.)

```
                                                                          15
 1                              CERTIFICATE
 2
 3    STATE OF FLORIDA          )
 4    COUNTY OF MIAMI-DADE      )
 5
 6
 7         I, PAMELA Y. KILPATRICK, Notary Public for the State of Florida at Large, do

 8    hereby certify that I was authorized to and did stenographically report the foregoing

 9    proceedings and that this transcript is a true and complete record of my stenographic notes.

10         DATED this 14th day of February, 2008.
11
12
13
14                                    _____
15                                    PAMELA Y. KILPATRICK,
16                                    Shorthand Reporter and Notary Public,
17                                    State of Florida at Large
18
19    My commission expires:
20    August 19, 2009
```

MATZ, TRAKTMAN, FELDMAN AND WILDNER